1   LIEFF CABRASER HEIMANN &
    BERNSTEIN, LLP
2   Jonathan D. Selbin (State Bar No. 170222)
    250 Hudson Street, 8th Floor
3   New York, NY  10013
    Telephone:  (212) 355-9500
4   Facsimile:  (212) 355-9592

5   LIEFF, CABRASER, HEIMANN &         MEYER WILSON CO., LPA
    BERNSTEIN, LLP                     Matthew R. Wilson (SB No. 290473)
6   Daniel M. Hutchinson (State Bar No. 239458)   Michael J. Boyle, Jr. (SB No. 258560)
    Nicole D. Reynolds (State Bar No. 246255)     1320 Dublin Road, Ste. 100
7   275 Battery Street, 29th Floor     Columbus, Ohio 43215
    San Francisco, California  94111-3339   Telephone:  (614) 224-6000
8   Telephone:  (415) 956-1000         Facsimile:  (614) 224-6066
    Facsimile:  (415) 956-1008
9

10

11  *Attorneys for Plaintiff Younus Bayat, Mohammed*
    *Ereikat and the Proposed Class*

12                 UNITED STATES DISTRICT COURT

13              NORTHERN DISTRICT OF CALIFORNIA

14

15  YOUNUS BAYAT and MOHAMMED          Case No.  13-CV-2376-EMC
    EREIKAT, on behalf of themselves and all
16  others similarly situated,         **PLAINTIFFS' MEMORANDUM IN
                                       SUPPORT OF UNOPPOSED MOTION
17                 Plaintiffs,         FOR PRELIMINARY APPROVAL OF
                                       CLASS ACTION SETTLEMENT**
18  v.
                                       Date:      June 19, 2014
19  BANK OF THE WEST,                  Time:      1:30 p.m.
                                       Courtroom: 5, 17th Floor
20                 Defendant.          Judge:     Hon. Edward M. Chen

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ............................................................................................. 1

II.     STATEMENT OF FACTS ............................................................................... 2

        A.    Factual Background .............................................................................. 2

        B.    Plaintiffs Thoroughly Investigated the Claims of the Proposed Class........ 3

        C.    The Proposed Settlement........................................................................ 5

              1.    The Class .................................................................................. 5

              2.    Prospective Relief for All Class Members.................................... 5

              3.    Monetary Relief for the Class Members ....................................... 6

              4.    *Cy Pres* Distributions ................................................................. 7

              5.    Class Release ............................................................................ 7

              6.    Class Representative Service Award ............................................ 7

              7.    Attorneys' Fees and Costs........................................................... 8

              8.    Administration and Notice ......................................................... 8

III.    ARGUMENT AND AUTHORITY ................................................................. 10

        A.    Class Action Settlement Approval Process.............................................. 10

        B.    The Settlement Is Within The "Range Of Reasonableness" For
              Preliminary Approval............................................................................ 11

              1.    The Proposed Settlement Meets The Criteria For Final
                    Approval................................................................................... 12

              2.    This Settlement Is The Product Of Serious, Informed, And
                    Arm's-Length Negotiations ......................................................... 13

              3.    The Settlement Provides Substantial Relief For Class
                    Members.................................................................................... 14

              4.    The Settlement Treats All Class Members Fairly ......................... 16

              5.    The Settlement Is Fair And Reasonable In Light Of The
                    Alleged Claims And Defenses ..................................................... 17

              6.    The Class Representatives' Service Awards Are Reasonable ...... 18

              7.    The Requested Attorneys' Fees And Costs Are Fair And
                    Reasonable ............................................................................... 19

        C.    Provisional Certification Of The Settlement Class Is Appropriate........... 22

        D.    The Proposed Notice Program Is Constitutionally Sound ........................ 24

IV.     CONCLUSION ............................................................................................. 25

- i -

# TABLE OF AUTHORITIES

**Page**

## <u>CASES</u>

*Bellows v. NCO Financial Systems, Inc.*,
No. 07-CV-1413 W (AJB), 2009 U.S. Dist. LEXIS 273 (S.D. Cal. Jan 5, 2009) ..................... 16

*Boeing Co. v. Van Gemert*,
444 U.S. 472 (1980) ............................................................................................................... 21

*Chem. Bank v. City of Seattle (In re Wash. Pub. Power Supply Sys. Sec Litig.)*,
19 F.3d 1291 (9th Cir. 1994)................................................................................................... 20

*Class Plaintiffs v. City of Seattle*,
955 F.2d 1268 (9th Cir. 1992)............................................................................ 10, 11, 12, 13

*Fitzgerald v. City of Los Angeles*,
No. CV 03-01876 NM, 2003 U.S. Dist. LEXIS 27382
(C.D. Cal. Dec. 8, 2003) ......................................................................................................... 19

*Franco v. Ruiz Food Prods.*,
No. 10-cv-02354-SKO, 2012 U.S. Dist. LEXIS 169057
(N.D. Cal. 2012).......................................................................................................................13

*Gene And Gene LLC v. BioPay LLC*,
541 F.3d 318 (5th Cir. 2008)...................................................................................................15

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998)........................................................................................... 13, 14

*Hansen v. Ticket Track, Inc.*,
213 F.R.D. 412 (W.D. Wash. 2003) ....................................................................................... 23

*Harris v. Vector Marketing Corp.*,
No. C-08-5198, 2011 WL 1627973
(N.D. Cal. April 29, 2011) ...................................................................................................... 11

*Hopson v. Hanesbrands Inc.*,
2009 U.S. Dist. LEXIS 33900
(N.D. Cal. Apr. 3, 200) ........................................................................................................... 19

*In re Activision Sec. Litig.*,
723 F. Supp. 1373 (N.D. Cal. 1989) ....................................................................................... 21

*In re Critical Path, Inc.*,
No. C 01-00551 WHA 2002 WL 32627559
(N.D. Cal. June 18, 2002) ....................................................................................................... 12

*In re Mego Fin. Corp. Secs. Litig.*,
213 F.3d 454 (9th Cir. 2000).................................................................................................... 12

*In re Trans Union Corp. Privacy Litig.*,
211 F.R.D. 328 (N.D. Ill. 2002)...............................................................................................15

*Jordan v. County of Los Angeles*,
669 F.2d 1311 (9th Cir. 1982).................................................................................................. 23

*Laguna v. Coverall N. Am.*,
--- F. 3d. ---, (9th Cir. June 3, 2014)....................................................................................... 14

*Linney v. Cellular Alaska P'ship*,
151 F.3d 1234 (9th Cir. 1998).................................................................................................. 12

**TABLE OF AUTHORITIES**
(continued)

Page

*Linney v. Cellular Alaska P'ship*,
C-96-3008-DLJ, 1997 U.S. Dist. LEXIS 24300
(N.D. Cal. July 18, 1997) ............................................................................... 13, 21

*Lo v. Oxnard European Motors, LLC*,
No. 11CV1009 JLS, 2012 U.S. Dist. LEXIS 73983
(S.D. Cal. May 29, 2012) .................................................................................... 22

*Malta v. Fed. Home Loan Mortg. Corp.*,
No. 10-CV-1290 BEN, 2013 U.S. Dist. LEXIS 15731
(S.D. Cal. Feb. 4, 2013) ............................................................................ 22, 23, 24

*Meyer v. Portfolio Recovery Assocs., LLC*,
707 F.3d 1036 (9th Cir. 2012) ................................................................... 15, 17, 23

*Mullane v. Cent. Hanover Bank & Trust Co.*,
339 U.S. 306 (1950) ........................................................................................... 24

*Odrick v. UnionBanCal Corp.*,
No. C 10-5565 SBA, 2012 U.S. Dist. LEXIS 171413
(N.D. Cal. Dec. 3, 2012) ..................................................................................... 19

*Officers for Justice v. Civil Serv. Comm'n*,
688 F.2d 615 (9th Cir. 1982) .......................................................................... 11, 12

*Parker v. Time Warner Entm't Co., L.P.*,
331 F.3d 13 (2d Cir. N.Y. 2003) .......................................................................... 15

*Pelletz v. Weyerhaeuser Co.*,
255 F.R.D. 537 (W.D. Wash. 2009) ..................................................................... 12

*Rodriguez v. West Publ'g Corp.*,
563 F.3d 948 (9th Cir. 2009) .......................................................................... 13, 19

*Six Mexican Workers v. Ariz. Citrus Growers*,
904 F.2d 1301 (9th Cir. 1990) .............................................................................. 20

*Staton v. Boeing Co.*,
327 F.3d 938 (9th Cir. 2003) ............................................................................... 22

