LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
Jonathan D. Selbin (State Bar No. 170222)
250 Hudson Street, 8th Floor
New York, NY  10013
Telephone:  (212) 355-9500
Facsimile:  (212) 355-9592

LIEFF, CABRASER, HEIMANN &
BERNSTEIN, LLP
Daniel M. Hutchinson (State Bar No. 239458)
Nicole D. Sugnet (State Bar No. 246255)
275 Battery Street, 29th Floor
San Francisco, California  94111-3339
Telephone:  (415) 956-1000
Facsimile:  (415) 956-1008

MEYER WILSON CO., LPA
Matthew R. Wilson (SB No. 290473)
Michael J. Boyle, Jr. (SB No. 258560)
1320 Dublin Road, Ste. 100
Columbus, Ohio 43215
Telephone:  (614) 224-6000
Facsimile:  (614) 224-6066

*Attorneys for Plaintiffs Younus Bayat and,
Mohammed Ereikat, and the Settlement Class*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

YOUNUS BAYAT and MOHAMMED
EREIKAT, on behalf of themselves and
all others similarly situated,

Plaintiffs,

v.

BANK OF THE WEST,

Defendant.

Case No.  13-CV-2376-EMC

**NOTICE OF MOTION AND MOTION
FOR AWARD OF ATTORNEYS' FEES
AND EXPENSES AND FOR SERVICE
AWARDS FOR CLASS REPRESENTATIVES;
MEMORANDUM OF POINTS AND
AUTHORITIES**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## NOTICE OF MOTION

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

**PLEASE TAKE NOTICE** that on April 2, 2015, at 1:30 p.m. in the Courtroom of the Honorable Edward M. Chen, United States District Judge for the Northern District of California, 450 Golden Gate Avenue, San Francisco, CA 94102, Plaintiffs Younus Bayat and Mohammed Ereikat ("Plaintiffs") and Class Counsel[1] ("Class Counsel) will and hereby do move the Court for an Order awarding the following from the common Settlement Fund: (a) attorneys' fees and costs in the amount of $838,386.00, which is 25% of the common fund created from the Class; and (b) Service Awards to the Class Representatives of $2,000.00 each.

As discussed in the accompanying memorandum, this motion is based upon this notice, the accompanying memorandum of points and authorities, the declarations filed in support hereof, the proposed Settlement previously filed with the Court[2] and all papers filed in support thereof, the complete record in this matter, and any argument presented in connection with this motion.

---

[1] "Class Counsel," as used in this motion, consists of Lieff Cabraser Heimann & Bernstein LLP ("LCHB"), and Meyer Wilson CO., LPA ("MW").

[2] The Settlement Agreement is on file at Docket Nos. 34-2, 40-1, and 47-1.

MOTION FOR ATTORNEYS' FEES AND EXPENSES
AND FOR SERVICE AWARDS
CASE NO. 13-CV-2376-EMC

1215851.6

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ................................................................................................. 1

II.  BACKGROUND ................................................................................................. 2

    A.   The Settlement Terms. .............................................................................. 2

        1.   The Prospective Changes. .............................................................. 2

        2.   The Common Settlement Fund and Cash Payments to the Class. .............................................................................................. 3

    B.   Class Counsel's Prosecution of This Matter. ............................................ 3

    C.   Class Counsel's Time Management. .......................................................... 5

III. ARGUMENT ...................................................................................................... 6

    A.   The Requested Fee Award is Fair, Adequate, and Reasonable. .................. 6

        1.   The Requested Fee is Presumptively Reasonable because it Resulted from Arms' Length Negotiations. ................................... 7

        2.   The Court Should Apply the Percentage-of-the-Fund Method ............................................................................................ 7

        3.   The Percentage-of-the-Fund Method Confirms the Class Counsel's Fee Request Is Reasonable. .......................................... 9

            a.   Class Counsel Achieved a Strong Result for the Class. ................................................................................. 10

            b.   The Risks of Litigation Supports the Requested Fee ........ 11

            c.   The Skill Required and Quality of Work Performed Supports the Requested Fee. ............................................. 13

            d.   Class Counsel's Undertaking of the Action on a Contingency-Fee Basis Supports the Requested Fee. ........ 13

            e.   The Requested Fee Comports with Fees Awarded in Similar Actions. .............................................................. 14

        4.   A Lodestar Plus Multiplier Cross-Check Supports the Requested Fee. .......................................................................... 15

            a.   Class Counsel's Lodestar is Reasonable. ......................... 16

            b.   A Multiplier is Warranted. .............................................. 17

    B.   Class Counsel Are Not Seeking Reimbursement of their Costs on Top of the Fee Award, Although Such Reimbursement Would be Justified. ................................................................................................ 19

    C.   The Class Representatives' Service Awards Are Reasonable. .................. 19

IV.  CONCLUSION ................................................................................................ 21

# TABLE OF AUTHORITIES

**Page**

## CASES

*Adams v. AllianceOne Receivables Mgmt., Inc.,*
No. 3:08-cv-00248-JAH-WVG (S.D. Cal. Sept. 28, 2012) ......................................... 14, 17, 20

*Aliano v. Joe Caputo & Sons - Algonquin, Inc.,*
No. 09 C 910, 2011 U.S. Dist. LEXIS 48323
(N.D. Ill. May 5, 2011) ...................................................................................................... 12

*Antonopulos v. N. Am. Thoroughbreds, Inc.,*
1991 WL 427893 (S.D. Cal. May 6, 1991) .......................................................................... 15

*Bellows v. NCO Financial Systems, Inc.,*
2009 U.S. Dist. LEXIS 273 (S.D. Cal. Jan 5, 2009) ............................................................ 14

*Blum v. Stenson,*
465 U.S. 886 (1994) ............................................................................................................. 17

*Boeing Co. v. Van Gemert,*
444 U.S. 472 (1980) .............................................................................................................. 6

*Brazil v. Dell Inc.,*
2012 U.S. Dist. LEXIS 47986 (N.D. Cal. Apr. 4, 2012) ......................................................... 7

*Craft v. County of San Bernardino,*
624 F. Supp. 2d 1113 (C.D. Cal. 2008) ........................................................................... 17, 18

*Fitzgerald v. City of Los Angeles,*
No. CV 03-01876 NM, 2003 U.S. Dist. LEXIS 27382
(C.D. Cal. Dec. 8, 2003) ........................................................................................................ 21

*Garner v. State Farm,*
No. CV 08 1365 CW, 2010 U.S. Dist. LEXIS 49482 (N.D. Cal. Apr. 22, 2010) ..................... 9

*Glass v. UBS Fin. Servs.,*
No. C-06-4068 MMC, 2007 U.S. Dist. LEXIS 8476 (N.D. Cal. Jan. 26, 2007) .................... 15

*Grannan v. Alliant Law Group,*
P.C., No. C10-02803 HRL, 2012 U.S. Dist. LEXIS 8101 (N.D. Cal. Jan. 24, 2012) ............. 14

*Hanlon v. Chrysler Corp,*
150 F.3d 1011 (9th Cir. 1998) .................................................................................... 7, 9, 15

*Hensley v. Eckerhart,*
461 U.S. 424 (1983) ........................................................................................................ 7, 10

*Hopson v. Hanesbrands Inc.,*
2009 U.S. Dist. LEXIS 33900
(N.D. Cal. Apr. 3, 200) ......................................................................................................... 20

*In re Activision Sec. Litig.,*
723 F. Supp. 1373 (N.D. Cal. 1989) ...................................................................................... 8

*In re Bluetooth Headset Prods. Liab. Litig.,*
654 F.3d 935 (9th Cir. 2011) ................................................................................................. 6

*In re Heritage Bond Litig. v. U.S. Trust Co. of Tex., N.A.,*
No. 02-ML-1475-DT(RCx), 2005 U.S. Dist. LEXIS 13627 (C.D. Cal. June 10, 2005) .......... 15

