LIEFF CABRASER HEIMANN
    & BERNSTEIN, LLP
Jonathan D. Selbin (State Bar No. 170222)
jselbin@lchb.com
250 Hudson Street, 8th Floor
New York, NY  10013
Telephone:  (212) 355-9500
Facsimile:  (212) 355-9592

LIEFF CABRASER HEIMANN
    & BERNSTEIN, LLP
Daniel M. Hutchinson (State Bar No. 239458)
dhutchinson@lchb.com
Nicole D. Sugnet (State Bar No. 246255)
nsugnet@lchb.com
275 Battery Street, 29th Floor
San Francisco, CA  94111-3339
Telephone:  415.956.1000
Facsimile:  415.956.1008

MEYER WILSON CO., LPA
Matthew R. Wilson
(State Bar No. 290473)
mwilson@meyerwilson.com
Michael J. Boyle, Jr.
(State Bar No. 258560)
mboyle@meyerwilson.com
1320 Dublin Road, Ste. 100
Columbus, OH  43215
Telephone:  (614) 224-6000
Facsimile:  (614) 224-6066

*Attorneys for Plaintiff Younus Bayat, Mohammed Ereikat and the Settlement Class*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| YOUNUS BAYAT and MOHAMMED EREIKAT, on behalf of themselves and all others similarly situated,<br><br>                Plaintiffs,<br><br>        v.<br><br>BANK OF THE WEST,<br><br>                Defendant. | Case No. 13-CV-2376 (EMC)<br><br>**PLAINTIFFS' NOTICE OF MOTION, MOTION, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Date:        April 2, 2015<br>Time:        1:30 p.m.<br>Courtroom:  5, 17th Floor<br>Judge:        Hon. Edward M. Chen |

1220496.4

**TABLE OF CONTENTS**

**Page**

NOTICE OF MOTION AND MOTION ................................................................. 1

MEMORANDUM OF POINTS AND AUTHORITIES ....................................... 2

I.      INTRODUCTION ........................................................................... 2

II.     STATEMENT OF THE FACTS........................................................ 4

     A.    The TCPA Claims ................................................................ 4

     B.    Plaintiffs Thoroughly Investigated the Claims .......................... 4

     C.    The Parties Mediated After Engaging in Classwide Discovery................. 4

     D.    The Proposed Settlement........................................................ 5

         1.    The Settlement Class ................................................... 5

         2.    Prospective Relief for All Class Members....................... 5

         3.    Monetary Relief for Settlement Class Members.............. 6

         4.    *Cy Pres* Distributions ................................................. 7

         5.    Class Release.............................................................. 7

         6.    Attorneys' Fees and Costs and Class Representative Service Awards ...................................................................... 8

III.    CLASS NOTICE HAS BEEN DISSEMINATED................................. 8

     A.    Direct Mail and Email Notice ................................................ 8

     B.    Published Notice .................................................................. 9

     C.    CAFA Notice ...................................................................... 9

     D.    Settlement Website and Toll-Free Number................................. 9

     E.    Settlement Administration Costs .......................................... 10

IV.    CLASS MEMBERS HAVE RESPONDED POSITIVELY TO THE SETTLEMENT ............................................................................. 10

V.     FINAL APPROVAL IS WARRANTED............................................. 10

     A.    The Class Action Settlement Approval Process........................ 10

     B.    The Settlement is Fair, Reasonable, and Adequate, and Should be Approved........................................................................... 11

         1.    The Strength of the Plaintiffs' Case and the Risk, Expense, Complexity, and Likely Duration of Further Litigation .............. 12

             a.    Challenges to the Claims on Their Merits........................ 13

             b.    The Risk of Maintaining Class Action Status Throughout Trial .............................................. 14

         2.    The Amount Offered in Settlement.............................. 15

         3.    The Extent of Discovery Completed and the Stage of Proceedings ............................................................. 16

         4.    The Experience and Views of Counsel ......................... 16

         5.    The Presence of a Governmental Participant ................. 17

**TABLE OF CONTENTS**
(continued)

Page

6.     The Reaction of Class Members .................................................... 17

7.     The Settlement is the Product of Arm's Length Negotiations ...... 18

VI.     CONCLUSION .................................................................................................... 18

# TABLE OF AUTHORITIES

Page

## CASES

*Adams v. AllianceOne Receivables Mgmt., Inc.*,
   No. 3:08-cv-00248-JAH-WVG (S.D. Cal. 2012) ...................................................... 17

*Arthur v. Sallie Mae, Inc.*,
   No. 2:10-cv-00198, 2012 U.S. Dist. LEXIS 132413 (W.D. Wash. Sept. 17, 2012).......... 13, 14

*Arthur v. Sallie Mae, Inc.*,
   No. 2:10-cv-00198 (W.D. Wash.).................................................................. 17

*Balschmiter v. TD Auto Finance LLC*,
   2014 U.S. Dist. LEXIS 163771 (E.D. Wisc. Nov. 20, 2014) ....................................... 15

*Chesbro v. Best Buy Stores, L.P.*,
   No. 2:10-cv-00774 (W.D. Wash.).................................................................. 17

*Churchill Village, LLC v. Gen. Elec.*,
   361 F.3d 566 (9th Cir. 2004)................................................................ 11, 12

*Class Plaintiffs v. City of Seattle*,
   955 F.2d 1268 (9th Cir. 1992)............................................................... 10, 11

*Fields v. Mobile Messengers Am., Inc.*,
   2013 U.S. Dist. LEXIS 163950 (N.D. Cal. Nov. 18, 2013)......................................... 14

*Grannan v. Alliant Law Group, P.C.*,
   No. 5:10-cv-02803 (N.D. Cal.) ................................................................. 17

*Hovila v. Tween Brands, Inc.*,
   No. 2:09-cv-00491 (W.D. Wash.)................................................................. 17

*In re Bluetooth Headset Prods. Liab. Litig.*,
   654 F.3d 935 (9th Cir. Cal. 2011).......................................................... 12, 18

*In re Capital One Tel. Consumer Prot. Act Litig.*,
   Master Docket No. 12 C 10064, MDL 2416, 2015 U.S. Dist. LEXIS 17120
   (N.D. Ill. Feb. 12, 2015)............................................................ 6, 13, 14, 15