*Tarlecki v. Bebe Stores, Inc.*,
No. C 05-1777, 2009 U.S. Dist. LEXIS 102531
(N.D. Cal. Nov. 3, 2009) ..................................................................................... 22

*Torrisi v. Tucson Elec. Power Co.*,
8 F.3d 1370 (9th Cir. 1993) .............................................................................. 9, 20

*Vigus v. Southern Illinois Riverboat/Casino Cruises, Inc.*,
274 F.R.D. 229 (S.D. Ill. 2011) ........................................................................... 17

*Vizcaino v. Microsoft Corp.*,
290 F.3d 1043 (9th Cir. 2002) .......................................................................... 20, 21

*Wright v. Linkus Enter., Inc.*,
259 F.R.D. 468 (E.D. Cal. 2009) ...................................................................... 20, 21

**<u>STATUTES</u>**

47 U.S.C.
§ 227(b)(1)(A) ................................................................................................ 1, 3

**TABLE OF AUTHORITIES**
(continued)

Page

<u>**RULES**</u>

ADR L.R. 1-2(a) ............................................................................................. 12

Fed. R. Civ. P.
  23(a)(3).................................................................................................... 22

Fed. R. Civ. P.
  23(a)(4).................................................................................................... 22

Fed. R. Civ. P.
  23(b)(3).............................................................................................. 22, 23

Fed. R. Civ. P.
  23(a)........................................................................................................ 21

Fed. R. Civ. P.
  23(a)(1).................................................................................................... 22

Fed. R. Civ. P.
  23(a)(2).................................................................................................... 22

<u>**TREATISES**</u>

4 *Newberg on Class Actions* (4th Ed. 2002)
  § 11.25.............................................................................................. 10, 11

4 Newberg on Class Actions (4th ed. 2002)
  § 11.41.................................................................................................... 10

*Manual for Complex Litigation* (Fourth) (2004)
  § 21.312.................................................................................................. 24

*Manual for Complex Litigation* (Fourth) (2004)
  § 21.63.................................................................................................... 10

*Manual for Complex Litigation* (Fourth) (2004)
  § 21.632............................................................................................ 11, 22

*Manual for Complex Litigation* (Fourth) (2004)
  §21.633.................................................................................................. 22

*Manual for Complex Litigation* (Fourth) (2004),
  § 13.14.................................................................................................... 11

<u>**OTHER AUTHORITIES**</u>

*In the Matter of Rules and Regulations Implementing the
  Telephone Consumer Protection Act of 1991,*
  23 F.C.C.R. 559, 23 FCC Rcd. 559, 43 Communications Reg. (P&F) 877,
  2008 WL 65485 (F.C.C.) ........................................................................ 18

*United States District Court for the Northern District of California,*
  Procedural Guidance for Class Action Settlements ........................... passim

I.      **INTRODUCTION**

Plaintiffs Younus Bayat and Mohammed Ereikat ("Plaintiffs") respectfully move the Court for preliminary approval of the nationwide class action settlement ("Settlement") reached between Plaintiffs and Defendant Bank of the West ("Defendant" or "Bank of the West") which would resolve all claims in this action.  For the reasons set forth in this memorandum and the supporting documents, the Settlement is fair, reasonable, and adequate.

Plaintiffs brought these claims on behalf of themselves and all others similarly situated alleging that Bank of the West called Plaintiffs and Class Members on their cellular telephones through the use of automatic telephone dialing systems and/or using an artificial or prerecorded voice without their prior express consent.  Plaintiffs allege that such calls violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(b)(1)(A).  As described below, the Settlement's main focus is significant prospective practice changes requiring Bank of the West not to make calls to the cellular telephones of Class Members who make a simple revocation request by either checking a box online or completing a one-page form.  The Settlement also requires Bank of the West to pay $3,354,745.98 into a settlement fund ("Fund"), out of which eligible Class Members who file qualified claims will receive a cash award.

This Action involves sharply opposing positions on a key issue.  Specifically, the parties disagree on whether the TCPA allows "prior express consent" for calls to a cellular telephone to be given at any time after origination of a credit relationship.  Plaintiffs assert, based on certain rulings from the Federal Communications Commission (the "FCC"), that prior express consent must be clearly and unmistakably given at the time a consumer opens an account.  Bank of the West believes that Plaintiffs' construction of the rulings is incorrect.  In Bank of the West's view, the FCC could not have intended this construction in the context of banking relationships that last for many years.  Bank of the West believes, instead, that the FCC rulings state that prior express consent can be given simply by providing a telephone number at any point in time during a banking relationship.

Plaintiffs' counsel and Bank of the West have engaged in extensive informal discovery and evaluation of Plaintiffs' claims.  The parties also participated in a full-day mediation and

PLFS' MEM. ISO MOT. FOR PRELIM. APPROVAL
3:13-CV-2376-EMC

several subsequent telephonic sessions before the Honorable Edward A. Infante of JAMS.  With this motion, Plaintiffs seek preliminary approval of the Settlement, and provisional certification of a nationwide class for purposes of providing the Class with notice of the Settlement and an opportunity to opt-out, object, or otherwise be heard.  The proposed Settlement satisfies all criteria for preliminary settlement approval under Ninth Circuit law.

For all of these reasons, and those detailed below, Plaintiffs respectfully request that the Court take the following initial steps in the settlement approval process:  (1) preliminarily approve the proposed Settlement as fair, adequate, and reasonable; (2) conditionally certify the Settlement Class and appoint Younus Bayat and Mohammed Ereikat as class representatives; (3) appoint Class Counsel; and (4) appoint a Settlement Administrator to administer the proposed Notice and Claims Program.

## II.   STATEMENT OF FACTS

### A.   Factual Background

Plaintiffs brought the Action alleging that Bank of the West engaged in a systematic practice of making calls to consumers' cellular telephones through the use of automatic telephone dialing systems and/or an artificial or prerecorded voice without their prior express consent, in violation of the TCPA, 47 U.S.C. § 227(b)(1)(A).  *See generally* Amended Complaint, Dkt. No. 9.

Plaintiff Younus Bayat maintained a business checking account with Bank of the West.  Amended Complaint, Dkt. No. 9, at ¶ 14.  Plaintiff Bayat alleges that Bank of the West repeatedly made prerecorded calls to his cell phone.  *Id.* at ¶ 15.  Plaintiff Mohammed Ereikat maintained a personal checking account with Bank of the West.  *Id.* at ¶ 18.  Plaintiff Ereikat alleges that Bank of the West made prerecorded calls to his cell phone.  *Id.* at ¶ 20.  Plaintiffs further allege that neither of them provided Bank of the West with "prior express consent" to make prerecorded calls to their cell phones, because neither of them listed any cellular telephone number on their applications or on any other documents at any time during the transaction that resulted in the debt owed to Bank of the West.  *Id.* at ¶¶ 15, 17.

Bank of the West denies all of Plaintiffs' allegations, claims that it had express consent to make automated, prerecorded calls to Plaintiffs and Class Members on their cell phones, and pled 13 affirmative defenses.  Defendant's Answer to Plaintiffs' Amended Complaint, Dkt. No. 18.

### B.      Plaintiffs Thoroughly Investigated the Claims of the Proposed Class

Plaintiffs' counsel thoroughly researched Bank of the West's practices and their legal claims prior to filing suit.  Declaration of Daniel M. Hutchinson in Support of Motion for Preliminary Approval of Settlement ("Hutchinson Decl.") ¶ 18.  Plaintiffs' counsel interviewed and collected relevant information and documents from affected Class Members.  *Id.*  This information was essential to Plaintiffs' counsel's ability to understand the nature of the alleged problem and potential remedies.  *Id.*

In October 2012, Plaintiffs' counsel informed Bank of the West of Plaintiff Bayat's intention to file a class action lawsuit on behalf of himself and all other similarly situated consumers for legal and equitable relief.  Hutchinson Decl., ¶ 19.  After entering into a litigation standstill and tolling agreement to preserve Plaintiff Bayat's and Class Members' rights, the parties participated in dozens of telephonic and written exchanges.  *Id.*, ¶¶ 20-21.  Specifically, over a seven-month period, the parties discussed their relative views of the law and the facts, and exchanged significant informal discovery, including Plaintiffs' cellular telephone records, data regarding Bank of the West's calls, relevant caselaw, declaratory rulings by the FCC, and prior settlement agreements in a series of TCPA actions.  *Id.*, ¶¶ 21.  These negotiations culminated in a May 16, 2013, in-person meeting in the offices of Plaintiffs' counsel.  *Id.*, ¶ 22.  However, despite their efforts, the parties reached an impasse.  *Id.*, ¶ 22.