*In re M.D.C. Holdings Sec. Litig.,*
1990 WL 454747 (S.D. Cal. Aug. 30, 1990) ......................................................................... 15

**TABLE OF AUTHORITIES**
(continued)

Page

*In re Media Vision Tech. Sec. Litig.*,
  913 F. Supp. 1362 (N.D. Cal. 1995) ...................................................................... 19

*In re Public Service Co.*,
  No. 91-0536M, 1992 U.S. Dist. LEXIS 16326 (S.D. Cal. July 28, 1992)................................ 15

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*,
  19 F.3d 1291 (9th Cir. 1994)................................................................................ 6

*In re Washington Pub. Power Supply Sys. Sec. Litig.*,
  19 F.3d at 1299 ............................................................................................ 13

*In re Washington Public Power Supply System Sec. Litig.*,
  19 F.3d 1291 (9th Cir. 1994) ........................................................................... 6, 18

*Kerr v. Screen Extras Guild, Inc.*,
  526 F.2d 67 (9th Cir. 1975)............................................................................ 16, 18

*Knight v. Red Door Salons, Inc.*,
  No. 08-01520 SC, 2009 U.S. Dist. LEXIS 11149 (N.D. Cal. Feb. 2, 2009) ........................ 9, 15

*Linney v. Cellular Alaska P'ship*,
  1997 U.S. Dist. LEXIS 24300 (N.D. Cal. July 18, 1997)........................................ 11

*Lo v. Oxnard European Motors, LLC*,
  No. 11CV1009 JLS, 2012 U.S. Dist. LEXIS 73983 (S.D. Cal. May 29, 2012) ..................... 15

*Lopez v. Youngblood*,
  2011 U.S. Dist. LEXIS 99289 (E.D. Cal. Sept. 1, 2011)........................................ 8

*Meyer v. Portfolio Recovery Associates*,
  696 F.3d 943 (9th Cir. 2012)............................................................................ 12

*Mills v. Electric Auto-Lite Co.*,
  396 U.S. 375 (1970)...................................................................................... 19

*Odrick v. UnionBanCal Corp.*,
  No. C 10-5565 SBA, 2012 U.S. Dist. LEXIS 171413
  (N.D. Cal. Dec. 3, 2012) ................................................................................ 20

*Ozga v. U.S. Remodelers, Inc.*,
  No. C 09-05112 JSW, 2010 U.S. Dist. LEXIS 91196 (N.D. Cal. Aug. 9, 2010) .................... 9

*Rodriguez v. West Publishing Corp.*,
  563 F.3d 948 (9th Cir. 2009)....................................................................... 19, 20

*Satterfield v. Simon & Schuster, Inc. et al.*,
  No. 06-cv-2893 (N.D. Cal. Aug. 6, 2010) ........................................................ 14, 20

*Staton v. Boeing Co.*,
  327 F.3d 938 (9th Cir. 2003)............................................................................ 6

*Steiner v. Am. Broad. Co.*,
  248 Fed. Appx. 780 (9th Cir. Cal. 2007) ............................................................ 17

*Swedish Hosp. Corp. v. Shalala*,
  1 F.3d 1261 (D.C. Cir. 1993)...................................................................... 7, 8, 18

*Van Vranken v. Atlantic Richfield Co.*,
  901 F. Supp. 294 (N.D. Cal. 1995) ................................................................ 18, 20

*Vizcaino v. Microsoft Corp.*,
  290 F.3d 1043 (9th Cir. 2002)....................................................................... passim

1215851.6

**TABLE OF AUTHORITIES**
(continued)

Page

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
  396 F.3d 96, 123 (2d Cir. 2005) ............................................................................. 18

*Walsh v. Kindred Healthcare*,
  No. C 11-00050 JSW, 2013 U.S. Dist. LEXIS 176319 (N.D. Cal. 2013) .................................. 9

*Zeisel v. Diamond Foods, Inc.*,
  No. C 10-01192 JSW, 2012 U.S. Dist. LEXIS 148893 (N.D. Cal. Oct. 16, 2012) .................... 9

<u>**RULES**</u>

Fed. R. Civ. P. 23(e) ......................................................................................... 6

<u>**OTHER AUTHORITIES**</u>

Brian T. Fitzpatrick, *An Empirical Study of Class Action Settlements and Their Fee Awards*,
  7 J. Empirical L. Stud. 811 (2010) ......................................................................... 8

Federal Judicial Center, Manual for Complex Litigation,
  § 27.71, p.336 (4th ed. 2004) ............................................................................ 10

Theodore Eisenberg & Geoffrey P. Miller,
  *Attorneys' Fees and Expenses in Class Action Settlements*: 1993-2008, 19 (2009) ............... 8

1215851.6

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

2

**I.       INTRODUCTION**

3        Class Counsel respectfully move the Court to award: (a) attorneys' fees and costs in the

4  total amount of $838,386.00, which is less than 25 percent of the $3,354,745.98 non-reversionary

5  cash Settlement Fund that Class Counsel obtained through their efforts;  and (b) modest Service

6  Awards to the two Representative Plaintiffs of $2,000.00 each for their efforts on behalf of the

7  Class.

8        Class Counsel respectfully submit that the requested fee is fair, reasonable, and consistent

9  with Ninth Circuit law.  Class Counsel seek their fees under the percentage-of-the-fund method.

10  The Ninth Circuit benchmark in common fund cases is 25 percent of the Settlement Fund, plus

11  recovery of costs.  Here, Class Counsel seek 25 percent of the Fund inclusive of, and not in

12  addition to, their costs. *See, e.g., Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1049 (9th Cir.

13  2002).

14        Class Counsel also submit that there is no reason to deviate from the benchmark and

15  award less than the requested fee.  Class Counsel's fee request is well-within the range commonly

16  awarded in comparable cases and is well-justified here.  Class Counsel's request is also supported

17  by a lodestar plus multiplier cross-check, if the Court chooses to perform one.  That cross-check

18  reveals that the fee requested by Class Counsel would result in a multiplier of 2.76, which is

19  within the range for such multipliers established by the Ninth Circuit when costs are *not*

20  subsumed within the attorneys' fee award.  *Id.* at 1051 & n.6.

21        Class Counsel respectfully submit that their fee request is appropriate under either

22  measure in light of the result achieved for the Class.  The fact that BOW agreed to changes that

23  provide Class Members the ability to stop the automated calls to cell phones that are the entire

24  basis for this litigation further supports the requested fee.  *See id* (appropriate to enhance the

25  value of settlements for purposes of fee analyses where, as here, there are significant

26  "nonmonetary benefits conferred by the litigation.").  These practice changes—together with the

27  cash fund—represent a terrific result, particularly in light of BOW's argument that prior express

28  consent can be given simply by providing a telephone number at any point in time during a

1   banking relationship—in other words, that customers gave affirmative consent to be contacted—

2   and the other significant risks and challenges that Plaintiffs and the Class faced in establishing

3   class-wide liability and damages.

4          While the deadline for Class Members to exclude themselves or to submit objections is

5   March 10, the reaction from the Class to date has been very positive.  As of today, only seven

6   Class Members have requested to be excluded, and not one objection has been submitted.[3]  These

7   numbers stand in stark contrast to the over 13,000 Class Members who already submitted requests

8   to stop calls and/or claims for cash payments.

9          For these reasons, and as detailed below, Class Counsel respectfully submit that the fee

10  request and service awards are well-supported and should be granted.

11  **II.      BACKGROUND**

12          **A.      The Settlement Terms.**

13          The Settlement achieved by Class Counsel provides both prospective and monetary relief

14  for the Class.