*In re Online DVD-Rental Antitrust Litig.*,
   __ F.3d ___, 2015 U.S. App. LEXIS 3093 (9th Cir. Feb. 27, 2015) ............................... 12

*Kazemi v. Payless ShoeSource, Inc.*,
   No. 3:09-cv-05142 (N.D. Cal.) ................................................................. 17

*Kwan v. Clearwire Corp.*,
   No. 2:09-cv-01392 (W.D. Wash.)................................................................. 17

*Laguna v. Coverall N. Am., Inc.*,
   753 F.3d 918 (9th Cir. 2014), *vacated on other grounds by* 2014 U.S. App. LEXIS 21950
   (9th Cir. Nov. 20, 2014)....................................................................... 15

*Lemieux v. Global Credit & Collection Corp.*,
   No. 08-cv-1012-IEG-POR (S.D. Cal. 2008)....................................................... 17

*Linney v. Cellular Alaska P'ship*,
   No. C-96-3008 DLJ, 1997 U.S. Dist. LEXIS 24300 (N.D. Cal. July 18, 1997)....................... 16

*Malta v. Freddie Mac & Wells Fargo Home Mortgage*,
   No. 10-cv-1290-BEN-NLS (S.D. Cal. 2010)....................................................... 17

# TABLE OF AUTHORITIES
## (continued)

**Page**

*Meyer v. Portfolio Recovery Assocs.*,
   707 F.3d 1036 (9th Cir. 2012)...........................................................................14

*Officers for Justice v. Civil Serv. Comm'n*,
   688 F.2d 615 (9th Cir. 1982)........................................................................11, 12

*Sarabi v. Weltman, Weinberg & Reis Co.*,
   No. 10-cv-01777-AJB-NLS (S.D. Cal. 2010)...........................................................17

*Staton v. Boeing Co.*,
   327 F.3d 938 (9th Cir. 2003)..............................................................................12

*Steinfeld v. Discover Fin. Servs.*,
   No. 3:12-cv-01118-JSW, 2014 U.S. Dist. LEXIS 44855 (N.D. Cal. Mar. 31, 2014).................. 6

*Steinfeld, et al. v. Discover Fin. Servs.*,
   No. 3:12-cv-01118-JSW (N.D. Cal.) ...................................................................17

*Wilkins v. HSBC Bank Nev., N.A.*,
   Case No. 1:14-cv-00190, 2015 U.S. Dist. LEXIS 23869 (N.D. Ill. Feb. 27, 2015) ........ 6, 14, 15

## STATUTES

28 U.S.C. § 1715 .....................................................................................2, 9, 17

47 U.S.C. § 227(b)(1)(A) .................................................................................. 4

Fed. R. Civ. P. 23(e)(2) ..................................................................................11

## TREATISES

4 *Newberg on Class Actions* § 11.41 (4th Ed. 2002) ...............................................10, 11

*Manual for Complex Litigation* (Fourth) (2004) § 21.63............................................11

## OTHER AUTHORITIES

*In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of
   1991*, 23 F.C.C.R. 559, 23 FCC Rcd. 559, 43 Communications Reg. (P&F) 877, 2008 WL
   65485 (F.C.C. 2008) ..................................................................................13

1

**NOTICE OF MOTION AND MOTION**

2

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

3

NOTICE IS HEREBY GIVEN that, on April 2, 2015 at 1:30 p.m., or as soon thereafter as

4

the matter may be heard, in the Courtroom of the Honorable Edward M. Chen of the Northern

5

District of California, located at Courtroom 5, 17th Floor, 450 Golden Gate Avenue, San

6

Francisco, California, Plaintiffs Younus Bayat and Mohammed Ereikat ("Plaintiffs"), on behalf of

7

themselves and the proposed settlement class, by and through their undersigned counsel, request

8

that this Court grant final approval of the parties' Settlement Agreement.  Defendant Bank of the

9

West does not object to this Motion.

10

The Motion is based on this Notice of Motion and Motion, the Memorandum of Points

11

and Authorities in Support of Motion for Final Approval, and the exhibits thereto, any oral

12

argument that is held regarding this Motion, the complete record in this litigation, and such other

13

matters as the Court may consider.

14

Dated:  March 17, 2015          */s/ Daniel M. Hutchinson*
                                     Daniel M. Hutchinson

15

16

LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
Daniel M. Hutchinson

17

Nicole D. Reynolds
275 Battery Street, 29th Floor

18

San Francisco, California  94111-3339
Telephone:  (415) 956-1000

19

Facsimile:  (415) 956-1008

20

LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP

21

Jonathan D. Selbin
250 Hudson Street, 8th Floor

22

New York, NY 10013
Telephone: (212) 355-9500

23

24

MEYER WILSON CO., LPA
Matthew R. Wilson

25

Michael J. Boyle, Jr.
1320 Dublin Road, Ste. 100

26

Columbus, OH  43215
Telephone:  (614) 224-6000

27

Facsimile:  (614) 224-6066

28

*Attorneys for the Plaintiffs and the Settlement Class*

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

This case involves a proposed Settlement Class of some 871,836  residents of 19 states who received automated telephone calls from defendant Bank of the West, and/or its vendors, to their cell phones in alleged violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227(b)(1)(A) ("TCPA").  On July 22, 2014, the Court initially granted preliminary approval to a proposed class settlement reached by the parties.  *See* Dkt No. 42.  Subsequently, following provision of the notice required under the Class Action Fairness Act, 28 U.S.C. § 1715, Class Counsel and Bank of the West's Counsel[1] were contacted by representatives of several states' Offices of Attorney General regarding that settlement.  As a result of these conversations, Class Counsel and Bank of the West's Counsel made minor changes to the settlement to clarify its terms, and submitted to the Court an amended Settlement agreement (the "Settlement").  *See* Dkt. No. 46.  The Court granted preliminary approval to the new Settlement on November 26, 2014. *See* Dkt. No. 56.