Plaintiff Bayat filed his Class Action Complaint shortly thereafter on May 24, 2013.  Dkt. No. 1.  Plaintiff Ereikat joined this action in the First Amended Complaint on June 28, 2013.  Dkt. No. 9.  On August 30, 2013, Bank of the West answered the First Amended Complaint and set forth thirteen affirmative defenses.  Dkt. No. 18.

The parties remained sharply divided on the merits of this action.  Hutchinson Decl., ¶ 26.  As reported to the Court in the Joint Case Management Conference Statement, Bank of the West anticipated filing an early motion on the issue of "prior express consent" under the TCPA.  Dkt.

No. 15 at 4-5.  At the September 5, 2014, Case Management Conference, the Court ordered the parties to mediate within 120 days.  Dkt. Nos. 20, 21.  The parties thereafter exchanged their initial disclosures and set a mediation date for December 18, 2013.  Hutchinson Decl., ¶ 28.  Over the course of the next three months, the parties engaged in all "discovery necessary to facilitate mediation," as directed by the Court.  Dkt. Nos. 21, 23.

On December 18, 2013, the parties participated in a full-day mediation session before the Honorable Edward A. Infante (Ret.) of JAMS.  Hutchinson Decl., ¶ 29.  The parties submitted detailed mediation briefs to Judge Infante, setting forth their respective views on the strengths of their cases.  *Id.*  During the day-long session, the parties discussed their relative views of the law and the facts and potential relief for the proposed Class.  *Id.*  Counsel exchanged a series of counterproposals on key aspects of the Settlement, including the parameters of the practice changes and monetary relief for the Class.  *Id.*  At all times, the parties' settlement negotiations were highly adversarial, non-collusive, and at arm's length.  *Id.*

The mediation resulted in the issuance of a mediator's proposal.  Hutchinson Decl., ¶ 30.  In order for the parties to respond to the proposal, the parties exchanged additional information informally.  *Id.*  Following this additional exchange of information and a series telephonic and written communications with Judge Infante, the parties agreed to a modified mediator's proposal on March 4, 2014.  *Id.*, ¶ 31.

Pursuant to the mediator's proposal, the parties thereafter engaged in significant additional confirmatory discovery.  Hutchinson Decl., ¶ 32.  Bank of the West therefore provided Plaintiffs' counsel with confidential and proprietary confirmatory discovery that confirmed that there are approximately 871,836 persons who are potential class members and that the terms of the Settlement are fair, reasonable, and adequate for all Class Members.  *Id.*, ¶¶ 33, 35.[1]

---

[1] Based on Bank of the West's dialer records, the parties have confirmed that Bank of the West has contact information for 483,473 of the Class Members, but lacks contact information for approximately 388,363 Class Members.  Hutchinson Decl., ¶ 36.  Due to the lack of data, it would be either impossible or overly burdensome, and thus economically unfeasible, to determine the specific identities of persons Bank of the West called using autodialers and/or artificial or prerecorded voices.  *Id.*  Plaintiffs' counsel determined that it is reasonable to provide notice to the unknown Class Members via publication notice.  *Id.*

With the confirmatory discovery completed and after extensive, additional negotiations, the parties turned to the settlement agreement, claim forms, and notice documents and executed a Settlement Agreement ("Agreement") on June 4, 2014.  Hutchinson Decl., ¶ 34.  The Settlement being presented herewith is the result.

**C.**     **The Proposed Settlement.**

The Settlement's details are contained in the Agreement signed by the parties, a copy of which is attached as Exhibit B to the Hutchinson Declaration.  For purposes of preliminary approval, the following summarizes the Agreement's terms.

**1.**     **The Class**

The "Class" includes:

> All persons within the United States to whom, on or after November 2, 2008 through the date of entry of the Preliminary Approval Order, a non-emergency telephone call was attempted by Bank of the West, or any other entity on its behalf, to a cellular telephone through the use of an automatic telephone dialing system or an artificial or prerecorded voice.  Excluded from the Settlement Class are BOW and any affiliate or subsidiary of BOW, along with any employees thereof, and any entities in which any of such companies have a controlling interest, the Judge to whom the Action is assigned and any member of the Judge's staff and immediate family, as well as all persons who validly opt out of the Settlement Class.

Agreement § II.X.  The Settlement Class definition is substantially the same as the class definition in Plaintiffs' First Amended Complaint.  Procedural Guidance, ¶ 1.a; *see* Dkt. No. 9 at ¶ 29 ("All persons within the United States who, on or after November 2, 2008, received a non-emergency telephone call from Bank of the West to a cellular telephone through the use of an automatic telephone dialing system or an artificial or prerecorded voice.").

**2.**     **Prospective Relief for All Class Members**

The primary focus of the Settlement is prospective practice changes.  Specifically, for Class Members who execute a valid and timely request ("Revocation Request"), Bank of the West shall not make use of, or knowingly authorize anyone acting on their behalf to make use of, an automatic telephone dialing system and/or an artificial or prerecorded voice, to call Class Members' cellular telephones or to send text messages to their cellular telephones.  Agreement § III.C.1.a.  Class Members shall have three means to receive this prospective relief.  First, through the Website Notice site, Class Members will be able submit the Revocation Request

1   simply by checking a box and providing their electronic signature, current cellular telephone

2   number, and, for current Bank of the West customers only, an account number and alternate

3   telephone number (if one exists) so that Bank of the West can comply with its recordkeeping

4   requirements.  *Id.* § III.C.1.b.  As an alternative, Class Members may sign and return a one-page

5   "hard copy" Revocation Request to the Claims Administrator.  *Id.*  Bank of the West agrees to

6   implement the Revocation Requests by no later than 90 days after the Effective Date.  *Id.*

7   The Settlement requires instructions to be provided to each Class Member how to make

8   the Revocation Request, clearly and in plain English, via either E-mail Notice, direct Mail Notice,

9   Website Notice, and/or Publication Notice.  Agreement § III.C.1.b.  The E-mail Notice, Mail

10   Notice, and Publication Notice will include a link to a website, which will provide for online

11   submission of Claim Forms and Revocation Requests.  *Id.*

12   ### 3.   Monetary Relief for the Class Members

13   In addition to the core prospective relief for the Class, the Settlement also requires Bank

14   of the West to create a Settlement Fund of $3,354,745.98, out of which eligible Class Members

15   who file a qualified claim will receive a Cash Award in the form of a check.  Agreement § III.F.

16   The amount of each Class Member's Award will be based on a *pro rata* distribution,

17   depending on the number of valid and timely claims.  *Id.* § III.F.4. While it is not possible to

18   predict the precise amount of the Awards until all claims have been submitted, Plaintiffs' counsel,

19   based on their experience in similar TCPA class actions, conservatively estimate awards in the

20   range of $25 to $50 after deductions for Court-approved attorneys' fees and costs, Court-

21   approved incentive awards to the Plaintiffs, and costs of notice and claims administration.

22   Procedural Guidance, ¶ 1.d.; Agreement §§ IIK., II.P., II.S.  Checks for Cash Awards will be

23   valid for 180 days from the date of the check.  *Id.* § III.F.5.

24   In order to exercise the right to obtain the relief outlined above, Class Members need only

25   complete a simple, one-page claim form and provide it to the Claims Administrator via the

26   Internet site or by mail.  *Id.* § III.F.2, Ex. A.  As an alternative, Class Members may also submit a

27   claim by calling the toll-free Settlement Hotline.  Class Members will have at least 90 days after

28   notice dissemination to submit their Claim Forms.  *Id.* § II.D.

### 4.      *Cy Pres* **Distributions**

In the event that the combined amounts of any checks that remain uncashed for more than 180 days after the date on the checks is equal to or less than $50,000, the money will be, subject to Court approval, distributed *cy pres* to the charitable, non-profit organization Opportunity Fund whose mission is closely aligned with the interests of Class Members.  Procedural Guidance, ¶ 8; Hutchinson Decl., ¶41; Agreement § III.G.  No party or counsel of record has any relationship to the Opportunity Fund.  Hutchinson Decl., ¶41.  If, for any reason, the Court determines that the proposed recipient is not an appropriate recipient, the parties shall agree on a replacement recipient subject to Court approval.