15                  **1.      The Prospective Changes.**

16          Class Counsel's interviews with Plaintiffs and Class Members revealed that for many,

17  putting a stop to the autodialed and/or prerecorded calls to their cell phones was the primary goal

18  of this litigation.[4]  The Settlement achieves this result.  Specifically, for Class Members who

19  execute a valid and timely request ("Request to Stop Calls"), BOW shall not make use of, or

20  knowingly authorize anyone acting on its behalf to make use of, an automatic telephone dialing

21  system and/or an artificial or prerecorded voice, to call Class Members' cell phones or to send

22  text messages to their cell phones.  Agreement § III.C.1.a.  Through the Settlement Website,

23  Class Members are able submit the Request to Stop Calls simply by checking a box and providing

24  their current cell phone number.  *Id.* § § III.C.1.b.  As an alternative, Class Members may sign

25  and return a simple, streamlined one-page "hard copy" Request to Stop Calls to the Claims

26  Administrator.  *Id.*  Class Members have until March 10, 2015 to submit their Request to Stop

27

28

---

[3] *See* Hutchinson Decl. ¶ 63.  The final opt-out and objection figures will be reported to the Court in advance of the final approval hearing.

[4] *See* Hutchinson Decl. ¶ 18.

1215851.6

MOTION FOR ATTORNEYS' FEES AND EXPENSES
AND FOR SERVICE AWARD
CASE NO. 13-CV-2376-EMC

Calls. While Class Counsel have not attempted to monetize the dollar value of this prospective relief to Class Members, based on Class Counsel's investigation and discussions with Class Members, Class Counsel know that this relief was a key goal of Class Members.  The changes will stop the unwanted autodialed and/or prerecorded calls that are the entire basis for this litigation.

### 2.      The Common Settlement Fund and Cash Payments to the Class.

In addition to the prospective relief for the Class, the Settlement also requires BOW to pay $3,354,745.98 into a non-reversionary cash Settlement Fund from which Class Members who submit timely valid claims will receive a Cash Award.  *All* class members are eligible to submit claims.

If the Court awards the requested amounts of attorneys' fees ($838,386) and grants the requested service award for Plaintiffs ($2,000 each), and after deducting anticipated administrative costs, Class Counsel conservatively estimate that each Class Member who submits a timely and valid claim will receive a payment of at least $25 to $50.[5]

### B.      Class Counsel's Prosecution of This Matter.

Class Counsel worked very hard to achieve the results delivered under the proposed Settlement.  The Settlement is the product of efforts that began in 2012, when Class Counsel were first contacted by BOW customer and Plaintiff Bayat regarding his allegation that BOW called Plaintiffs and Class Members on their cellular telephones through the use of automatic telephone dialing systems and/or using an artificial or prerecorded voice without prior consent in violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. §227(b)(1)(A).

In October 2012, Plaintiffs' counsel informed Bank of the West of Plaintiff Bayat's intention to file a class action lawsuit on behalf of himself and all other similarly situated consumers for legal and equitable relief.  After entering into a litigation standstill and tolling agreement to preserve Plaintiff Bayat's and Class Members' rights, the parties participated in dozens of telephonic and written exchanges.  Specifically, over a seven-month period, the parties

---

[5] The Claims Administrator will update the Court on the final amount once the claims period ends on March 10, 2015.

1215851.6

1    discussed their relative views of the law and the facts, and exchanged significant informal

2    discovery, including Plaintiffs' cellular telephone records, data regarding BOW's calls, relevant

3    caselaw, declaratory rulings by the FCC, and prior settlement agreements in a series of TCPA

4    actions.  These negotiations culminated in a May 16, 2013, in-person meeting at the offices of

5    Plaintiffs' counsel. However, despite their efforts, the parties reached an impasse

6            Class Counsel filed this case on May 24, 2013 on behalf of Plaintiff Bayat and a

7    nationwide class of BOW customers who received automated calls to their cellular telephones.

8    *See* Hutchinson Decl. ¶ 23; Dkt. No. 1. Plaintiff Ereikat joined this action in the First Amended

9    Complaint on June 28, 2013. Dkt. No. 9.  On August 9, 2013, BOW answered the First Amended

10   Complaints and set forth thirteen affirmative defenses.  Dkt. No. 18.

11           The parties remained sharply divided on the merits of this action.  As reported to the Court

12   in the Joint Case Management Conference Statement, Bank of the West anticipated filing an early

13   motion on the issue of "prior express consent" under the TCPA.  Dkt. No. 15 at 4-5.  At the

14   September 5, 2013, Case Management Conference, the Court ordered the parties to mediate

15   within 120 days.  Dkt. Nos. 20, 21.  The parties thereafter exchanged their initial disclosures and

16   set a mediation date for December 18, 2013.  Over the course of the next three months, the parties

17   engaged in all "discovery necessary to facilitate mediation," as directed by the Court.  Dkt.

18   Nos.  21, 23.

19           On December 18, 2013, the parties participated in a full-day mediation session before the

20   Honorable Edward A. Infante (Ret.) of JAMS.  The parties submitted detailed mediation briefs to

21   Judge Infante, setting forth their respective views on the strengths of their cases.  During the day-

22   long session, the parties discussed their relative views of the law and the facts and potential relief

23   for the proposed Class.  Counsel exchanged a series of counterproposals on key aspects of the

24   Settlement, including the parameters of the prospective and monetary relief for the Class.  At all

25   times, the parties' settlement negotiations were highly adversarial, non-collusive, and at arm's

26   length.  *See* Hutchinson Decl. ¶ 29, Wilson Decl. ¶ 19.

27           The mediation resulted in the issuance of a mediator's proposal.  In order for the parties to

28   respond to the proposal, the parties exchanged additional information informally. Following this

1215851.6

MOTION FOR ATTORNEYS' FEES AND EXPENSES
AND FOR SERVICE AWARD
CASE NO. 13-CV-2376-EMC

1   additional exchange of information and a series telephonic and written communications with

2   Judge Infante, the parties agreed to a modified mediator's proposal on March 4, 2014.  *See*

3   Hutchinson Decl. ¶ 31.

4       Pursuant to the mediator's proposal, the parties thereafter engaged in significant additional

5   confirmatory discovery.  Bank of the West therefore provided Plaintiffs' counsel with

6   confidential and proprietary confirmatory discovery that confirmed that there are potentially

7   871,836 persons who are class members, and that the terms of the Settlement are fair, reasonable,

8   and adequate for all Class Members.  *Id*. at ¶¶ 32-33.

9       With the confirmatory discovery completed and after extensive, additional negotiations,

10  the parties turned to the settlement agreement, claim forms, and notice documents and executed a

11  Settlement Agreement ("Agreement") on June 4, 2014.  *Id*. at ¶ 34.

12      Class Counsel continued to work with the Settlement Administrator to oversee all

13  Settlement notice and claims administration issues, and respond to inquiries from Class Members.

14  That work continues, and will continue throughout the approval process and, if the Settlement is

15  approved, until the Settlement is fully implemented and all claims paid.  None of this future work

16  is reflected in the lodestar to date, but based upon experience in similar cases, Class counsel

17  anticipate it could run into the tens of thousands of dollars (or more) in additional lodestar.[6]

18      **C.      Class Counsel's Time Management.**

19      Although Class Counsel seek fees based on a percentage-of-the-fund and not a lodestar

20  analysis, they nonetheless worked closely and in cooperation with one another to divide tasks,

21  ensure efficient case management, and prevent duplication of efforts.  By assigning specific tasks

22  among firms, and assigning work to the appropriate level attorneys within each firm, they were

23  able to avoid duplicating or replicating work.[7]

24      For the purposes of the lodestar cross-check, Class Counsel also carefully reviewed their

25  firm's internal time records and deleted entries for duplicate work.  For example, Class Counsel

26  deleted time spent simply reviewing work done by other attorneys and billable time spent on

27

28  [6] *See* Hutchinson Decl. ¶ 41.
    [7] *See* Hutchinson Decl. ¶¶ 35-38, Wilson Decl. ¶¶ 22-23.