Pursuant to the Court-approved notice plan, direct individual notice of the Settlement was disseminated to 468,200 individuals in the Settlement Class via email and mail, and notice was published in Parade Magazine, as well as five newspapers and newspaper groups targeted at the 19 states where Bank of the West has branches.[2]  Individuals in the Settlement Class had until March 10, 2015 to submit claims, opt out, or object.  *See* Dkt. No. 56.  The reaction from the Class to the Settlement has been very positive.  Approximately 16,631 Settlement Class Members filed timely claims and/or requests to stop calls, while just 10 persons have asked to be excluded, and no valid, timely objections have been received.[3]  Also, no state attorney general has objected.

---

[1] Unless otherwise noted, all capitalized terms are used herein as defined in the Settlement.  *See* Dkt. No. 46, Section II.

[2] *See* Declaration of Kenneth Jue in Support of Motion for Final Approval of Class Action Settlement ("Jue Decl."), ¶¶ 6-18.  Based on Bank of the West's dialer records, the parties confirmed that Bank of the West had contact information for 483,473 individuals (468,200 after removing 15,134 duplicate records and 139 incomplete addresses), but lacked contact information for approximately 388,363 persons who are potential class members.  Due to the lack of data, the Court determined that it was reasonable to provide notice to the unknown potential class members via publication notice.

[3] *See* Jue Decl., ¶¶ 21-22.

1    By this Motion, Plaintiffs respectfully request that the Court finally approve the

2    Settlement as fair, reasonable, and adequate.

3    The Settlement is the product of extensive arm's-length negotiations between the parties

4    and their counsel during a full-day mediation session, and follow-up telephone sessions, with a

5    well-respected mediator and former federal magistrate judge, the Honorable Edward A. Infante

6    (Ret.) of JAMS.  Class Counsel have extensive experience litigating TCPA class actions and

7    other consumer class actions, and were well-informed about the legal and factual issues involved

8    in this matter.

9    The Settlement is a good result for the Class.  Plaintiffs alleged that Bank of the West

10   and/or its vendors called Plaintiffs and individuals in the Settlement Class on their cell phones

11   through the use of automatic telephone dialing systems and/or using an artificial or prerecorded

12   voice without their prior express consent, in violation of the TCPA.  Class Counsel's

13   investigation and conversations with Plaintiffs and individuals in the Settlement Class revealed

14   that for many, the primary goal was to put an end to these unwanted phone calls.  The Settlement

15   provides Plaintiffs and Settlement Class Members with this exact relief, by allowing them to put

16   an end to automated calls made to their cell phones going forward by filling out a simple Request

17   to Stop Calls.  In addition, Settlement Class Members who filed qualified claims will receive a

18   *pro rata* cash payment from a non-reversionary cash common fund of $3,354,745.98.

19   The relief the Settlement provides is outstanding, particularly in view of the risks and

20   delays involved in continued litigation.  The parties disagree on whether the TCPA allows prior

21   express consent for calls to a cell phone to be given at any time after origination of a credit

22   relationship.  Plaintiffs assert, based on certain rulings from the Federal Communications

23   Commission (the "FCC"), that consent may be given only at the time of the loan origination.  In

24   Bank of the West's view, the FCC could not have intended this construction in the context of

25   credit relationships that last for many years.  Bank of the West instead believes that the FCC

26   rulings state that prior express consent can be given at any point in time and in any manner during

27   a credit relationship.  If the Court were to adopt Bank of the West's view, both obtaining class

28   certification and proving liability would be challenging.

For the foregoing reasons and the others detailed below, the Settlement readily meets the standards for final approval, and Plaintiffs respectfully request that it should therefore be granted.

## II.   STATEMENT OF THE FACTS

The factual and procedural background of this case was set forth in detail in Plaintiffs' Motion for Preliminary Approval.  For the Court's convenience, Plaintiffs provide only a short summary of the facts below.

### A.   The TCPA Claims

Plaintiffs brought these actions alleging that Bank of the West engaged in a systematic practice of calling or texting consumers' cell phones through the use of automatic telephone dialing systems and/or an artificial or prerecorded voice without their prior express consent, in violation of the TCPA, 47 U.S.C. § 227(b)(1)(A).  Bank of the West denies all of Plaintiffs' allegations and vigorously argues that it broadly had express consent to engage in these communications.

### B.   Plaintiffs Thoroughly Investigated the Claims

Plaintiffs thoroughly researched Bank of the West's practices and Plaintiffs' legal claims prior to filing suit.  For example, Class Counsel interviewed and collected relevant information and documents, conducted legal research into the merits of the TCPA claims, and conducted research on Bank of the West itself.  This information was essential to Class Counsel's ability to understand the nature of the alleged problem and potential remedies.

Plaintiffs engaged in extensive informal discovery with Bank of the West, including the exchange of Plaintiffs' cell phone records and data regarding Bank of the West's calls.  Plaintiffs also engaged in formal, confirmatory discovery relevant to the Settlement, including additional documents, data, written discovery responses, and a deposition.[4]

### C.   The Parties Mediated After Engaging in Classwide Discovery

On December 18, 2013, the parties participated in a full-day mediation session before Judge Infante.  The parties submitted detailed mediation briefs, setting forth their respective

---

[4] *See* Declaration of Daniel M. Hutchinson in Support of Motion for An Award of Attorneys' Fees and Expenses and for Service Awards to Class Representatives, Dkt. No. 58 ("Hutchinson Decl."), ¶¶ 32-34.

1  views on the strengths of their cases.  During the day-long session, the parties discussed their

2  relative views of the law and the facts and potential relief for the proposed Settlement Class.

3  Counsel exchanged a series of counterproposals on key aspects of the Settlement, including the

4  parameters of the practice changes and monetary relief for the proposed Settlement Class.  At all

5  times, the parties' settlement negotiations were highly adversarial, non-collusive, and at arm's

6  length.

7       The negotiations stalled, which resulted in the issuance of a mediator's proposal in an

8  attempt to bridge the remaining gap.  In order for the parties to respond to the proposal, the

9  parties exchanged additional information informally.  Following this additional exchange of

10  information and a series of additional telephonic and written communications with Judge Infante,

11  the parties agreed to a modified mediator's proposal on March 4, 2014.  The Settlement

12  Agreement is a result of these arm's-length negotiations, investigative efforts, and the parties'

13  acceptance of the mediator's proposal.