### 5.      **Class Release**

In exchange for the benefits allowed under the Settlement, Class Members who do not opt out will provide a release tailored to the practices at issue in this case.  Specifically, they will release any and all rights, duties, obligations, claims, actions, causes of action or liabilities as of the date of the Final Approval Order:  "(a) that arise out of or are related in any way to the use of an "automatic telephone dialing system" or an "artificial or prerecorded voice" to make "calls" to a cellular telephone . . . by or on behalf of any of the Released Parties;" or "(b) that arise out of or relate in any way to the administration of the settlement."  Agreement § III.R.  The Settlement release is therefore slightly broader than the scope of the two TCPA claims in the operative complaint challenging the use of an "automatic telephone dialing system" and/or an "artificial or prerecorded voice" to make "calls" to Class Members' cellular telephone without their prior express consent.  Procedural Guidance, ¶ 1.c.

### 6.      **Class Representative Service Award**

Conditioned upon Court approval, the Agreement provides $2,000 Service Awards each for Plaintiffs in recognition of and to compensate Plaintiffs for their service to and efforts in prosecuting the Actions on behalf of the Class.  Agreement § III.H.  These Service Awards are in addition to the relief the Plaintiffs will be entitled to under the terms of the Settlement.  Plaintiffs were kept informed of the litigation as it developed and all were kept abreast of, and signed off on, the proposed Settlement.  Hutchinson Decl. ¶ 43.  Further, they committed to participating in the

litigation in whatever capacity needed should settlement not be reached. *Id.* Any service awards are *not* conditioned on Plaintiffs' approval of the Settlement. *See* Procedural Guidance, ¶ 7; Hutchinson Decl. ¶ 42.

### 7.    Attorneys' Fees and Costs

Bank of the West will not contest Plaintiffs' counsel's application to this Court for payment of attorneys' fees and expenses of not more than $838,386, which is 25 percent of the Settlement Fund. Agreement § III.W. As addressed below (and as will be further addressed at final approval), this amount comports precisely with the Ninth Circuit's benchmark for compensating class counsel in common fund class action settlements for the work they have performed in procuring a settlement for the class, as well as the work remaining to be performed in documenting the settlement, securing court approval of the settlement, overseeing settlement implementation and administration, assisting class members, and obtaining dismissal of the action. The enforceability of the Settlement is not contingent on the amount of attorneys' fees and costs awarded. *Id.*

### 8.    Administration and Notice

All costs of notice and claims administration will be paid from the Settlement Fund. The parties have agreed that Gilardi & Co. LLC ("Gilardi") will administer the claims resolution process, subject to review by Plaintiffs' counsel, which include the following duties: (1) issuing Class Notice and claim forms; (2) calculating and issuing settlement payments; (3) responding to Class member inquiries regarding the claims administration process; and (4) calculating and issuing Class Member Settlement checks. Procedural Guidance, ¶ 2; Agreement §§ II.E., III.C., III.F., III.K., III.P. Bank of the West has agreed to cooperate with Gilardi to ensure that it has all of the information it needs to perform these tasks. *Id.* § III.P.

Within 45 days of entry of the Preliminary Approval Order, Gilardi will issue the Class Notice (Exhibit C to the Agreement) via mail or email to all Class Members for whom Bank of the West possesses contact information. *Id.* § III.K1.-2.[2] Additionally, for unknown and

---

[2] After the parties had finalized the forms of Class Notice, the Court issued its Procedural Guidance for Class Action Settlements ("Procedural Guidance"), including suggested language for inclusion in class notices. Procedural Guidance, *available at* http://cand.uscourts.gov/

unidentifiable Class Members for whom Bank of the West lacks contact information (see footnote one, *supra*), Gilardi has designed and will conduct a publication notice program targeted to the 19 states in which Bank of the West has retail banking locations that the parties believe will fully satisfy the requirements of due process. Procedural Guidance, ¶ 3; Agreement § III.K.3. The publication notice will refer Class Members to the settlement website and provide a toll-free number for the Claim Form and details regarding the Settlement. *Id.*, Ex. D.

Additionally, Gilardi will establish and maintain a settlement website. *Id.* § III.K.5. The settlement website will provide generalized information, including the Settlement Agreement, the Class Notice, the Publication Notice, the Preliminary Approval Order, the Claim Form, the Revocation Request, and the identity of Class Counsel. *Id.* The website will also provide for online submission of Claims and Revocation Requests. *Id.*

Class Members will have at least 90 days after notice dissemination to submit their claim forms along with any Revocation requests. *Id.* § II.D. To be excluded from or opt out of the Class, Class Members will also have the same amount of time to submit a written request to the Settlement Administrator that includes the Class Member's name, a statement requesting exclusion, and information necessary to process that exclusion. Procedural Guidance, ¶ 4; Settlement § III.L.1.; *cf. Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370 (9th Cir. 1993) (approving notice sent 31 days before the deadline for objections). The claims administrator will calculate the proportionate recoveries of qualified claimants and issue checks to those individuals within 30 days after the Effective Date (and after the appeals period has run), assuming the Court has granted final approval. Agreement § III.F.5.

The parties negotiated with multiple settlement notice and claims administrators and propose that Gilardi administer the Settlement. Hutchinson Decl., ¶ 40. Gilardi agreed to a cap of $172,431 for publication notice and $241,176 for all other settlement notice and administration costs. Procedural Guidance, ¶ 2; Hutchinson Decl., ¶ 40. The amounts paid from the Settlement

---

ClassActionSettlementGuidance, ¶¶ 3, 5. While the parties believe that the proposed Class Notice fully complies with the Court's Procedural Guidance, it was not feasible to incorporate any of the Court's suggested language before the June 5, 2014, filing deadline. If the Court so desires, the parties will submit revised forms of notice incorporating the suggested language.

Fund therefore will not exceed $413,607 unless there is a significant change in the scope of work being performed. *Id.*

## III. ARGUMENT AND AUTHORITY

### A. Class Action Settlement Approval Process

Federal courts strongly favor and encourage settlements, particularly in class actions and other complex matters, where the inherent costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain. *See Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992) (noting the "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned"); *see also* 4 Newberg on Class Actions § 11.41 (4th ed. 2002) (citing cases). The traditional means for handling claims like those at issue here—individual litigation—would unduly tax the court system, require a massive expenditure of public and private resources and, given the relatively small value of the claims of the individual Class members, would be impracticable. Thus, the proposed Settlement is the best vehicle for Class Members to receive the relief to which they are entitled in a prompt and efficient manner.

The *Manual for Complex Litigation* (Fourth) (2004) § 21.63 ("*Manual for Compl. Lit.*") describes a three-step procedure for approval of class action settlements:

(1)  Preliminary approval of the proposed settlement at an informal hearing;

(2)  Dissemination of mailed and/or published notice of the settlement to all affected class members; and

(3)  A "formal fairness hearing" or final settlement approval hearing, at which class members may be heard regarding the settlement, and at which evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement may be presented.

This procedure, used by courts in this Circuit and endorsed by class action commentator Professor Newberg, safeguards class members' due process rights and enables the court to fulfill its role as the guardian of class interests. 4 *Newberg* § 11.25.

With this motion, Plaintiffs request that the Court take the first step in the settlement approval process by granting preliminary approval of the proposed Settlement. The purpose of preliminary evaluation of proposed class action settlements is to determine whether the settlement

is within the "range of reasonableness," and thus whether notice to the class of the settlement's terms and holding a formal fairness hearing would be worthwhile.  *Id.*  In general, the Court should grant preliminary approval if the Settlement:  "(1) appears to be the product of serious, informed, non-collusive negotiations; (2) has no obvious deficiencies; (3) does not improperly grant preferential treatment to class representatives or segments of the class; and (4) falls within the range of possible approval."  *Harris v. Vector Mktg. Corp.*, No. C-08-5198, 2011 U.S. Dist. LEXIS 48878, at *23 (N.D. Cal. Apr. 29, 2011) (citations omitted).  The decision to approve or reject a proposed settlement is committed to the Court's sound discretion.  *See City of Seattle*, 955 F.2d at 1276 (in context of class action settlement, appellate court cannot "substitute [its] notions of fairness for those of the [trial] judge and the parties to the agreement," and will reverse only upon strong showing of abuse of discretion) (quoting *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 626 (9th Cir. 1982)).

Granting preliminary approval of this Settlement will allow all Class Members to receive notice of the proposed Settlement's terms and the date and time of the final Settlement approval hearing, at which Class Members may voice approval of or opposition to the Settlement, and at which the parties and Class Members may present further evidence and argument concerning the fairness, adequacy, and reasonableness of the Settlement.  *See Manual for Compl. Lit.*, at §§ 13.14, § 21.632.  Although the parties have requested a hearing, a hearing is not required at the preliminary approval stage.  The Court may grant preliminary approval upon an informal application by the settling parties, and may conduct any necessary hearing in court or in chambers, at the Court's discretion.  *Id.* at § 13.14.