MOTION FOR ATTORNEYS' FEES AND EXPENSES
AND FOR SERVICE AWARD
CASE NO. 13-CV-2376-EMC

1215851.6

1   routine, case-related housekeeping matters.  In addition, Class Counsel deleted all time billed by

2   attorneys and staff who contributed only minimal time to prosecuting the Actions.[8]

3   **III.   ARGUMENT**

4      **A.   The Requested Fee Award is Fair, Adequate, and Reasonable.**

5      In deciding whether the requested fee amount here is appropriate, the Court's role is to

6   determine whether such amount is "'fundamentally fair, adequate, and reasonable.'"  *Staton v.*

7   *Boeing Co.*, 327 F.3d 938, 963 (9th Cir. 2003) (quoting Fed. R. Civ. P. 23(e)); *In re Wash. Pub.*

8   *Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1294-95 n.2 (9th Cir. 1994) (overriding principle is

9   that the fee award be "reasonable under the circumstances").

10     The "common fund" doctrine applies where, as here, a litigation results in the recovery of

11  a certain and calculable fund on behalf of a group of beneficiaries.  The Ninth Circuit and other

12  federal courts have long recognized that when counsel's efforts result in the creation of a common

13  fund that benefits plaintiffs and unnamed class members, counsel have an equitable right to be

14  compensated from that fund for their successful efforts in creating it.  *See Boeing Co. v. Van*

15  *Gemert*, 444 U.S. 472, 478 (1980) ("lawyer who recovers a common fund…is entitled to a

16  reasonable attorney's fee from the fund as a whole"); *Staton*, 327 F.3d at 967 (quoting *Boeing*); *In*

17  *re Washington Pub. Power Supply System Sec. Litig.*, 19 F.3d 1291, 1300 (9th Cir. 1994) ("those

18  who benefit in the creation of a fund should share the wealth with the lawyers whose skill and

19  effort helped create it").

20     In common fund cases, as opposed to cases analyzing fees under a fee-shifting provision,

21  courts within the Ninth Circuit have discretion to use one of two methods to determine whether

22  the request is reasonable: (1) percentage-of-the-fund; or (2) lodestar plus a risk multiplier.  *Staton,*

23  327 F.3d at 967-68; *see also In re Mercury Interactive Corp.*, 618 F.3d 988, 992 (9th Cir. 2010).

24  "Though courts have discretion to choose which calculation method they use, their discretion

25  must be exercised so as to achieve a reasonable result."  *In re Bluetooth Headset Prods. Liab.*

26  *Litig.*, 654 F.3d 935, 942 (9th Cir. 2011).  Class Counsel's request for fees here is appropriately

27  analyzed—and reasonable—under the percentage-of-the-fund analysis.  The reasonableness of

28  _____

[8] *See id.*

MOTION FOR ATTORNEYS' FEES AND EXPENSES
AND FOR SERVICE AWARD
CASE NO. 13-CV-2376-EMC

Class Counsel's fee award request is confirmed by a lodestar plus multiplier cross-check, which courts in the Ninth Circuit may employ in their discretion.

### 1. The Requested Fee is Presumptively Reasonable because it Resulted from Arms' Length Negotiations.

As the United States Supreme Court has explained: "A request for attorney's fees should not result in a second major litigation.  Ideally, of course, litigants will settle the amount of a fee." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).  While the Court must perform its own evaluation to verify that the requested fees are reasonable and not the product of collusion, it should give weight to the judgment of the parties and their counsel where, as here, the fees were agreed to through arm's length negotiations after the parties agreed on the other key deal terms. *See, e.g., Brazil v. Dell Inc.*, No. C-07-01700 RMW, 2012 U.S. Dist. LEXIS 47986, at *4 (N.D. Cal. Apr. 4, 2012).

Here, the fee amount, like the Settlement itself, was agreed upon under the auspices and with the assistance of an experienced, well-respected former judge and mediator, the Hon. Edward A. Infante.  That fact serves as "independent confirmation that the fee was not the result of collusion or a sacrifice of the interests of the class."  *Hanlon v. Chrysler Corp*, 150 F.3d 1011, 1029 (9th Cir. 1998).  Under these circumstances, the Court should give weight to the judgment of the parties and their counsel regarding reasonable fees.

### 2. The Court Should Apply the Percentage-of-the-Fund Method

The fairest and most efficient way to calculate a reasonable fee where, as here, contingency fee litigation has produced a common fund is by awarding Class Counsel a percentage of the total fund.

The percentage-of-the-fund method comports with the legal marketplace, where counsel's success is frequently measured in terms of the results counsel has achieved.  *See Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1269 (D.C. Cir. 1993) (in common fund cases "the monetary amount of the victory is often the true measure of [counsel's] success").  By assessing the amount of the fee in terms of the amount of the benefit conferred on the class, the percentage method "more accurately reflects the economics of litigation practice" which, "given the uncertainties and

hazards of litigation, must necessarily be result-oriented." *Id.* Moreover, it most effectively aligns the incentives of the class members and their counsel and thus encourages counsel to spend their time efficiently, and to focus on maximizing the relief available to the class, rather than their own lodestar hours. *Vizcaino*, 290 F.3d at 1050 n.5; *In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1375 (N.D. Cal. 1989).

For these reasons, the percentage-of-the-fund method is applied more frequently than the lodestar plus multiplier method in common fund cases in the Ninth Circuit. *See, e.g., In re Omnivision*, 559 F. Supp. 2d at 1046 ("[U]se of the percentage method in common fund cases appears to be dominant."); *Vizcaino*, 290 F.3d at 1050 ("[T]he primary basis of the fee award remains the percentage method."); *Lopez v. Youngblood*, No. CV-F-07-0474 DLB, 2011 U.S. Dist. LEXIS 99289, at *31 (E.D. Cal. Sept. 1, 2011) ("[W]hile the Court has discretion to use either a percentage of the fund or a lodestar approach in compensating class counsel . . . the percentage of the fund is the typical method of calculating class fund fees."); *In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1374-78 (N.D. Cal. 1989) (discussing advantages of percentage of recovery method in common fund cases).

Further confirming courts' preference for awarding attorneys' fees in class cases on a percentage-of-the-fund-basis, an empirical study based on eighteen years of published opinions on settlements in 689 common fund class action and shareholder derivative settlements in both state and federal courts found the following: (1) 80% of cases employed the percentage-of-the-recovery method and (2) the number of courts employing the lodestar method has declined over time, from 13.6 percent from 1993-2002 to 9.6% from 2003 to 2008. *See* Theodore Eisenberg & Geoffrey P. Miller, *Attorneys' Fees and Expenses in Class Action Settlements*: 1993-2008, 19 (2009).[9] A similar study of 688 settlements – including *every* class action settlement approved by a federal court over the two-year period from 2006 to 2007 – found that the lodestar method was used in only 12% of settlements nationwide. *See* Brian T. Fitzpatrick, *An Empirical Study of Class Action Settlements and Their Fee Awards*, 7 J. Empirical L. Stud. 811, 812-13, 832 (2010).

---

[9] *available at* http://www.uscourts.gov/uscourts/RulesAndPolicies/rules/Duke%20Materials/ Library/Theodore%20Eisenberg,%20Geoffrey%20Miller,%20Attorneys'%20Fees%20in%20Class%20Actions.pdf.

MOTION FOR ATTORNEYS' FEES AND EXPENSES
AND FOR SERVICE AWARD
CASE NO. 13-CV-2376-EMC

1    Courts typically rely on the lodestar method under circumstances not applicable here; *i.e.*, where

2    "there is no way to gauge the net value of the settlement or of any percentage thereof." *Hanlon*,

3    150 F.3d at 1029.

4        For these reasons, Class Counsel submit that the Court should use the standard

5    percentage-of-the-fund approach to determining the award of attorneys' fees in this action.

6                    **3.**      **The Percentage-of-the-Fund Method Confirms the Class Counsel's Fee**
                                  **Request Is Reasonable.**
7

8        Class Counsel's request for attorneys' fees and costs in a total amount of $838,386.00 —

9    25% of the $3,354,745.98 common fund—is fair and reasonable under the circumstances of this

10   case.  In the Ninth Circuit, the "benchmark" percentage fee award is 25% of the common fund,

11   with costs and expenses awarded *on top of* this fee amount.  Moreover, courts in this Circuit often

12   award a percentage of the fund that is higher than the 25% benchmark.  *Omnivision*, 559 F. Supp.