14       **D.**     **The Proposed Settlement.**

15       The key terms of the Settlement are summarized below for the Court's convenience.

16            **1.**     **The Settlement Class**

17       The Settlement Class is comprised of:

18            All persons within the United States to whom, on or after
              November 2, 2008, through July 22, 2014, a non-emergency
19            telephone call was attempted by Bank of the West, or any other
              entity on its behalf, to a cellular telephone through the use of an
20            automatic telephone dialing system or an artificial or prerecorded
              voice.  Excluded from the Settlement Class are BOW and any
21            affiliate or subsidiary of BOW, along with any employees thereof,
              and any entities in which any of such companies have a controlling
22            interest, the Judge to whom the Action is assigned and any member
              of the Judge's staff and immediate family, as well as all persons
23            who validly opt out of the Settlement Class.

24            **2.**     **Prospective Relief for All Class Members**

25       The primary focus of the Settlement is prospective practice changes.  Specifically, for

26  Settlement Class Members who execute a valid and timely request ("Request to Stop Calls"),

27  Bank of the West shall not make use of, or knowingly authorize anyone acting on its behalf to

28  make use of, an automatic telephone dialing system and/or an artificial or prerecorded voice, to

1    call their cell phones or to send text messages to their cell phones.  Agreement § III.C.1.a.  Bank

2    of the West agrees to implement the Requests to Stop Calls by no later than 90 days after the

3    Effective Date.  *Id.*

4         Making this Request was simple.  Instructions were provided to Settlement Class

5    Members in how to make a Request to Stop Calls in the E-mail Notice, direct Mail Notice,

6    Website Notice, and Publication Notice. Agreement § III.C.1.b.  The E-mail Notice included a

7    link to the Settlement website, which provided for online submission of Claim Forms and

8    Requests to Stop Calls.  *Id.*  Each form is a simple one-page document using plain English.[5]  Any

9    Settlement Class Member who wanted the calls to stop could submit such a request, and

10   thousands have done so.

11                    **3.    Monetary Relief for Settlement Class Members**

12        In addition to the core prospective relief for the Settlement Class, the Settlement also

13   requires Bank of the West to provide a non-reversionary cash Settlement Amount of

14   $3,354,745.98, out of which Eligible Settlement Class Members who file a claim will receive a

15   Cash Award in the form of a check. Agreement § III.F.

16        The amount of each Settlement Class Member's Award will be based on a pro rata

17   distribution after deductions for the costs of claims administration, notice, incentive awards and

18   attorneys' fees, depending on the number of valid and timely claims.  Id. § III.F.4.  Based on the

19   number of timely claims received to date, each claimant will receive approximately $129.03.

20   Procedural Guidance, ¶ 1.d.; Agreement §§ IIK., II.P., II.S.  That amount represents a higher per-

21   claimant recovery than similar TCPA class settlements within the past year involving banks.  *See,*

22   *e.g.*, *Steinfeld v. Discover Fin. Servs.,* No. 3:12-cv-01118-JSW, 2014 U.S. Dist. LEXIS 44855

23   (N.D. Cal. Mar. 31, 2014) ($47 per claimant); *In re Capital One Tel. Consumer Prot. Act Litig.*,

24   Master Docket No. 12 C 10064, MDL 2416, 2015 U.S. Dist. LEXIS 17120, at *68  (N.D. Ill. Feb.

25   12, 2015) ($39.66 per claimant); *Wilkins v. HSBC Bank Nev., N.A.*, Case No. 1:14-cv-00190,

26   2015 U.S. Dist. LEXIS 23869, at *12 (N.D. Ill. Feb. 27, 2015) ($93.22 per claimant).  Checks for

27   Cash Awards will be valid for 180 days from the date of the check.  *Id.* § III.F.5.

28

---

[5] *See* Jue Decl., ¶ 5, Exs. B-E.

1    In order to exercise the right to obtain the relief outlined above, Eligible Settlement Class

2    Members needed only to complete a simple, one-page claim form and provide it to the Claims

3    Administrator via the Internet site or by mail. *Id*., § III.F.2, Ex. A.  Eligible Settlement Class

4    Members could alternatively submit a claim by calling the toll-free Settlement Hotline.

### 4. *Cy Pres* Distributions

6    In the event that the combined amounts of any checks that remain uncashed for more than

7    180 days after the date on the checks is equal to or less than $50,000, the money will be, subject

8    to Court approval, distributed cy pres to the charitable, non-profit organization Opportunity Fund.

9    The organization's mission is closely aligned with the interests of Settlement Class Members –

10    most of whom have or had outstanding debts – by providing "microsavings" accounts to help

11    students pay for college and families save for a rainy day, and "microloans" for small business

12    owners. Procedural Guidance, ¶ 8; Agreement § III.G.  No party or counsel of record has any

13    relationship to the Opportunity Fund.  If, for any reason, the Court determines that the proposed

14    recipient is not an appropriate recipient, the parties shall agree on a replacement recipient subject

15    to Court approval.

### 5. Class Release

17    In exchange for the benefits available under the Settlement, Settlement Class Members

18    who do not opt out will provide a release tailored to the practices at issue in this case.

19    Specifically, they will release all claims "that arise out of or are related" to the "use of an

20    'automatic telephone dialing system' or 'artificial or prerecorded voice' to make "calls" to a cell

21    phone (which is defined to include text messages) made by Bank of the West and/or its vendors.

22    Dkt. No. 47-1, at 3.  Settlement Class Members who are or were Bank of the West customers and

23    fail to submit a Request to Stop Calls will not stop such calls.  Bank of the West will deem such

24    customers to have given their legal consent to such calls in the future.  Dkt. No. 55-1, at 2.  The

25    "deemed consent" provisions do not apply to calls for purposes of "telemarketing" (although

26    there is no evidence that Bank of the West made telemarketing calls through the "use of an

27

28

1    'automatic telephone dialing system' or 'artificial or prerecorded voice'").  *Id.* at 2-3.[6]

2               **6.**    **Attorneys' Fees and Costs and Class Representative Service Awards**

3            Class Counsel have separately moved the Court for an award of attorneys' fees, inclusive

4    of costs, in the Ninth Circuit benchmark amount of 25 percent of the Settlement Amount.  Class

5    Counsel have also requested modest service awards to each of the two class representatives in the

6    amount of $2,000 each.  The enforceability of the Settlement is not contingent on Court approval

7    of an award of attorneys' fees or costs, nor of service awards.