**B.      The Settlement Is Within The "Range Of Reasonableness" For Preliminary Approval**

At the preliminary approval stage, courts evaluate whether the proposed settlement is within the "range of reasonableness" such that notice to the class of the terms and conditions of the Settlement, and holding a final approval hearing, would be worthwhile.  4 *Newberg* § 11.25. Consideration of the requirements for *final* approval is unnecessary at this stage; nevertheless, all of the relevant final approval factors weigh in favor of the Settlement proposed here.  (Plaintiffs

1    will address each of the factors required for final settlement approval in their Motion for Final

2    Approval of the Settlement.)

3         Courts regularly approve prompt settlements, especially those achieved after thorough

4    negotiations.  *See, e.g.*, *Pelletz v. Weyerhaeuser Co.*, 255 F.R.D. 537, 539 (W.D. Wash. 2009);

5    *see also In re Mego Fin. Corp. Secs. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (finding that class

6    counsel's significant investigation and research supported approval of settlement, even absent

7    extensive formal discovery); *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir.

8    1998) ("[F]ormal discovery is not a necessary ticket to the bargaining table where the parties have

9    sufficient information to make an informed decision about settlement."); *In re Critical Path, Inc.*

10   *Secs. Litig. v. Critical Path, Inc.*, No. C 01-00551 WHA, 2002 U.S. Dist. LEXIS 26399, at *20

11   (N.D. Cal. June 18, 2002) ("Through protracted litigation, the settlement class could conceivably

12   extract more, but at a plausible risk of getting nothing").

13        Furthermore, the Settlement furthers the Northern District's policy of encouraging early

14   settlement.  As this Court has recognized, "full, formal litigation of claims can impose large

15   economic burdens on parties and can delay resolution of disputes for considerable periods."  ADR

16   L.R. 1-2(a).  The Northern District accordingly adopted an ADR program to provide "a broad

17   range of court-sponsored ADR processes to provide quicker, less expensive and potentially more

18   satisfying alternatives to continuing litigation without impairing the quality of justice or the right

19   to trial."  *Id.*  While the parties did not go through the court-sponsored ADR program and instead

20   hired a mediator, the result is the same: A fair, quick, and efficient resolution of Plaintiffs' claims.

21              **1.      The Proposed Settlement Meets The Criteria For Final Approval**

22        While the threshold for preliminary approval requires only that the Settlement fall within a

23   "range of reasonableness" (*see supra*), the Settlement meets the criteria for final approval and

24   thus exceeds that threshold.  At the final approval stage, a proposed Settlement may be approved

25   by the trial court if it is determined to be "fundamentally fair, adequate, and reasonable."  *City of*

26   *Seattle*, 955 F.2d at 1276 (*quoting Officers for Justice*, 688 F.2d at 625.  In affirming the

27   settlement approved by the trial court in *City of Seattle*, the Ninth Circuit Court of Appeals noted

28   that it "need not reach any ultimate conclusions on the contested issues of fact and law which

- 12 -

1  underlie the merits of the dispute, for it is the very uncertainty of outcome in litigation and

2  avoidance of wasteful and expensive litigation that induce consensual settlements." *Id.* at 1291

3  (internal quotation and citation omitted).  The district court's ultimate determination "will involve

4  a balancing of several factors" which may include:  "the strength of plaintiffs' case; the risk,

5  expense, complexity, and likely duration of further litigation; the risk of maintaining class action

6  status throughout the trial; the amount offered in settlement; the extent of discovery completed,

7  and the stage of the proceedings; the experience and views of counsel . . . and the reaction of the

8  class members to the proposed settlement." *Id.*

9       Here, the proposed Settlement satisfies the criteria for preliminary approval because it is

10  "fundamentally fair, adequate, and reasonable" for the reasons set forth below.  *City of Seattle*,

11  955 F.2d at 1276.  This proves the settlement is "within the range of reasonableness" and should

12  be preliminarily approved.

13            **2.     This Settlement Is The Product Of Serious, Informed, And**

14                     **Arm's-Length Negotiations**

15       The Court's role is to ensure that "the agreement is not the product of fraud or

16  overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a

17  whole, is fair, reasonable and adequate to all concerned." *Hanlon v. Chrysler Corp.*, 150 F.3d

18  1011, 1027 (9th Cir. 1998) (internal quotes and citations omitted).  Where class counsel are

19  experienced in litigating class actions, and where the settlement is reached in arm's length

20  negotiations, the settlement is presumed to be fair.  *Linney v. Cellular Alaska P'ship*, C-96-3008-

21  DLJ, 1997 U.S. Dist. LEXIS 24300, at *16 (N.D. Cal. July 18, 1997); *Rodriguez v. West Publ'g

22  Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) ("We put a good deal of stock in the product of an arms-

23  length, non-collusive, negotiated resolution . . . .");  *Franco v. Ruiz Food Prods.*, No. 10-cv-

24  02354-SKO, 2012 U.S. Dist. LEXIS 169057, at *30-31 (N.D. Cal. 2012) ("[T]he court may

25  presume that, through negotiation, the parties, their counsel, and the mediator arrived at a

26  reasonable range of settlement by considering Plaintiffs' likelihood of recovery.").

27       As detailed above, the Settlement is the result of intensive, arm's-length negotiations

28  between attorneys experienced in the litigation, certification, trial, and settlement of nationwide

1    class action cases.   Counsel for both parties are also experienced in litigating TCPA claims, and

2    understood the legal and factual issues involved in this case.   In the course of negotiating this

3    Settlement, the parties engaged in a full-day extensive and contested mediation session before an

4    experienced former federal judge.

5           As also detailed above, Plaintiffs' counsel thoroughly investigated and analyzed Plaintiffs'

6    TCPA claim, and also exchanged information with Bank of the West regarding its policies and

7    practices in making automated, prerecorded calls to consumer's cells phones and in obtaining

8    consent to make such calls, as well as the number of persons to whom such calls were actually

9    made.  Plaintiffs' counsel also had the benefit of information gathered from many Class Members

10   who reported their experiences receiving automated calls and provided their Bank of the West

11   applications to Plaintiffs' counsel.  As a result, Plaintiffs' counsel were well-positioned to

12   evaluate the strengths and weaknesses of the case, as well as the appropriate basis upon which to

13   settle it.  *Compare Hanlon*, 150 F.3d at 1027 (approving settlement where there was no evidence

14   suggesting "that the settlement was negotiated in haste or in the absence of information").

15          **3.        The Settlement Provides Substantial Relief For Class Members**

16          The Settlement provides relief for all Class Members to whom Bank of the West made

17   automated, prerecorded calls.  Agreement §§ II.W., III.C.  All Class Members will be able to

18   revoke Bank of the West's ability to call them on a cellular telephone through use of an automatic

19   telephone dialing system and/or an artificial or prerecorded voice, if they do not want to receive

20   such calls.  *Id.* § III.C.1.  The process to effectuate this relief is simple and straightforward,

21   involving only the submission of a single-page form.  *Id.* § III.C.1.b.

22          The Settlement also requires Bank of the West to pay $3,354,745.98 a Settlement Fund,

23   out of which eligible Class Members who file a qualified claim will receive a Cash Award.  *Id.*

24   § III.F.2; *see also Laguna v. Coverall N. Am.*, --- F. 3d. ---, at *20 (9th Cir. June 3, 2014) (Chen, J.)

25   (dissenting op.) ("[T]he core of any settlement is the amount offered in settlement.").[3]  While the

26   precise amount of each Class Member's Award is unknown, Plaintiffs' counsel estimates that

27   each class member will receive between $25 and $50.  Procedural Guidance, ¶ 1.d.; Settlement

28

---

[3] *Available at* http://cdn.ca9.uscourts.gov/datastore/opinions/2014/06/03/12-55479.pdf.

1    §§ II.K., II.P., II.S; Hutchinson Decl, ¶ 38.  No portion of the Settlement Fund will revert to Bank

2    of the West.  Settlement § III.C.2.