13   2d at 1047 ("[I]n most common fund cases, the award exceeds th[e] benchmark."); *see also*

14   *Vizcaino*, 290 F.3d at 1048-1050 (awarding 28%); *Walsh v. Kindred Healthcare,* No. C 11-00050

15   JSW, 2013 U.S. Dist. LEXIS 176319, *12 (N.D. Cal. 2013) (White, J.) (awarding approximately

16   30%); *Zeisel v. Diamond Foods*, *Inc*., No. C 10-01192 JSW, 2012 U.S. Dist. LEXIS 148893, *13-

17   14 (N.D. Cal. Oct. 16, 2012) (White, J.) (awarding just over 30%); *Ozga v. U.S. Remodelers, Inc*.,

18   No. C 09-05112 JSW, 2010 U.S. Dist. LEXIS 91196, at *9 (N.D. Cal. Aug. 9, 2010) (White, J.)

19   (awarding just under 30%); *Garner v. State Farm*, No. CV 08 1365 CW, 2010 U.S. Dist. LEXIS

20   49482, at *5-6 (N.D. Cal. Apr. 22, 2010) (awarding 30%); *Knight v. Red Door Salons, Inc*., No.

21   08-01520 SC, 2009 U.S. Dist. LEXIS 11149, at *17 (N.D. Cal. Feb. 2, 2009) (same).  Based on

22   this authority, and particularly given the existence of prospective relief in the Settlement, Class

23   Counsel's request for the benchmark award, with no additional request for reimbursement of their

24   costs and expenses, is conservative.

25       Courts consider a number of factors to determine the appropriate percentage to apply,

26   including: (1) the results achieved; (2) the risk of litigation; (3) the skill required and the quality

27   of work; (4) the contingent nature of the fee; and (5) awards made in similar cases.  *Vizcaino*, 290

28

1  F.3d at 1048-1050; *In re Omnivision*, 559 F. Supp. 2d at 1046.  All of these factors favor approval

2  of the 25% fee award requested here.

3              a.       **Class Counsel Achieved a Strong Result for the Class.**

4         The results obtained for the class are generally considered to be the most important factor

5  in determining the appropriate fee award in a common fund case.  *See Hensley v. Eckerhart*,

6  461 U.S. 424, 435-36 (1983); *Vizcaino*, 290 F.3d at 1049; *Omnivision*, 559 F. Supp. 2d at 1046;

7  *see also* Federal Judicial Center, Manual for Complex Litigation, § 27.71, p.336 (4th ed. 2004)

8  (the "fundamental focus is on the result actually achieved for class members").  The significant

9  monetary relief achieved here alone justifies a 25% fee.

10        As a result of Class Counsel's work, BOW is paying $3,354,745.98 in cash into a non-

11  reversionary cash fund.  *All* Class Members are eligible to claim cash payments from the

12  Settlement Fund, with an expected value of between $25 and $50 each.  This is an excellent result

13  for Class Members, particularly because TCPA damages are purely statutory in nature; Class

14  Members have not suffered injuries to person or property, nor any significant out-of-pocket losses

15  or other economic harm.  Particularly given the risks to Plaintiffs and the Class of ongoing

16  litigation, discussed below, the Settlement's substantial payments to Class Members without the

17  risks and additional delay of further litigation are a tremendous result.

18        In addition to this monetary relief, there is significant non-monetary relief in this case as

19  well.  As a result of this Settlement, every each Class Member can put an end to the calls that are

20  the subject of this litigation simply by completing a simple, one-page Request to Stop Calls.

21  (Settlement § III.C.1.a.).  This is a tremendous result, achieved in the face of a resolute defense.

22  As discussed above, the parties' core dispute was the meaning of "prior express consent" under

23  the TCPA.  If BOW prevailed on this issue, most, if not all, Class Members would have no TCPA

24  claim.

25        Ninth Circuit courts repeatedly have held that where, as here, Class Counsel achieve

26  significant benefits that are not accounted for in the dollar value of the common settlement fund,

27  the court "should consider the value of [such] relief as a relevant circumstance in determining

28  what percentage of the common fund class counsel should receive as attorneys' fees."  *Staton*,

327 F.3d at 974; *see also Vizcaino*, 290 F.3d at 1049 (affirming enhanced fee award where "the court found that counsel's performance generated benefits beyond the cash settlement fund"); *Linney v. Cellular Alaska P'ship*, No. C-96-3008 DLJ, 1997 U.S. Dist. LEXIS 24300, *20 (N.D. Cal. July 18, 1997) (granting fee award of one-third of common fund where settlement provided additional non-monetary relief).  Thus, the non-monetary relief further supports Class Counsel's fee request here.

### b.    The Risks of Litigation Supports the Requested Fee

"The risk that further litigation might result in Plaintiffs not recovering at all, particularly a case involving complicated legal issues, is a significant factor in the award of fees."  *In re Omnivision*, 559 F. Supp. 2d at 1046-47; *see also Vizcaino*, 290 F.3d at 1048 (risk of dismissal or loss on class certification is relevant to evaluation of a requested fee).

The risk of further protracted litigation—and ultimately of no recovery at all—was particularly high in this case, given various defenses potentially available to BOW.  First, the factual defense of consent loomed large, as BOW argues that many or most Class Members provided their cell phone numbers either on original credit applications or through subsequent dealings with BOW.  The parties disagree whether the TCPA allows prior express consent for calls to a cell phone to be given at any time after origination of a credit relationship.  *See* Joint Response to Order Re Supplemental Briefing, Dkt. No. 36, at 2-7 (describing the parties' respective positions on the issue of prior express consent with supporting caselaw and FCC regulations).  Plaintiffs assert, based on certain rulings from the Federal Communications Commission (the "FCC"), that consent may be given only at the time the line of credit was established, i.e., during the transaction that resulted in the debt owed.  *Id.* at 2-5.  BOW maintains that Plaintiffs' construction of the rulings is incorrect. In BOW's view, the "transaction that resulted in the debt owed" lasts many years, and any numbers disclosed to BOW during that period fall within the FCC's definition of consent.  *Id.* at 5-7.  To recover under the TCPA, Plaintiffs would need to convince the Court to adopt their view that the FCC has clarified that "prior express consent" can only being given during the opening of Class Members' BOW

MOTION FOR ATTORNEYS' FEES AND EXPENSES
AND FOR SERVICE AWARD
CASE NO. 13-CV-2376-EMC

1    accounts.  The Court could instead have adopted BOW's view that consent may be given at any

2    time and in any manner before the call was placed.

3        Second, there was a risk that the Court would deny a motion to certify a class.  BOW

4    consistently argued that class certification would be inappropriate in this action due to the

5    question of whether Class Members consented to the calls at issue.  And, courts are divided as to

6    whether such consent issues predominant over common questions in TCPA cases, depending on

7    the circumstances of the case.  *Compare Meyer v. Portfolio Recovery Associates*, 707 F.3d 1036,

8    1042 (9th Cir. 2012) (upholding class certification) *with Fields v. Mobile Messengers Am., Inc.*,

9    2013 U.S. Dist. LEXIS 163950 (N.D. Cal. Nov. 18, 2013) (denying class certification because

10   individualized issues regarding consent defeated predominance) (Alsup, J.).

11       Third, at least some courts view awards of aggregate, statutory damages with skepticism

12   and reduce such awards—even after a plaintiff has prevailed on the merits—on due process

13   grounds.  *See, e.g., Aliano v. Joe Caputo & Sons - Algonquin, Inc.,* No. 09 C 910, 2011 U.S. Dist.