8    **III.**    **CLASS NOTICE HAS BEEN DISSEMINATED**

9            The notice program approved by the Court (*see* Dkt. No. 56) has been implemented by the

10   parties and the Court-approved Settlement Administrator in accordance with the Court's direction.

11           **A.**    **Direct Mail and Email Notice**

12           Beginning on December 10, 2014, Gilardi disseminated 413,631 individual postcard

13   notices by USPS first class mail.[7]  Prior to mailing the postcard notice, Gilardi ran all mailing

14   addresses through the National Change of Address Database.[8]  For mailed notices that were

15   returned as undeliverable, Gilardi performed additional public record research.[9]  Combined with

16   potential Settlement Class Members for which the notice via email was ultimately returned as

17   undeliverable, Gilardi mailed an additional 19,017 Summary Postcard Notices as of February 19,

18   2015.

19           Also, beginning on December 10, 2014, Gilardi disseminated 54,569 notices via email to

20   all potential Settlement Class Members for whom a facially valid email address was available.[10]

21   In addition, Class Counsel arranged, at its own separate expense, for Gilardi to send two reminder

22   email messages to potential Settlement Class Members who had not yet made a claim.[11]  Those

23   messages were sent by Gilardi on February 8, 2015, and February 24, 2015.

24

---

25   [6] *See* Declaration of John Lord in Support of Motion for Final Approval of Class Action
     Settlement, which explains certain of Bank of the West's practices, as relevant here.

26   [7] Jue Decl. at ¶ 8.

     [8] *Id.*, ¶ 9.

27   [9] *Id.*, ¶ 9.

     [10] *Id.*, ¶ 8.

28   [11] *Id.*, ¶ 10.

1

### B.     Published Notice

On September 7, 2014, notice was published in *Parade* magazine, which appears in over 590 Sunday newspapers nationwide.[12]  More specifically, the notice was included in Zones 4, 6, and 7 of *Parade,* which is distributed in Sunday newspapers of 16 of the 19 states where Bank of the West has branches.[13]

As a supplement to this publication, and to cover the remaining three states of Kansas, Oklahoma, and Missouri—in which Bank of the West also does business—notice was published in five newspaper publications—*the Tulsa World*, *The Oklahoman, the Kansas City Star, the Springfield News Leader,* and the 17 publications of the Kansas Newspaper Group.[14]  Notice was placed on a "run of press" ("ROP") basis, which means that notice was often inserted into the main news sections of the newspapers, rather than in the classified sections, at the discretion of the newspapers.[15]

### C.     CAFA Notice

Bank of the West provided notice of the Settlement to the officials designated pursuant to the Class Action Fairness Act, 28 U.S.C. § 1715, on June 13, 2014.  Dkt. No. 36, at 11.  The parties were contacted by representatives of several Attorneys General with regard to the original settlement.  As a result of constructive dialogue with officials of those offices, the parties made some minor clarifications to the terms of the Settlement.  Dkt. No. 45.

### D.     Settlement Website and Toll-Free Number

On September 3, 2014, Gilardi established a Settlement Website (www.bayattcpasettlement.com) where claims and requests to stop calls may be submitted electronically.[16]  The Settlement Website contains the following: the Complaint; the Settlement Agreement and exhibits; the Preliminary Approval Order, the Long Form Notice, a downloadable Claim Form, the Request to Stop Calls form, Frequently-Asked Questions, and the toll-free

---

[12] *See id.*, ¶ 12.
[13] Jue Decl., at ¶ 12.
[14] *Id.*, ¶ 13.
[15] *Id.*, ¶ 14.
[16] *Id.*, ¶ 17.

number.  Class Counsel's Motion for Attorneys' Fees was uploaded to the website immediately after it was filed on February 9, 2015.[17]  As of March 10, 2015, the website has received 27,958 unique visits.[18]

In addition, Gilardi timely established, on September 3, 2014, a toll-free telephone number dedicated to answering telephone inquiries from Settlement Class Members and permitting individuals to request copies of the long-form notice and claim forms, and to submit Claim Forms.[19]  As of March 11, 2015, Gilardi has received  12,831 calls.[20]  Class Counsel have also responded to several dozen inquiries from potential Settlement Class Members regarding the Settlement.[21]

**E.      Settlement Administration Costs**

The costs of settlement administration as of March 11, 2014 total $392,336.84.[22] However, because Plaintiffs' counsel negotiated a hard cap of $413,607 for all notice and claims administration costs, the total notice and administration costs will not exceed that amount.

**IV.      CLASS MEMBERS HAVE RESPONDED POSITIVELY TO THE SETTLEMENT**

The response from the Settlement Class has been very positive.  Gilardi received a total of 16,631 monetary claims, Requests to Stop Calls, or both.[23]  Moreover, Gilardi has received only 10 timely requests for exclusion, and no objections.[24]

**V.      FINAL APPROVAL IS WARRANTED**

**A.      The Class Action Settlement Approval Process**

Federal courts strongly favor and encourage settlements, particularly in class actions and other complex matters, where the inherent costs, delays, and risks of continued litigation might

---

[17] *Id.*, ¶ 19.

[18] *Id.*, ¶ 17.

[19] *Id.*, ¶ 20.

[20] *Id.*

[21] Hutchinson Decl., ¶ 55; Declaration of Matthew R. Wilson in Support of Plaintiffs' Motion for Attorneys' Fees and Final Approval of Class Action Settlement, Dkt. No. 59 ("Wilson Decl."), at ¶ 21.

[22] Jue Decl., ¶ 24.

[23] *Id.*, ¶ 21.