3         The plain terms of the TCPA allow for statutory damages of $500 per call ($1,500 for

4    willful violations), but attempting to obtain anything approaching that amount for all class

5    members on the merits would entail significant risk and delay.  Procedural Guidance, ¶ 1.d.  First

6    and foremost, Class Members face the factual defense of consent, as Bank of the West argues that

7    the majority, if not all, Class Members provided their cell phone numbers to it either on account

8    applications or through subsequent dealings with Bank of the West.  To recover the full statutory

9    damages, Plaintiffs would need to convince the Court to adopt their view that the FCC has

10   clarified that "prior express consent" can only being given during "the transaction that resulted in

11   the debt owed"; *i.e.* during the opening of Class Members' Bank of the West accounts.  The Court

12   could instead have adopted Bank of the West's view that consent may be given at any time and in

13   any manner before the call was placed.  If the Court adopted Bank of the West's view, Class

14   Members would also face a potential class certification problem.  Courts are divided as to

15   whether such consent issues predominate over common questions in TCPA cases, depending on

16   the circumstances of the case.  *Compare Meyer v. Portfolio Recovery Associates*, 707 F.3d 1036,

17   1042 (9th Cir. 2012) (upholding class certification) *with Gene & Gene LLC v. BioPay LLC,* 541

18   F.3d 318, 328 (5th Cir. 2008) (reversing class certification).

19        Moreover, at least some courts view awards of aggregate, statutory damages with

20   skepticism and either refuse to certify a class or reduce such awards—even after a plaintiff has

21   prevailed on the merits—on due process grounds.  *See, e.g., Parker v. Time Warner Entm't Co.,*

22   *L.P.*, 331 F.3d 13, 22 (2d Cir. N.Y. 2003) ("[T]he potential for a devastatingly large damages

23   award, out of all reasonable proportion to the actual harm suffered by members of the plaintiff

24   class, may raise due process issues."); *In re Trans Union Corp. Privacy Litig.*, 211 F.R.D. 328,

25   350-351 (N.D. Ill. 2002) (declining to certify class where it "could result in statutory minimum

26   damages of over $19 billion, which is grossly disproportionate to any actual damage").

27        Accordingly, the Settlement is in the range of other TCPA case settlements involving

28   banks.  *See, e.g., Malta v. Fed. Home Loan Mortg. Corp.*, No. 10-CV-1290 BEN, 2013 U.S. Dist.

- 15 -

PLFS' MEM. ISO MOT. FOR PRELIM. APPROVAL
3:13-CV-2376-EMC

LEXIS 15731 (S.D. Cal. Feb. 4, 2013); *Rose v. Bank of Am. Corp.*, 5:11-cv-02390-EJD (N.D. Cal.), Dkt. No. 67.

A claims process is necessary for several reasons.  First, a claims process is "unavoidable" because Bank of the West does not possess contact information for approximately 388,363 Class Members. *Laguna*, --- F.3d ---, at *31 (Chen, J.) (dissenting op.) (noting that "a claims process is unavoidable . . . [in] a consumer class action where there is no readily accessible record . . . to identify class members and their contact information").  Second, a claim form is more efficient where, as here, the Settlement already utilizes a Revocation Request Form for the Settlement's prospective relief.  The parties dispute whether individual Class Members provided their prior express consent to receive automated telephone calls to their cellular phones.   Plaintiffs have argued that the calls are a nuisance and invasion of privacy while Bank of the West argues that the calls provide valuable information to consumers.  The Revocation Request Form allows Class Members to choose for themselves whether the calls will stop.  Under these circumstances, pairing the Revocation Request Form with a Claim Form efficiently permits those who care most about the Settlement's benefits to receive Settlement relief.

As with the prospective relief portion of the Settlement, the claim form for monetary relief is simple and straightforward.  Class Members need only provide:  (1) their name and address; (2) confirmation they received a cellular telephone call through the use of an automatic telephone dialing system and/or an artificial or prerecorded voice; and (3) an electronic or written signature.  Agreement § III.F.2.  Any residual amounts under $50,000 remaining after all the payments contemplated by the Settlement are made that would be economically unfeasible to distribute will be donated *cy pres* to a charitable organization selected by the parties and approved by the Court. *Id.* § III.G.

### 4.      The Settlement Treats All Class Members Fairly

The Settlement fairly allocates relief among all Class Members by providing each Class Member with the same relief.  Procedural Guidance, ¶ 1.e.  The Settlement provides each Class Member with the same prospective relief by requiring Bank of the West to cease using automatic telephone dialing systems and/or artificial or prerecorded voices to call cellular telephones of

1    Settlement Class Members who make Revocation Requests.  Agreement § III.C.1.  The proposed

2    Settlement also provides monetary compensation to all Class Members who complete a claim

3    form.  *Id.* § III.F.  Because the precise number of calls that Bank of the West made to each Class

4    Member is substantially difficult, unduly burdensome, and economically unfeasible to determine,

5    allowing all potential Class Members the opportunity to make a claim for monetary relief and

6    allocating such relief regardless of the number of calls each Class Member may have received is

7    reasonable and fair.  Hutchinson Decl. ¶ 39.

8              **5.      The Settlement Is Fair And Reasonable In Light Of The Alleged**

9                              **Claims And Defenses**

10         Entering into mediation, Plaintiffs and Plaintiffs' counsel were confident in the strength of

11   their case, but also aware of the risks inherent to litigation and the various defenses available to

12   Bank of the West, including the risk that the claims could not be resolved on a class-wide basis.

13   The risk that Class Members could end up recovering only a fraction of the settlement benefits, or

14   nothing at all, was significant enough to convince Plaintiffs and Plaintiffs' counsel that the

15   settlement reached with Bank of the West outweighs the gamble of continued litigation.

16         There was a risk that the Court would decline to certify this case as a class action.  Bank

17   of the West maintains that class certification would be inappropriate in this Action.  Courts are

18   also split on this issue and have either granted or denied class certification in TCPA cases

19   depending upon the facts of the case.  *Compare Meyer v. Portfolio Recovery Associates*, 696 F.3d

20   943 (9th Cir. 2012) (upholding certification of a TCPA class) *with Vigus v. Southern Illinois*

21   *Riverboat/Casino Cruises, Inc.*, 274 F.R.D. 229, 237 (S.D. Ill. 2011) (denying class certification

22   of TCPA class).  If Bank of the West were able to present convincing facts to support its position,

23   the Court might decline to certify the class, leaving only the named Plaintiffs to pursue their

24   individual claims.

25         This Action also presented risks on the merits.  Had the case not settled, Bank of the West

26   expressed its intention to file an early motion for summary judgment on the issue of "prior

27   express consent" under the TCPA.  Hutchinson Decl., ¶ 26; Dkt. No. 15 at 4-5.  Liability turns on

28   competing interpretations of, among other things, the FCC's January 4, 2008 declaratory ruling,

*In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 23 F.C.C.R. 559, 23 FCC Rcd. 559, 43 Communications Reg. (P&F) 877, 2008 WL 65485 (F.C.C.) (hereinafter "Declaratory Ruling").  The Declaratory Ruling is the FCC's official interpretation of the governing provisions of the TCPA.  The FCC's Declaratory Ruling addresses the meaning of "prior express consent" and states:  "prior express consent is deemed to be granted only if the wireless number was provided by the consumer to the creditor, and that such number was provided during the transaction that resulted in the debt owed."  Declaratory Ruling, ¶10.  Plaintiffs maintain that Paragraph 10 requires that the cell phone number be "provided during the transaction that resulted in the debt owed," *i.e.* during account "origination."  Bank of the West, however, interprets the term "transaction" broadly to mean any time during the multi-year life of the account by relying on a different provision of the same 2008 Ruling, which states that "autodialed and prerecorded message calls to wireless numbers that are provided by the called party to a creditor in connection with an existing debt are permissible as calls made with the 'prior express consent' of the called party."  Dkt. No. 14 at 3 (quoting Declaratory Ruling, 23 F.C.C.R. at 559).  Based on its interpretation, Bank of the West maintains that most (if not all all) of the Class Members gave it prior express consent to contact them at their cellular phone numbers.  If the Court found that the FCC's Declaratory Ruling and/or the TCPA permits "prior express consent" to be given:  (1) after account origination on documents such as correspondence, updated information forms, forbearance requests, and the like, and/or (2) verbally, the amount of recoverable damages could be reduced significantly or eliminated altogether.  In addition, even if Plaintiffs prevailed on their interpretation of the FCC's Declaratory Ruling, Bank of the West would likely appeal the decision.

Finally, there is the risk of losing a jury trial.  And, even if Plaintiffs did prevail, any recovery could be delayed for years by an appeal.  The Settlement provides substantial relief to Class Members without further delay.

## 6.     The Class Representatives' Service Awards Are Reasonable

Service awards for class representatives are "fairly typical in class action cases."
*Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958 (9th Cir. 2009).  Such awards are "intended to

1  compensate class representatives for work done on behalf of the class [and] make up for financial

2  or reputational risk undertaken in bringing the action." *Id.Error! Bookmark not defined.* at 958.