14   LEXIS 48323, at *13 (N.D. Ill. May 5, 2011) ("[T]he Court cannot fathom how the minimum

15   statutory damages award for willful FACTA violations in this case — between $100 and $1,000

16   per violation — would not violate Defendant's due process rights . . . . Such an award, although

17   authorized by statute, would be shocking, grossly excessive, and punitive in nature.").

18       Finally, there was the ever-present risk of losing a jury trial.  And, even if Plaintiffs did

19   prevail, any recovery could be delayed for years by an appeal.  Any potential statutory recovery

20   in this case would likely be impossible to recover as a factual matter due in part to the fact that

21   BOW would have every incentive to litigate appeals of any such judgment as far as possible over

22   many years.

23       Class Counsel believe they could have prevailed on these issues, but success was by no

24   means assured.  Litigating these issues would risk recovering nothing for the Class, and would

25   require significant additional expenditure of time, money, and resources for which Class Counsel

26   would not be compensated should they lose on summary judgment or fail to certify a class.

27   Indeed, only a few months ago, another district court denied outright a class certification motion

28   from the same counsel who represent the Class here and adopted a defense view of the TCPA's

- 12 -

MOTION FOR ATTORNEYS' FEES AND EXPENSES
AND FOR SERVICE AWARD
CASE NO. 13-CV-2376-EMC

substantive requirements.  *Balschmiter v. TD Auto Finance LLC*, 2014 U.S. Dist. LEXIS 163771 (E.D. Wisc. Nov. 20, 2014).  Such cases underscore the risk faced by Class Counsel.  Given all of the above risks, all of which were present when Class Counsel undertook the case on a contingency fee basis, Class Counsel's fee award request is reasonable.

<blockquote>c.      **The Skill Required and Quality of Work Performed Supports the Requested Fee.**</blockquote>

The "prosecution and management of a complex national class action requires unique legal skills and abilities" that are to be considered when evaluating fees.  *In re Omnivision*, 559 F. Supp. 2d at 1047 (citation omitted).  Class Counsel are experienced class action litigators who have successfully prosecuted complex consumer cases, and who are particularly skilled and experienced in litigating TCPA class actions.[10]  Class Counsel performed significant factual investigation prior to bringing this action, engaged in protracted and hard-fought negotiations with BOW, and efficiently and vigorously negotiated a $3,354,745.98 Settlement with a prospective practice changes that are important to Plaintiffs and Class Members.[11]  Class Counsel's skill and expertise, reflected in the prompt and significant Settlement, support the fee request.

<blockquote>d.      **Class Counsel's Undertaking of the Action on a Contingency-Fee Basis Supports the Requested Fee.**</blockquote>

The Ninth Circuit has long recognized that the public interest is served by rewarding attorneys who assume representation on a contingent basis to compensate them for the risk that they might be paid nothing at all for their work.  *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d at 1299 ("Contingent fees that may far exceed the market value of the services if rendered on a non-contingent basis are accepted in the legal profession as a legitimate way of assuring competent representation for plaintiffs who could not afford to pay on an hourly basis regardless whether they win or lose."); *Vizcaino*, 290 F.3d at 1051 (courts reward successful class

---

[10] Hutchinson Decl., ¶¶ 2-16; Wilson Decl., ¶¶ 1-7.
[11] Hutchinson Decl., ¶¶ 2-16; Wilson Decl., ¶¶ 1-7.

1215851.6

1  counsel in contingency cases "for taking the risk of nonpayment by paying them a premium over

2  their normal hourly rates").

3      Class Counsel prosecuted this matter on a purely contingent basis, agreeing to advance all

4  necessary expenses and that they would only receive a fee if there was a recovery.  Class Counsel

5  have spent considerable outlays of time and money by, among other things, (1) investigating and

6  litigating this action; (2) negotiating a settlement over many months, including by participating in

7  mediations; (3) reviewing confirmatory discovery and taking confirmatory depositions, and (4)

8  responding to Class Member inquiries.[12]  Class Counsel expended these resources despite the real

9  risk that they would never be compensated at all.  Class Counsel's "substantial outlay, when there

10  is a risk that that none of it will be recovered, further supports the award of the requested fees"

11  here.  *Omnivision*, 559 F. Supp. 2d at 1047.

12      Further, Class Counsel devoted the appropriate amount of time, resources, and energy

13  necessary to handle this matter.  Such devotion to this matter in lieu of other opportunities further

14  supports the requested fee award.

15          **e.    The Requested Fee Comports with Fees Awarded in Similar**
          **Actions.**
16

17      The fee requested is well within the range commonly awarded in TCPA class actions.

18  *See, e.g., Steinfeld v. Discover Financial Services,* No. 12-CV-1118-JSW, 2014 U.S. Dist. LEXIS

19  44855, at *17-20 (N.D. Cal. March 2014) (awarding 25% of $8.7 million TCPA settlement fund),

20  *Bellows v. NCO Financial Systems, Inc.*, No. 07-CV-1413 W (AJB), 2009 U.S. Dist. LEXIS 273,

21  at *4-5 (S.D. Cal. Jan 5, 2009) (awarding 31.6% of TCPA settlement fund); *Adams v.*

22  *AllianceOne Receivables Mgmt., Inc.*, No. 3:08-cv-00248-JAH-WVG (S.D. Cal. Sept. 28, 2012)

23  (awarding 30% of the TCPA settlement fund) (Ex. B to Hutchinson Decl.); *Grannan v. Alliant*

24  *Law Group, P.C.*, No. C10-02803 HRL, 2012 U.S. Dist. LEXIS 8101, at *28-30 (N.D. Cal. Jan.

25  24, 2012) (awarding 25% of TCPA settlement fund); *Satterfield v. Simon & Schuster, Inc. et al.*,

26  No. 06-cv-2893 (N.D. Cal. Aug. 6, 2010) (Ex. C to Hutchinson Decl.) (same).  Courts have done

27  so even in TCPA actions that involved significantly less litigation than that involved in this

28

---

[12] Hutchinson Decl., ¶¶ 49-55; Wilson Decl., ¶¶ 7-8; 17-21.

- 14 -                       MOTION FOR ATTORNEYS' FEES AND EXPENSES
                            AND FOR SERVICE AWARD
                            CASE NO. 13-CV-2376-EMC

1  action. *Lo v. Oxnard European Motors, LLC,* No. 11CV1009 JLS, 2012 U.S. Dist. LEXIS

2  73983, at *9-10 (S.D. Cal. May 29, 2012) (awarding 25% fee request where TCPA class action

3  settled two months after commencement of the lawsuit).

4       In fact, Class Counsel's requested fee award is less than the typical fee often awarded in

5  class actions. *See, e.g., In re Omnivision*, 559 F. Supp. 2d at 1047 ("in most common fund cases,

6  the award exceeds that [25%] benchmark."); *In re Mego*, 213 F.3d at 457, 463 (9th Cir. 2000)

7  (affirming fee award of one third of common fund); *Knight*, 2009 U.S. Dist. LEXIS 11149 at *18-

8  *19 (awarding 30% fee); *In re Heritage Bond Litig. v. U.S. Trust Co. of Tex., N.A.,* No. 02-ML-

9  1475-DT(RCx), 2005 U.S. Dist. LEXIS 13627, at *29 (C.D. Cal. June 10, 2005) (awarding one-

10  third of fund); *In re Public Service Co.,* No. 91-0536M, 1992 U.S. Dist. LEXIS 16326, at *32-33

11  (S.D. Cal. July 28, 1992) (awarding 33% fee); *Antonopulos v. N. Am. Thoroughbreds, Inc*., No.

12  87-0979G (CM), 1991 U.S. Dist. LEXIS 12579, at *9 (S.D. Cal. May 6, 1991) (awarding one-

13  third of fund); *In re M.D.C. Holdings Sec. Litig.,* No. CV 89-0090 E (M), 1990 U.S. Dist. LEXIS

14  15488, at *21, 32 (S.D. Cal. Aug. 30, 1990) (awarding 30% fee where settlement obtained "in a

15  very short amount of time" and finding that class counsel should be rewarded, not penalized, for

16  achieving early success on behalf of the class).