[24] *Id.*, ¶¶ 22-23.

otherwise overwhelm any potential benefit the class could hope to obtain.  *See Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992) (noting the "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned"); *see also* 4 *Newberg on Class Actions* § 11.41 (4th Ed. 2002) (citing cases).  The traditional means for handling claims like those at issue here—individual litigation—would require a massive expenditure of public and private resources and, given the relatively modest value of the claims of the individual Settlement Class Members, would be impracticable.  Thus, the proposed Settlement is the best vehicle for Settlement Class Members to receive the relief to which they are entitled in a prompt and efficient manner.

The *Manual for Complex Litigation* (Fourth) (2004) § 21.63 ("*Manual for Compl. Lit.*") describes a three-step procedure for approval of class action settlements:

(1)  Preliminary approval of the proposed settlement at an informal hearing;

(2)  Dissemination of mailed and/or published notice of the settlement to all affected class members; and

(3)  A "formal fairness hearing" or final settlement approval hearing, at which class members may be heard regarding the settlement, and at which evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement may be presented.  This procedure safeguards class members' due process rights and enables the Court to fulfill its role as the guardian of class interests.  4 Newberg § 11.25.

The first two steps in this process have occurred.  With this motion, Plaintiffs respectfully request that the Court take the third and final step in the process by granting final approval of the settlement.

**B.**       **The Settlement is Fair, Reasonable, and Adequate, and Should be Approved**

It is well settled that the law favors the compromise and settlement of class action suits. *See Churchill Village, LLC v. Gen. Elec.,* 361 F.3d 566, 576 (9th Cir. 2004); *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992); *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982) ("[V]oluntary conciliation and settlement are the preferred means of dispute resolution.  This is especially true in complex class action litigation….").

1    A proposed class action settlement should be approved if the Court, after allowing absent

2    class members an opportunity to be heard, finds that the settlement is "fair, reasonable, and

3    adequate." Fed. R. Civ. P. 23(e)(2).  When assessing a proposed settlement, "the court's intrusion

4    upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit

5    must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the

6    product of fraud or overreaching by, or collusion between, the negotiating parties, and the

7    settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Officers for*

8    *Justice*, 688 F.2d at 625.

9    Courts in the Ninth Circuit consider a number of factors in evaluating class settlements,

10   recognizing that "it is the settlement taken as a whole, rather than the individual component parts,

11   that must be examined for overall fairness." *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir.

12   2003).  The Ninth Circuit has set forth the following list of the eight "*Churchill* factors" to be

13   considered in evaluating the fairness of a settlement:  (1) the strength of the plaintiffs' case; (2)

14   the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining

15   class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of

16   discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7)

17   the presence of a governmental participant; and (8) the reaction of the class members to the

18   proposed settlement.  *In re Online DVD-Rental Antitrust Litig.*, __ F.3d ___, 2015 U.S. App.

19   LEXIS 3093 (9th Cir. Feb. 27, 2015) (citing *Churchill Village*, 361 F.3d at 575).  Where a

20   settlement agreement is negotiated prior to formal class certification, courts require, in addition to

21   the *Churchill* factors, "an even higher level of scrutiny for evidence of collusion or other conflicts

22   of interest."  *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. Cal. 2011).

23   Application of these factors here confirms that the settlement is fair, reasonable, and

24   adequate, and should be finally approved.

25   **1.    The Strength of the Plaintiffs' Case and the Risk, Expense, Complexity,
           and Likely Duration of Further Litigation**

26

27   Plaintiffs continue to believe that their claims against Bank of the West have merit and

28   that they could make a compelling case if their claims were tried.  If Plaintiffs were to prevail,

1    Bank of the West could face substantial statutory damages.  Bank of the West believes just as

2    strongly, however, that it would defeat the claims and the Settlement Class Members would

3    recover nothing.  The parties' respective positions are detailed below.

4                    a.        **Challenges to the Claims on Their Merits**

5            The parties have competing interpretations of what constitutes "prior express consent"

6    under the TCPA based on, *inter alia*, the FCC's January 4, 2008 declaratory ruling, *In the Matter*

7    *of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 23

8    F.C.C.R. 559, 23 FCC Rcd. 559, 43 Communications Reg. (P&F) 877, 2008 WL 65485 (F.C.C.

9    2008) (hereinafter "Declaratory Ruling").  The Declaratory Ruling is the FCC's official

10   interpretation of the governing provisions of the TCPA.  The FCC's Declaratory Ruling addresses

11   the meaning of "prior express consent" and states:  "prior express consent is deemed to be granted

12   only if the wireless number was provided by the consumer to the creditor, and that such number

13   was provided during the transaction that resulted in the debt owed."  The parties each maintain

14   that the Declaratory Ruling and other relevant authorities support their respective positions on the

15   issue of prior express consent.  *See* Joint Response to Order Re Supplemental Briefing, Dkt. No.

16   36, at 2-7.

17           Plaintiffs maintain that Paragraph 10 of the Declaratory Ruling requires that the cell phone

18   number be "provided during the transaction that resulted in the debt owed," *i.e.* during loan

19   "origination."  To recover under the TCPA, Plaintiffs would need to convince the Court to adopt

20   their view that the FCC has clarified that "prior express consent" can only being given during the

21   opening of Settlement Class Members' Bank of the West accounts.

22           Bank of the West, however, interprets the term "transaction" to mean any time during the

23   multi-year life of the lending relationship.  Bank of the West argues that most Settlement Class

24   Members provided their cell phone numbers either on original credit applications or through

25   subsequent dealings with Bank of the West.  Based on this interpretation, Bank of the West

26   therefore maintains that many – nearly all, in fact – of the Settlement Class Members gave it their

27   prior express consent to contact them on their cell phone numbers.