3  Unlike absent Class Members, who will enjoy the benefits of the representatives' efforts without

4  taking any personal action, the named Plaintiffs exposed themselves to Bank of the West's

5  investigation, committed themselves to all the rigors of litigation in the event the case did not

6  settle, and subjected themselves to all the obligations of named parties.  The Class

7  Representatives also provided valuable information to Plaintiffs' counsel, assisted with the initial

8  case investigation, and reviewed the settlement terms and discussed the settlement with Plaintiffs'

9  counsel before determining that it was in the best interests of the Class.  Hutchinson Decl. ¶ 43;

10  Procedural Guidance, ¶ 7.

11  Small incentive awards, such as those requested here, promote the public policy of

12  encouraging individuals to undertake the responsibility of representative lawsuits.  Moreover, the

13  amount requested here, $2,000 for each of the two Class Representatives, is reasonable and

14  typical in class actions that settle at similar procedural postures.  *See Hopson v. Hanesbrands Inc.,*

15  No. CV-08-0844 EDL, 2009 U.S. Dist. LEXIS 33900, at *27-28 (N.D. Cal. Apr. 3, 2009) (citing

16  cases and finding that, "in general, courts have found that $ 5,000 incentive payments are

17  reasonable") (citations omitted); *Odrick v. UnionBanCal Corp.,* No. C 10-5565 SBA, 2012 U.S.

18  Dist. LEXIS 171413, at *11, 18 (N.D. Cal. Dec. 3, 2012) (awarding $5,000 to class representative

19  where "the settlement was reached at the early stages of litigation"); *Fitzgerald v. City of Los*

20  *Angeles,* No. CV 03-01876 NM, 2003 U.S. Dist. LEXIS 27382, at *9 (C.D. Cal. Dec. 8, 2003)

21  (awarding $3,500 each to class representatives in early settlement case).

22  **7.    The Requested Attorneys' Fees And Costs Are Fair And Reasonable**

23  Plaintiffs' counsel seeks an award of $838,386 in attorneys' fees and costs, which includes

24  fees and reasonable litigation costs associated with both actions and represents twenty-five

25  percent of the Settlement Fund.  This amount—which was negotiated only after the substantive

26  terms of the Settlement were agreed upon—is supported by the percentage-of-the-fund method

27  that Ninth Circuit courts use to determine fees and costs in common fund class action cases.  *See*

28  *also* Procedural Guidance, ¶ 6.  In the Ninth Circuit, the benchmark for an award of attorneys'

fees and costs is twenty-five percent of the settlement fund.  *See Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993) (citing *Six Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990)).  When examining fees and costs, "district courts in the Ninth Circuit 'should be guided by the fundamental principle that fee awards out of common funds be *reasonable under the circumstances.*'"  *Wright v. Linkus Enter., Inc.*, 259 F.R.D. 468, 476 (E.D. Cal. 2009) (citing *Chem. Bank v. City of Seattle (In re Wash. Pub. Power Supply Sys. Sec Litig.)*, 19 F.3d 1291, 1296 (9th Cir. 1994) (internal quotations omitted and emphasis in original)).  "In looking at the circumstances of each case, relevant factors may include early settlement, achievement of an excellent result, risk, and a showing of standard fees for similar litigation."  *Id.* at 476−77 (citing *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048–50 (9th Cir. 2002)).

All four factors demonstrate that Plaintiffs' counsel's request for a benchmark award of $838,386 in attorneys' fees and costs is reasonable under the circumstances.  First, Plaintiffs' counsel worked hard to achieve an early resolution of this case.  *See generally* Hutchinson Decl. ¶¶ 18-34.  Both before and after the lawsuit was filed, Plaintiffs' counsel obtained substantial informal discovery from Plaintiffs, Class Members, and Bank of the West.  *Id.* ¶¶ 18, 21, 28-29, 31-33.  In addition, Plaintiffs' counsel spent substantial time interviewing potential class members and evaluating their claims.  *Id.* ¶ 18.  By working hard to accomplish these tasks in a short time frame, Plaintiffs' counsel were able to negotiate an efficient, favorable, and timely result for the Settlement Class Members.

Of course, because of the early settlement, Plaintiffs' counsel spent fewer hours prosecuting this action than they would have had the case proceeded to trial.  However, the common fund doctrine "rests on the perception that persons who obtain the benefit of a lawsuit without contributing to its cost are unjustly enriched at the successful litigant's expense."  *See Wright*, 259 F.R.D. at 477 (quoting *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478, (1980)).  Therefore, "awarding Plaintiffs' attorneys a percentage of the total settlement amount w[ill] adequately compensate Plaintiffs' counsel for the proposed settlement at an early stage in the litigation."  *Id.*  Moreover, awarding Plaintiffs' counsel a reasonable percentage of the common fund promotes the public policy of encouraging timely settlements.  *Vizcaino*, 290 F.3d at 1051

(noting "it may be a relevant circumstance that counsel achieved a timely result for class members in need of immediate relief"); *see also In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1378 (N.D. Cal. 1989) (approving fees awards that amount to 30 percent of the common fund in part because such a benchmark "will encourage plaintiffs' counsel to move for early settlement"). Thus, the first factor weighs in favor of finding that the requested fees and costs award is reasonable.

Second, the Settlement provides Class Members with substantial benefits.  Any Class Members who want Bank of the West to stop calling them using automated dial systems and/or pre-recorded or artificial voices may make a Revocation Request.  And, the settlement agreement creates a fund of $3,354,745.98 out of which each class member may request a Cash Award. Given the results achieved, the requested fees and costs award is reasonable.  *See, e.g.*, *Linney*, 151 F.3d at 1242 ("[I]t is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements.  The proposed settlement is not to be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators. Thus, the very essence of a settlement is compromise, a yielding of absolutes and an abandoning of highest hopes.") (citations omitted).

Third, Plaintiffs' counsel have devoted significant resources to the investigation and prosecution of this case with no guarantee that counsel would be compensated for their time or reimbursed for their expenses.  To the contrary, payment of counsel's fees and expenses has always been contingent on a successful recovery of damages.  Thus, there was a substantial risk of nonpayment.  Moreover, the Court has not yet certified the case as a class action, and Bank of the West has steadfastly denied that class certification would be appropriate.  Bank of the West also has denied liability for the claims Plaintiffs' assert.  Even if Plaintiffs ultimately prevail at trial, a result that is not guaranteed, they likely face a long and costly appeals process.

Fourth, Plaintiffs' request is in line with fees and costs requested in similar actions. Plaintiffs' counsel have requested twenty-five percent of the common fund, an amount which is the benchmark in the Ninth Circuit.  In addition, the requested fees and costs are consistent with fees approved in recent Ninth Circuit cases involving similar TCPA claims.  *See, e.g.*, *Lo v.*

1    *Oxnard European Motors, LLC*, No. 11CV1009 JLS, 2012 U.S. Dist. LEXIS 73983, at *9 (S.D.

2    Cal. May 29, 2012) (awarding twenty-five percent of common fund in fees exclusive of costs, and

3    awarding additional costs out of the common fund, totaling $18,312.34, in TCPA action that

4    settled in just over two months); *Malta v. Fed. Home Loan Mortg. Corp.*, No. 10-CV-1290 BEN,

5    2013 U.S. Dist. LEXIS 15731, at *23 (S.D. Cal. Feb. 4, 2013) (preliminarily approving attorneys'

6    fees "equal to 25% of the Settlement Fund Maximum Payment, or $4,275,000").  Further, the fact

7    that the Settlement does not make the Class's prospective and monetary relief dependent upon

8    attorneys' fees for Plaintiffs' counsel weighs in favor of the requested fees and costs.  *See*

9    *Tarlecki v. Bebe Stores, Inc.*, No. C 05-1777, 2009 U.S. Dist. LEXIS 102531, at *5 (N.D. Cal.

10   Nov. 3, 2009) (citing *Staton v. Boeing Co.*, 327 F.3d 938, 972 (9th Cir. 2003)) ("In common fund

11   settlements where the fees are deducted from the common fund, the approval of the settlement

12   agreement as a whole does not depend on the quantum of the fees.").  In short, Counsel's fees and

13   costs request is appropriate under the "percentage of the fund" method.