17       In short, Class Counsel's fee request is reasonable and fair under the "percentage of the

18  fund" method.

19            **4.    A Lodestar Plus Multiplier Cross-Check Supports the Requested Fee.**

20       A court applying the percentage-of-the-fund method may use the lodestar method as a

21  "cross-check on the reasonableness of a percentage figure." *Vizcaino*, 290 F.3d at 1050 & n.5.

22  The cross-check is optional, and Class Counsel submit that its use is unnecessary here. *See Glass*

23  *v. UBS Fin. Servs.,* No. C-06-4068 MMC, 2007 U.S. Dist. LEXIS 8476, at *48 (N.D. Cal. Jan.

24  26, 2007) (finding that "where the early settlement resulted in a significant benefit to the class,"

25  there is no need "to conduct a lodestar cross-check").  If the Court chooses to perform such a

26  cross-check here, however, it confirms that a 25% fee award is reasonable.

27       The first step in the lodestar-multiplier approach is to multiply the number of hours

28  counsel reasonably expended by a reasonable hourly rate. *Hanlon,* 150 F.3d at 1029.  Once this

MOTION FOR ATTORNEYS' FEES AND EXPENSES
AND FOR SERVICE AWARD
CASE NO. 13-CV-2376-EMC

raw lodestar figure is determined, the court may then adjust that figure based upon its

consideration of many of the same "enhancement" factors considered in the percentage-of-the-

fund analysis, such as: (1) the results obtained; (2) whether the fee is fixed or contingent; (3) the

complexity of the issues involved; (4) the preclusion of other employment due to acceptance of

the case; and (5) the experience, reputation, and ability of the attorneys.  *See Kerr v. Screen*

*Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975).

### a. Class Counsel's Lodestar is Reasonable.

The accompanying declarations of Class Counsel set forth the hours of work and billing

rates used to calculate their lodestar.  As described in those declarations, Class Counsel and their

staffs have devoted a total of approximately 621.5 hours to this litigation, and have a total

lodestar to date of approximately $303,483.10.[13]  These amounts do not include the additional

time that Class Counsel will spend going forward in seeking approval of, and implementing, the

Settlement, including assisting Class Members with claims and overseeing claims administration

generally, tasks that can require substantial additional hours not reflected in a multiplier

calculated on current lodestar.  Class Counsels' lodestar will grow slightly as they continue to

finalize the settlement process and close the litigation.  The claims period will last until March 10,

and Class Counsel's commitment of time and labor to this case will continue until (and likely

beyond) that date.  Class Counsel will continue to assist Class Members with individual inquiries,

will oversee the claims resolution process, and will help resolve Class member challenges to the

result of their claims submissions.  Judging by previous experiences, these responsibilities will

require substantial numbers of hours of work by Class Counsel over the coming months.

Class Counsel's time was spent primarily on the following tasks: (1) investigating and

litigating the claims of the Plaintiffs and Class Members; (2) engaging in particularly difficult

settlement negotiations, including by participating in a full-day mediation; (3) reviewing BOW's

confirmatory discovery and taking a confirmatory 30(b)(6) deposition; (4) drafting the

preliminary approval motion and overseeing settlement administration; and (5) responding to

Class Member inquiries.

---

[13] *See* Hutchinson Decl. ¶¶ 39, 57, Wilson Decl. ¶ 9, 23.

- 16 -

1  Class Counsel's lodestar is reasonable.  Class Counsel prosecuted the claims at issue

2 efficiently and effectively, making every effort to prevent the duplication of work that might have

3 resulted from having multiple firms working on this case.  Tasks were reasonably divided among

4 two law firms to ensure avoid replicating work.  Further, tasks were delegated appropriately

5 among partners, associate attorneys, paralegals, and other staff.  In addition, Class Counsel's

6 contemporaneous time records were carefully reviewed and certain duplicative and routine work,

7 as well as *de minimis* time billed by attorneys and staff who had little participation in the case,

8 was deleted.

9  Class Counsel's hourly rates are also reasonable.  In assessing the reasonableness of an

10 attorney's hourly rate, courts consider whether the claimed rate is "in line with those prevailing in

11 the community for similar services by lawyers of reasonably comparable skill, experience and

12 reputation." *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1994).  Class Counsel here are

13 experienced, highly regarded members of the bar with extensive expertise in the area of class

14 actions and complex litigation involving consumer claims like those at issue here.  Class

15 Counsel's customary rates used in calculating the lodestar here have been approved by courts in

16 this District and other courts.

17    **b.**  **A Multiplier is Warranted.**

18  The benchmark 25% fee requested by Class Counsel reflects a multiplier of 2.76 of Class

19 Counsel's combined lodestar.  Courts regularly approve fee awards resulting in multipliers which

20 are near or higher than that requested here.  *See, e.g., Steinfeld,* No. 12-CV-1118-JSW, 2014 U.S.

21 Dist. LEXIS 44855, at *17-20 (N.D. Cal. March 2014) (awarding 25% of $8.7 million TCPA

22 settlement fund, which resulted in a 3.5 multiplier on class counsel's lodestar); *AllianceOne,* No.

23 3:08-cv-00248-JAH-WVG (S.D. Cal. Sept. 28, 2012) (Ex. B to Hutchinson Decl.) (awarding 30%

24 of the TCPA settlement fund, which amounted to a 3.81 multiplier of class counsel's lodestar, and

25 awarding costs on top of the fee award); *Steiner v. Am. Broad. Co*., 248 Fed. Appx. 780, 783 (9th

26 Cir. Cal. 2007) (upholding 25% fee award yielding multiplier of 6.85, finding that it "falls well

27 within the range of multipliers that courts have allowed"); *Craft v. County of San Bernardino*, 624

28 F. Supp. 2d 1113, 1125 (C.D. Cal. 2008) (approving 25% fee award yielding a multiplier of 5.2

1    and stating that "there is ample authority for such awards resulting in multipliers in this range or

2    higher"); *Van Vranken v. Atlantic Richfield Co.*, 901 F. Supp. 294, 298-99 (N.D. Cal. 1995)

3    (multiplier of 3.6 was "well within the acceptable range for fee awards in complicated class

4    action litigation" and stating that "[m]ultipliers in the 3-4 range are common"); *see also Vizcaino*,

5    290 F.3d at 1051 and Appendix (affirming 28% fee award where multiplier equaled 3.65; and

6    citing cases approving multipliers in common fund cases averaging 3.32 and going as high as

7    19.6); *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 123 (2d Cir. 2005) (approving

8    multiplier of 3.5); 3 Newberg on Class Actions § 14.03 (multipliers "ranging from one to four are

9    frequently awarded in common fund cases where the lodestar method is applied").  Where the

10   percentage of the fee requested is reasonable, such multipliers in cross-checks reflect the principle

11   that attorneys should not be discouraged from obtaining early victories that benefit the class.  *See,*

12   *e.g., Craft*, F. Supp. 2d at 1123-1127 (awarding 25% of fund, which amounted to 5.2 multiplier,

13   in part because of the numerous drawbacks and disincentives associated with a pure lodestar

14   approach); *see also Lopez*, 2011 U.S. Dist. LEXIS 99289, at *10, 39-43 (citing *Swedish Hosp.*, 1

15   F.3d at 1266-67) (awarding 28.5% of fund, and finding that a lodestar cross-check is "not a useful

16   reference point").

17       Moreover, under the circumstances of this case—including, *inter alia*, the excellent

18   monetary and prospective relief obtained for the Class; the risk involved with continued litigation;

19   the contingent nature of the fee; the arm's length nature of difficult and protected negotiations;

20   and the experience of Class Counsel in litigating TCPA class actions—a significant multiplier is

21   well justified here under applicable law if the Court performs a cross-check.  *See Kerr*, 526 F.2d

22   at 70; *see also Washington Pub. Power*, 19 F.3d at 1299-1300 ("[C]ourts have routinely enhanced

23   the lodestar to reflect the risk of non-payment in common fund cases" in accord with the

24   "established practice in the private legal market of rewarding attorneys for taking the risk of

25   nonpayment by paying them a premium over their normal hourly rates for winning contingency

26   cases.").  A lodestar plus multiplier cross-check therefore further supports the reasonableness of

27   the requested 25% fee.