28

1     If the Court found that the FCC's Declaratory Ruling and/or the TCPA permits "prior

2    express consent" to be given: (1) after loan origination on documents such as correspondence,

3    updated information forms, forbearance requests, and the like, and/or (2) verbally, the amount of

4    recoverable damages could be reduced significantly or eliminated altogether. *See, e.g., Arthur v.*

5    *Sallie Mae, Inc.,* No. 2:10-cv-00198, 2012 U.S. Dist. LEXIS 132413, at *4 (W.D. Wash. Sept. 17,

6    2012) (granting final approval of TCPA settlement "in part because of the novelty of central

7    issues"); *Capital One*, 2015 U.S. Dist. LEXIS 17120, at *22 (granting final approval of TCPA

8    settlement in part because of the "split opinion among practitioners and the courts, a split that at

9    least injects uncertainty into this litigation and will continue to warrant caution by plaintiffs and

10    defendants until clearer guidance is provided"); *Wilkins*, 2015 U.S. Dist. LEXIS 23869, at *21

11    (granting final approval of TCPA settlement in part because "the 2008 TCPA Order is susceptible

12    to alternative interpretations and will continue to add significant risk to large TCPA litigation

13    until the FCC clarifies the definition of 'prior express consent' under the TCPA"). Even if

14    Plaintiffs prevailed on their interpretation of the FCC's Declaratory Ruling, Bank of the West

15    would likely appeal the decision, which would result in substantial delay. The Settlement

16    provides substantial relief to Settlement Class Members without that delay.

17            **b.**     **The Risk of Maintaining Class Action Status Throughout Trial**

18     While Plaintiffs believe that class certification would be achievable, Bank of the West

19    consistently argued that class certification would be inappropriate in this action due to the

20    question of whether Settlement Class Members consented to the calls at issue. Particularly if the

21    Court were to accept Bank of the West's interpretation of "prior express consent" under the

22    statute, identifying which Settlement Class Members consented and in what manner could be

23    difficult. And, courts are divided as to whether such consent issues predominate over common

24    questions in TCPA cases, depending on the circumstances of the case. *Compare Meyer v.*

25    *Portfolio Recovery Assocs.*, 707 F.3d 1036, 1042 (9th Cir. 2012) (upholding class certification)

26    *with Fields v. Mobile Messengers Am., Inc.*, 2013 U.S. Dist. LEXIS 163950 (N.D. Cal. Nov. 18,

27    2013) (denying class certification because individualized issues regarding consent defeated

28    predominance) (Alsup, J.). Accordingly, in granting final approval of TCPA settlement*s,* courts

1   have noted that many "[c]ourts have split on class certification in TCPA cases, increasing the risk

2   of maintaining the class action through trial." *Arthur,* 2012 U.S. Dist. LEXIS 132413, at *4;

3   *Capital One*, 2015 U.S. Dist. LEXIS 17120, at *23 (granting final approval of TCPA settlement

4   in part because "[i]dentifying consenting class members and the precise timing and nature of that

5   consent" may require "individual determinations [that] do not always comport with Rule

6   23(b)(3)'s manageability requirement"); *Wilkins*, 2015 U.S. Dist. LEXIS 23869, at *22 (same).

7   Indeed, only a few months ago, another district court denied outright a class certification motion

8   from the same counsel who represent the Settlement Class here and also adopted a defense view

9   of the TCPA's substantive requirements. *Balschmiter v. TD Auto Finance LLC*, 2014 U.S. Dist.

10  LEXIS 163771 (E.D. Wisc. Nov. 20, 2014).  If Bank of the West were able to present convincing

11  facts to support its position, there is a risk that the Court would decline to certify the class,

12  leaving only the named Plaintiffs to pursue their individual claims.

### 2.     The Amount Offered in Settlement

14      "[T]he core of any settlement is the amount offered in settlement." *Laguna v. Coverall N.*

15  *Am., Inc.*, 753 F.3d 918, 929 (9th Cir. 2014) (Chen, J.) (dissenting op.), *vacated on other grounds*

16  *by* 2014 U.S. App. LEXIS 21950 (9th Cir. Nov. 20, 2014).  By requiring Bank of the West to pay

17  $3,354,745.98 as a Settlement Amount, the Settlement provides substantial monetary relief for

18  Settlement Class Members.  Each Eligible Settlement Class Member will receive approximately

19  $129.03.  In granting final approval for a class TCPA settlement resulting in the smaller payment

20  of $93.22 per claimant, one court recently described the recovery as "not a trifling sum in light

21  [the defendant's] contention that most Plaintiffs would recover nothing if they continued through

22  the litigation process." *Wilkins*, 2015 U.S. Dist. LEXIS 23869, at *19; *see also Capital One*,

23  2015 U.S. Dist. LEXIS 17120, at *20 ("$34.60 per claimant is not insignificant considering

24  [defense counsel's] estimate that Plaintiffs will recover nothing through continued litigation").

25  Such recoveries merit final approval, and, in the view of at least one court, "do[] not seem so

26  miniscule in light of the fact that class members did not suffer any actual damages beyond a few

27  unpleasant phone calls, which they received ostensibly because they did not pay their credit card

28  bills on time." *Capital One*, 2015 U.S. Dist. LEXIS 17120, at *20.

1    The Settlement also establishes the ability for Settlement Class Members to stop the

2  unwanted calls at issue.  For Settlement Class Members who executed a valid and timely Request

3  to Stop Calls, Bank of the West shall not make use of, or knowingly authorize anyone acting on

4  their behalf to make use of, an automatic telephone dialing system and/or an artificial or

5  prerecorded voice, to call Settlement Class Members' cell phones or to send text messages to

6  their cell phones.  Agreement § III.C.1.a.  Through the Website or via hard copy, Settlement

7  Class Members were able submit such requests easily.  Class Counsel's interviews with Plaintiffs

8  and other potential Settlement Class Members revealed that, for many, the ability to put a stop to

9  the autodialed and/or prerecorded calls (or text messages) to their cell phones was the primary

10  goal of this litigation.  The Settlement achieves this result.

11              **3.    The Extent of Discovery Completed and the Stage of Proceedings**

12    The Settlement was informed by Class Counsel's thorough investigation and analysis of

13  the factual and legal issues involved.  As detailed above, Class Counsel spent significant time

14  thoroughly investigating the factual and legal claims involved in this action, as well as

15  interviewing and collecting relevant information from potential class members, prior to filing the

16  Complaints.[25]

17    Settlement negotiations were hard-fought, spanning months.  The parties participated in a

18  full-day mediation on December 18, 2013.  The case settled only after the parties accepted a

19  mediator's proposal.  Thereafter, the parties spent numerous hours negotiating the final settlement

20  terms and negotiating, drafting, and revising the Settlement Agreement.[26]  Accordingly, the final

21  terms of settlement were agreed to only after Class Counsel thoroughly vetted the claims and

22  potential damages through the exchange of both informal and formal confirmatory discovery.