14          **C.      Provisional Certification Of The Settlement Class Is Appropriate**

15          This Court has not yet certified this case as a class action.  For settlement purposes,

16   Plaintiffs respectfully request that the Court provisionally certify the Class defined in the

17   Agreement, Section II.X.  Provisional certification of a nationwide class for settlement purposes

18   permits notice of the proposed Settlement to issue to inform Class Members of the existence and

19   terms of the proposed Settlement, their right to be heard on its fairness, their right to opt out, and

20   the date, time and place of the formal fairness hearing.  *See Manual for Compl. Lit.*, at §§ 21.632,

21   21.633.  Bank of the West waives its challenges to class certification solely for purposes of this

22   Settlement.  For the reasons set forth below, provisional certification is appropriate under Rule

23   23(a) and (b)(3).

24          The numerosity requirement of Rule 23(a) is satisfied because the Settlement Class

25   consists of approximately 871,836 people throughout the United States, and joinder of all such

26   persons is impracticable.  *See* Fed. R. Civ. P. 23(a)(1); *Jordan v. County of Los Angeles,* 669 F.2d

27   1311, 1319 & n.10 (9th Cir. 1982) (listing thirteen cases in which courts certified classes with

28   fewer than 100 members).  The commonality requirement is satisfied because there are many

1    questions of law and fact common to the Settlement Class that center on Bank of the West's

2    common practice of using an automated dialing system with a prerecorded voice to call Class

3    Members.  *See* Fed. R. Civ. P. 23(a)(2).  Courts in the Ninth Circuit likewise relied upon almost

4    identical common questions to find that commonality was satisfied in similar cases in which

5    consumers alleged violations of the TCPA.  *See, e.g.*, *Meyer v. Portfolio Recovery Assocs., LLC*,

6    707 F.3d 1036, 1041-42 (9th Cir. 2012) (upholding finding of commonality in TCPA action);

7    *Malta*, 2013 U.S. Dist. LEXIS 15731, at *6 (finding common questions of fact "in that the calls

8    were made by Wells Fargo to class members . . . using auto-dialing equipment or with a

9    prerecorded voice message" and common questions of law "including:  (1) whether Wells Fargo

10   negligently violated the TCPA; (2) whether Wells Fargo willfully or knowingly violated the

11   TCPA; and (3) whether Wells Fargo had "prior express consent" for the calls.").  The typicality

12   requirement is satisfied because Plaintiffs' TCPA claims, which are based on Bank of the West's

13   systematic use of automated calls to Plaintiffs and all members of the Class, are "reasonably

14   coextensive with those of the absent class members."  *See* Fed. R. Civ. P. 23(a)(3); *Meyer*, 707

15   F.3d at 1041-42 (upholding typicality finding); *Malta*, 2013 U.S. Dist. LEXIS 15731, at *7

16   (finding typicality where TCPA claim stemmed from the same course of conduct and were based

17   on the same legal theory).  The adequacy of representation requirement is satisfied because

18   Plaintiffs' interests are coextensive with, and not antagonistic to, the interests of the Settlement

19   Class.  *See* Fed. R. Civ. P. 23(a)(4); *see also Meyer*, 707 F.3d at 1042; *Malta*, 2013 U.S. Dist.

20   LEXIS 15731, at *8.  Further, Plaintiffs are represented by qualified and competent counsel who

21   have extensive experience and expertise in prosecuting complex class actions, including TCPA

22   actions.  *See* Hutchinson Decl. ¶¶ 2-10.

23          The predominance requirement of Rule 23(b)(3) is satisfied because common questions

24   present a significant aspect of the case and can be resolved for all Settlement Class members in a

25   single adjudication.  *See* Fed. R. Civ. P. 23(b)(3); *see also Malta*, 2013 U.S. Dist. LEXIS 15731,

26   at *10.  Because the claims are being certified for purposes of settlement, there are no issues with

27   manageability, and resolution of thousands of claims in one action is far superior to individual

28   lawsuits and promotes consistency and efficiency of adjudication.  *See* Fed. R. Civ. P. 23(b)(3);

*see also Malta*, 2013 U.S. Dist. LEXIS 15731, at *11 (superiority met where "considerations of judicial economy favor litigating a predominant common issue once in a class action instead of many times in separate lawsuits" and the "small individual claims of class members" made it "unlikely that individual actions will be filed").  For these reasons, certification of the Settlement Class for purposes of settlement is appropriate.

### D.        The Proposed Notice Program Is Constitutionally Sound

"Rule 23(e)(1)(B) requires the court to 'direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise' regardless of whether the class was certified under Rule 23(b)(1), (b)(2), or (b)(3)." *Manual for Compl. Lit., supra*, at § 21.312.  The best practicable notice is that which is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).  According to the *Manual*, *supra*, at § 21.312, the settlement notice should:

- • Define the class;
- • Describe clearly the options open to the class members and the deadlines for taking action;
- • Describe the essential terms of the proposed settlement;
- • Disclose any special benefits provided to the class representatives;
- • Provide information regarding attorneys' fees;
- • Indicate the time and place of the hearing to consider approval of the settlement, and the method for objecting to or opting out of the settlement;[4]

---

[4] In light of the Court's Procedural Guidance, the parties agree that all objections must be submitted only to the Court and that the final sentence of Section III.M.2. of the Settlement shall be null and void.  *See* Procedural Guidance, ¶ 5 ("The notice should instruct class members who wish to object to the settlement to send their written objections only to the court."); Agreement § III.M.2. ("In order to be heard, the objection must also be mailed to each of the following, postmarked not later than the last day to file the objection: (a) Class Counsel – Daniel M. Hutchinson, Lieff, Cabraser, Heimann & Bernstein, LLP, 275 Battery Street, 29th Floor, San Francisco, CA 94111; and (b) BOW's Counsel – Lisa M. Simonetti, Stroock & Stroock & Lavan LLP, 2029 Century Park East, 16th Floor, Los Angeles, CA 90067.").

• Explain the procedures for allocating and distributing settlement funds, and, if the settlement provides different kinds of relief for different categories of class members, clearly set out those variations;

• Provide information that will enable class members to calculate or at least estimate their individual recoveries; and

• Prominently display the address and phone number of class counsel and the procedure for making inquiries.

The proposed forms of Notice, attached as Exhibits C-E to the Agreement, satisfy all of the criteria above.  The Notice Plan provides for direct, individual notice via either:  (1) email, to all persons for whom such records exist and who have not opted out of receiving emails from Bank of the West or (2) regular mail to the most recent mailing address reflected in Bank of the West's records.  Agreement § III.K.2.-3.  Further, an individual notice will be mailed to those persons whose email notice returns as undeliverable.  *Id*.  And, skip tracing will be performed for all returned email and direct mail notices.  *Id*.  Also, notice will be provided to Class Members online through the settlement website.  *Id*. § III.K.5.  Additionally, the Notice Plan provides for Publication Notice through a means best designed to target the cellular phone users that comprise the Class.  *Id*. § III.K.4.

## IV.    <u>CONCLUSION</u>

For all of the foregoing reasons, Plaintiffs respectfully request that the Court do the following:  (1) preliminarily approve the proposed Settlement as fair, adequate, and reasonable; (2) conditionally certify the Settlement Class and appoint Younus Bayat and Mohammed Ereikat as class representatives; (3) appoint Class Counsel; and (4) appoint a Settlement Administrator to administer the proposed Notice and Claims Program.

1    Dated: June 5, 2014                    Respectfully submitted,

2                                           LIEFF CABRASER HEIMANN & BERNSTEIN, LLP

3                                           By:  /s/ Daniel M. Hutchinson
                                                 Daniel M. Hutchinson
4
                                           LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
5                                          Daniel M. Hutchinson (State Bar No. 239458)
                                           Nicole D. Reynolds (State Bar No. 246255)
6                                          275 Battery Street, 29th Floor
                                           San Francisco, CA  94111-3339
7                                          Telephone:  415.956.1000
                                           Facsimile:  415.956.1008
8
                                           LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
9                                          Jonathan D. Selbin (State Bar No. 170222)
                                           250 Hudson Street, 8th Floor
10                                         New York, NY  10013
                                           Telephone:  (212) 355-9500
11                                         Facsimile:  (212) 355-9592

12                                         MEYER WILSON CO., LPA
                                           Matthew R. Wilson (SB No. 290473)
13                                         Michael J. Boyle, Jr. (SB No. 258560)
                                           1320 Dublin Road, Ste. 100
14                                         Columbus, Ohio 43215
                                           Telephone:  (614) 224-6000
15                                         Facsimile:  (614) 224-6066

16                                         *Attorneys for Plaintiffs and the Proposed Class*

17

18

19

20

21

22

23

24

25

26

27

28