28

MOTION FOR ATTORNEYS' FEES AND EXPENSES
AND FOR SERVICE AWARD
CASE NO. 13-CV-2376-EMC

1

2

B.     **The Class Counsel Are Not Seeking Reimbursement of their Costs on Top of the Fee Award, Although Such Reimbursement Would be Justified.**

3     Class Counsel are not seeking payment of costs in addition to their recovery of 25% of the

4 Fund, and will instead be reimbursed their relatively modest costs out of that 25%.  As such, there

5 is no need for any detailed analysis.  Nonetheless, recovery of those costs – on top of the fee

6 award – would be appropriate in its own right.  "Reasonable costs and expenses incurred by an

7 attorney who creates or preserves a common fund are reimbursed proportionately by those class

8 members who benefit from the settlement."  *In re Media Vision Tech. Sec. Litig.*, 913 F. Supp.

9 1362, 1366 (N.D. Cal. 1995) (citing *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 391-392

10 (1970)).  To date, Class Counsel have incurred out-of-pocket costs totaling $29,602.56.[14]  This

11 amount includes costs for (1) mediation fees; (2) travel to mediation, a meeting with counsel, and

12 court hearings; (3) hard costs such as legal research through LEXIS and Westlaw and Federal

13 Express, postage, and messengering fees; and (4) other costs such as printing, copying, and

14 telephone charges.  These relatively modest out-of-pocket costs were necessary to secure the

15 resolution of this litigation.  *See In re Media Vision*, 913 F. Supp. at 1367-72 (costs related to

16 retention of experts, photocopy costs, travel expenses, postage, telephone costs, computerized

17 legal research fees, and filing fees may be reimbursed).

18     In addition, although it was not called for by the Settlement Administrator's original

19 Court-approved Notice Plan, Class Counsel negotiated with the Settlement Administrator to send

20 two additional email blasts of the Class Notice to remind Class Members to submit claims.  Class

21 Counsel will pay this additional cost at their sole expense.

22     C.     **The Class Representatives' Service Awards Are Reasonable.**

23     As the Ninth Circuit has recognized, "named plaintiffs, as opposed to designated class

24 members who are not named plaintiffs, are eligible for reasonable incentive payments."  *Staton*,

25 327 F.3d at 977; *Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 958 (9th Cir. 2009) (service

26 awards "are fairly typical in class action cases").  Such awards are "intended to compensate class

27 representatives for work done on behalf of the class [and] make up for financial or reputational

28

---

[14] *See* Hutchinson Decl. ¶¶ 43, Wilson Decl. ¶ 13.

1215851.6

- 19 -

1    risk undertaken in bringing the action." *Id*.  Small incentive awards, such as those requested here,

2    promote the public policy of encouraging individuals to undertake the responsibility of

3    representative lawsuits.  The requested modest service awards of $2,000 for each of the two Class

4    Representatives are well justified.

5         In addition to lending their names to this matter, and thus subjecting themselves to public

6    attention, the Class Representatives were actively engaged in this action.  Among other things,

7    they (1) provided information to Class Counsel for the complaints and other pleadings;

8    (2) reviewed pleadings and other documents; (3) communicated on a regular basis with counsel

9    and kept themselves informed of progress in the litigation and settlement negotiations; and (4)

10   reviewed and approved the proposed settlements. Their dedication to this lawsuit was notable,

11   particularly given the relatively modest size of their personal financial stakes in this case.  *See*

12   *Van Vranken*, 901 F. Supp. at 299 (awarding $100,000 incentive award in part on the ground that,

13   "[i]n exchange for his participation, Van Vranken will not receive great personal benefit").

14        Moreover, the amount requested here, $2,000 for each of the two Class Representatives, is

15   reasonable and less than amounts frequently awarded in TCPA actions.  *See, e.g., Steinfeld,* No.

16   12-CV-1118-JSW, 2014 U.S. Dist. LEXIS 44855, (N.D. Cal. March 2014) ($2,000 to each named

17   plaintiff); *Satterfield*, No. 06-cv-2893 (N.D. Cal. Aug. 6, 2010) (Ex. C to Hutchinson Decl.)

18   (awarding $20,000 to one named plaintiff, and $5,000 each to the other two named plaintiffs, in a

19   TCPA action);  *AllianceOne,*  No. 3:08-cv-00248-JAH-WVG (S.D. Cal. Sept. 28, 2012) (Ex. B to

20   Hutchinson Decl.) (awarding $5,000 to one named plaintiff, and $2,500 each to the other two

21   named plaintiffs, in a TCPA action).  It is also less than the service awards frequently awarded in

22   other class actions, including those that settled at similar procedural postures.  *Hopson v.*

23   *Hanesbrands Inc.,* No. CV-08-0844 EDL, 2009 U.S. Dist. LEXIS 33900, at *27-28 (N.D. Cal.

24   Apr. 3, 2009) (awarding $5,000 incentive payment, constituting 1.25% of the settlement fund, and

25   finding that, "in general, courts have found that $5,000 incentive payments are reasonable")

26   (citations omitted); *Odrick v. UnionBanCal Corp.,* No. C 10-5565 SBA, 2012 U.S. Dist. LEXIS

27   171413, at *11, 18 (N.D. Cal. Dec. 3, 2012) (awarding $5,000 to class representative where "the

28   settlement was reached at the early stages of litigation"); *Fitzgerald v. City of Los Angeles,* No.

MOTION FOR ATTORNEYS' FEES AND EXPENSES
AND FOR SERVICE AWARD
CASE NO. 13-CV-2376-EMC

1   CV 03-01876 NM, 2003 U.S. Dist. LEXIS 27382, at *9 (C.D. Cal. Dec. 8, 2003) (awarding

2   $3,500 each to class representatives in early settlement case).

3     Accordingly, Class Counsel respectfully request the Court to award service awards of

4   $2,000 each to the Class Representatives.

5   **IV.**   <u>**CONCLUSION**</u>

6     For the foregoing reasons, Plaintiffs and Class Counsel respectfully request that the Court

7   enter an Order: (a) awarding Class Counsel attorneys' fees and costs in the total amount of

8   $838,386.00; and (b) awarding the two Plaintiffs a service award in the amount of $2,000 each for

9   their efforts on behalf of the Class, with such amounts to be paid from the common Settlement

10   Fund established in this case.

11

12   Dated: February 9, 2015     Respectfully submitted,

13              LIEFF CABRASER HEIMANN & BERNSTEIN, LLP

14              By: */s/ Daniel M. Hutchinson*
15                Daniel M. Hutchinson

16              LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
           Daniel M. Hutchinson (State Bar No. 239458)
17              Nicole D. Reynolds (State Bar No. 246255)
           275 Battery Street, 29th Floor
18              San Francisco, CA  94111-3339
           Telephone:  415.956.1000
19              Facsimile:  415.956.1008

20              LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
           Jonathan D. Selbin (State Bar No. 170222)
21              250 Hudson Street, 8th Floor
           New York, NY  10013
22              Telephone:  (212) 355-9500
           Facsimile:  (212) 355-9592

23              MEYER WILSON CO., LPA
           Matthew R. Wilson (SB No. 290473)
24              Michael J. Boyle, Jr. (SB No. 258560)
           1320 Dublin Road, Ste. 100
25              Columbus, Ohio 43215
           Telephone:  (614) 224-6000
26              Facsimile:  (614) 224-6066

27              *Attorneys for Plaintiffs Younus Bayat and Mohammed*
           *Ereikat, and the Settlement Class*
28

1215851.6