23              **4.    The Experience and Views of Counsel**

24    Class Counsel are particularly experienced in litigating TCPA class action claims, and had

25  a keen understanding of the legal and factual issues involved in this case.[27]  Class Counsel fully

26

27  _____
   [25] Hutchinson Decl., ¶ 18.

28  [26] *Id.*, ¶¶ 29-31.
   [27] *See id.*, ¶ 5; Wilson Decl., ¶ 5.

1   endorse the settlement as fair, adequate, and reasonable.  The fact that qualified and well-

2   informed counsel endorse the settlement weighs in favor of the Court approving the settlement.

3   *See Linney v. Cellular Alaska P'ship*, No. C-96-3008 DLJ, 1997 U.S. Dist. LEXIS 24300, at *16

4   (N.D. Cal. July 18, 1997) ("The involvement of experienced class action counsel and the fact that

5   the settlement agreement was reached in arm's length negotiations, after relevant discovery had

6   taken place create a presumption that the agreement is fair.").

7           **5.**      **The Presence of a Governmental Participant**

8        No governmental agency is involved in this lawsuit; however, Bank of the West notified

9   the officials designated pursuant to the Class Action Fairness Act, 28 U.S.C. § 1715 of the

10   proposed settlements.  The parties were contacted by representatives of several Attorneys General,

11   and clarifications to the settlement terms were made as a result of the feedback received.

12           **6.**      **The Reaction of Class Members**

13       The reaction of Settlement Class Members has been very positive.  Settlement Class

14   Members have submitted 16,631 claims and/or requests to stop calls.  Only 10 individuals have

15   requested to be excluded from the Settlement, and not one has objected.[28]

16       Class Counsel themselves paid for two additional rounds of email notice, in addition to the

17   class notice agreed upon in the Settlement and ordered by the Court, to be sent to potential

18   Settlement Class Members in an effort to ensure that any Settlement Class Member who wished

19   to make a claim would do so.  The 1.9% claim rate here, while lower than some cases, is

20   nevertheless similar to or higher than the claim rates that have been observed in many other

21   TCPA class action settlements throughout the Ninth Circuit.  *See, e.g.*, *Steinfeld v. Discover Fin.*

22   *Servs.*, No. 3:12-cv-01118-JSW (N.D. Cal.) (1.20%); *Grannan v. Alliant Law Group, P.C.*, No.

23   5:10-cv-02803 (N.D. Cal.) (1.40%); *Kazemi v. Payless ShoeSource, Inc.*, No. 3:09-cv-05142 (N.D.

24   Cal.) (1.20%); *Arthur v. Sallie Mae, Inc.*, No. 2:10-cv-00198 (W.D. Wash.) (2.20%); *Chesbro v.*

25   *Best Buy Stores, L.P.*, No. 2:10-cv-00774 (W.D. Wash.) (1.10%); *Hovila v. Tween Brands, Inc.*,

26   No. 2:09-cv-00491 (W.D. Wash.) (2.70%); *Kwan v. Clearwire Corp.*, No. 2:09-cv-01392 (W.D.

27   Wash.) (0.65%); *Adams v. AllianceOne Receivables Mgmt., Inc.*, No. 3:08-cv-00248-JAH-WVG

28   

---

[28] Jue Decl., ¶¶ 21-23.

1  (S.D. Cal. 2012) (1.10% claim rate); *Malta v. Freddie Mac & Wells Fargo Home Mortgage*, No.

2  10-cv-1290-BEN-NLS (S.D. Cal. 2010) (2.78%); *Sarabi v. Weltman, Weinberg & Reis Co.*, No.

3  10-cv-01777-AJB-NLS (S.D. Cal. 2010) (1.80%); *Lemieux v. Global Credit & Collection Corp.*,

4  No. 08-cv-1012-IEG-POR (S.D. Cal. 2008) (1.98%).

5  **7.**    **The Settlement is the Product of Arm's Length Negotiations**

6       In addition to considering the above factors, the Ninth Circuit has indicated that the Court

7  should carefully review the Settlement for any signs of collusion or conflicts of interest. *See In re*

8  *Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011). As detailed above, the

9  Settlement is the result of lengthy, adversarial arm's-length negotiations between attorneys

10  experienced in the litigation, certification, trial, and settlement of nationwide class action cases, as

11  well as mediation presided over by a well-respected mediator and former judge, the Honorable

12  Edward A. Infante.[29]   The Settlement Amount is a $3,354,745.98 non-reversionary, all-cash

13  fund. No amount will revert to Bank of the West. Accordingly, no signs of collusion or conflicts

14  of interest are present here, because there was no such collusion or conflicts of interest.

15  **VI.**    **CONCLUSION**

16       For all of the foregoing reasons, Plaintiffs respectfully request that the Court enter an

17  Order granting final approval of the Settlement.

18

19  Dated: March 17, 2015            Respectfully submitted,

20                                     LIEFF CABRASER HEIMANN & BERNSTEIN, LLP

21                                     By:  */s/ Daniel M. Hutchinson*
                                       Daniel M. Hutchinson

22

23                                     Daniel M. Hutchinson
                                   Nicole D. Reynolds
                                   LIEFF CABRASER HEIMANN & BERNSTEIN, LLP

24                                     275 Battery Street, 29th Floor
                                   San Francisco, CA  94111-3339

25                                     Telephone:  415.956.1000
                                   Facsimile:  415.956.1008

26

27

28

---

[29] Hutchinson Decl., ¶ 29.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Jonathan D. Selbin
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York, NY  10013
Telephone:  (212) 355-9500
Facsimile:  (212) 355-9592

Matthew R. Wilson
Michael J. Boyle, Jr.
MEYER WILSON CO., LPA
1320 Dublin Road, Suite 100
Columbus, OH  43215
Telephone:  (614) 224-6000
Facsimile:  (614) 224-6066

*Attorneys for Plaintiffs and the Settlement Class*