UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

YOUNUS BAYAT, *et al.*,

    Plaintiffs,

    v.

BANK OF THE WEST,

    Defendant.
_____/

No. C-13-2376 EMC

**ORDER GRANTING MOTION FOR FINAL APPROVAL AND MOTION FOR ATTORNEYS' FEES AND SERVICE AWARDS FOR CLASS REPRESENTATIVES**

**(Docket Nos. 57, 63)**

## I.   INTRODUCTION

Plaintiffs in this case filed a class action against Defendant Bank of the West (BOW), alleging violations of the Telephone Consumer Protection Act (TCPA). *See* 47 U.S.C. § 227(b)(1)(A)(iii). Class members were contacted on their cell phones with prerecorded messages. Plaintiffs maintain that they did not consent to receive these prerecorded communications. *See* Docket No. 9 (FAC) at ¶¶ 15, 19.

On July 22, 2014, this Court granted preliminary approval to a nationwide class action settlement. Docket No. 42. After the parties were contacted by representatives of several states' Offices of Attorney General concerning some discrete portions of the settlement, the parties agreed to slightly modify the settlement. The Court granted preliminary approval to the revised settlement on November 26, 2014. Docket No. 56.

The settlement class consists of:

> All persons within the United States to whom, on or after November 2, 2008 through [July 22, 2014], a non-emergency telephone call was attempted by Bank of the West, or any other entity on its behalf, to a

>       cellular telephone through the use of an automatic telephone dialing
>       system or an artificial or prerecorded voice.

*See id.* at Ex. C. According to the parties, there are 871,836 potential members in the settlement class. *See* Docket No. 64 (Jue Decl.) at ¶ 6.

The settlement provides both monetary and injunctive relief for class members. Specifically with respect to monetary relief, BOW has agreed to pay $3,354,745.98 into a non-reversionary settlement fund for the benefit of class members. *See* Docket No. 34-2 (Settlement Agreement) at 5. Class members were required to submit a straightforward claim form to be entitled to a cash award. *Id.* at III.F ("Cash Awards shall be made to Eligible Settlement Class Members on a claims-made basis only"). After subtracting settlement administration costs of no more than $413,607, and attorneys fees of $455,224.50 from the settlement fund, approximately $2,485,914.48 will remain to pay individual class members. *See* Jue Decl. at ¶ 24. Each class member who filed a claim will receive an equal distribution from the settlement fund.[1] Settlement Agreement at III.F.4. 16,459 individuals filed a timely claims form. Docket No. 69 (Supp. Jue Decl.) at ¶ 5. This represents a claims rate for the monetary relief portion of the settlement of roughly 1.9%.

BOW also agreed to cease placing automated phone calls to its customers' cell phones, but it only agreed to such injunctive relief on an opt-in basis. That is, the settlement allows BOW to engage in the precise conduct challenged by Plaintiffs here unless a class member timely filed a "Request to Stop Calls"[2] with the Claims Administrator. Settlement Agreement at III.C.1(c) (providing that "[a]ny Settlement Class Member who does not submit a valid and timely Revocation Request . . . will be deemed to have provided prior express consent to the making of calls by BOW"). Indeed, under the terms of the settlement, failure to submit a timely Request to Stop Calls is deemed to provide BOW with express consent to place automated calls to those class members in

---

[1] If more than $50,000 of the settlement fund remains unclaimed after the first distribution is made, a second pro-rata distribution of the remaining funds will be made to those class members who cashed their initial award checks. Settlement Agreement III.G.1. If $50,000 or less remains unclaimed, the unclaimed remainder will be distributed to a cy pres beneficiary. *Id.*

[2] The "Request to Stop Calls" was previously referred to as a "Revocation Request" in the settlement documents – the nomenclature was changed at the request of the Court for the purpose of providing more straightforward notice to class members.

the future. *Id*. 9,920 class members filed a timely Request to Stop Calls. Supp. Jue Decl.. at ¶ 5. This represents a claims rate for the injunctive relief portion of the settlement of roughly 1.1%.

In a separate motion, class counsel have moved for $838,386 in attorneys' fees, which represents 25% of the common fund amount. Docket No. 57. Class counsel also seek $2,000 incentive awards for each of the named plaintiffs. For the reasons explained below, the Court **GRANTS** the motion for final approval and **GRANTS** the request for incentive awards. The Court also **GRANTS** the attorneys' fees request in the amount of $455,224.50.

## II. DISCUSSION

### A. Final Approval of Class Action Settlement

#### 1. Legal Standard for Final Approval

Federal Rule of Civil Procedure 23(e) "requires the district court to determine whether a proposed settlement is fundamentally fair, adequate and reasonable." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998). "It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness." *Id.* (citing *Officers for Justice v. Civil Serv. Comm'n of San Francisco*, 688 F.2d 615, 628 (9th Cir. 1982)).

While the factors this court may consider in making its fairness assessment will "naturally vary from case to case," typically the court should consider:

> (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement.

*In re Bluetooth Headset Prods. Liab. Litig.* (*In re Bluetooth*), 654 F.3d 935, 943 (9th Cir. 2011) (citing *Churchill Village, L.L.C. v. Gen. Elec.*, 361 F. 3d 566, 575 (9th Cir. 2004)).

Moreover, "where, as here, a settlement is negotiated *prior* to formal class certification, consideration of the[] eight *Churchill* factors alone is not enough to survive appellate review." *In re Bluetooth*, 654 F.3d at 946 (emphasis in original). Rather, a reviewing court must also be on the lookout for "subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations." *Id.* According to the Ninth Circuit in

3

1  *Bluetooth*, "such signs" include: (1) where "counsel receive a disproportionate distribution of the
2  settlement, or when the class receives no monetary distribution;" (2) where the "parties negotiate a
3  'clear sailing' agreement providing for the payment of attorneys' fees separate and apart from class
4  funds;" and (3) where "the parties arrange for fees not awarded to revert to defendants rather than to
5  be added to the class fund." *Id.* (citations omitted).

       2.   Analysis of the *Churchill Village* and *In re Bluetooth* Factors
            a.   Strength of the Plaintiffs' Case

Plaintiffs' substantive claims are brought under the TCPA, which prohibits any person from placing a call to a cellular telephone "using any automatic telephone dialing system or an artificial or prerecorded voice" unless certain exceptions apply. *See* 47 U.S.C. § 227(b)(1)(A)(iii); 47 U.S.C. § 227(b)(2). The principal exception that could apply to Plaintiffs' class claims is where a call is placed with an individual's "prior express consent." 47 U.S.C. § 227(b)(1)(A). Plaintiffs who can prove a violation of the TCPA are entitled to statutory damages of $500 for each violation, or $1,500 for willful violations. *See* 47 U.S.C. § 227(c)(5)(B); *Kristensen v. Credit Payment Services*, 12 F. Supp. 3d 1292, 1308 (D. Nev. 2014).

Plaintiffs' case appears vulnerable on the merits. Most notably, the "prior express consent" exception arguably applies to the calls at issue here, rendering BOW's challenged conduct lawful. Plaintiffs argue that prior express consent may only be given at the time of account origination. Specifically, Plaintiffs contend that a 2008 FCC ruling supports their position that a bank may only contact a customer on her cell phone via automated means if she provided her cell phone number at the time she opened her account. *See In the Matter of Rules & Regs. Implementing the TCPA*, 23 F.C.C.R. 559, 564-65 (2008) (stating that "prior express consent is deemed to be granted only if the wireless number was provided by the consumer to the creditor, and that such number was provided *during the transaction that resulted in the debt owed*") (emphasis added). BOW contends otherwise, relying on different language in the 2008 ruling to support its position that prior express consent can be given at any time during the life of the loan or commercial relationship. *See id.* at 559 (stating that "autodialed and prerecorded message calls to wireless numbers that are provided by the called

party to a creditor *in connection with an existing debt* are permissible as calls made with the 'prior express consent' of the called party") (emphasis added).

There are cases supporting BOW's interpretation. *See, e.g.*, *Hucker v. Receivables Performance Mgmt., LLC*, No. 11-CV-00845A(F), 2014 U.S. Dist. LEXIS 52996, at *12 (W.D.N.Y. Apr. 9, 2014) (stating that "a commonsense reading" of the relevant language "does not lead to the conclusion that a phone number must be given at the exact time the account is activated") (citation omitted); *id.* at *12-13 (explaining further that "given that the FCC emphasized that the relevant issue in evaluating 'prior express consent' is whether a phone number has voluntarily been provided to the creditor, it would strain logic to conclude that a debtor's voluntary provision of a contact number at the time an account is opened would constitute prior express consent to be called at that number, but that the equally voluntary provision of a contact number sometime after the account is opened would not") (citation omitted); *Levy v. Receivables Performance Mgmt., LLC*, 972 F. Supp. 2d 409, 421 (E.D.N.Y. 2013) (indicating that "affirmative acts of express consent" may include both "listing the cell phone number that was later called . . . on the initial credit application" or "providing an updated cell phone number directly to a creditor or debt collection agency during the lifespan of the debt") (emphasis omitted). And while a number of cases recognize that consent to calls can certainly be given at "relationship origination," as Plaintiffs suggest, the cases do not squarely hold that consent may be given *only* at that time and not thereafter. *See, e.g.*, *Levy*, 972 F. Supp. 2d at 421.

In approving TCPA class action settlements, a number of courts have recently cited to the legal uncertainty surrounding whether "prior express consent" may be given only at the time of account origination (as Plaintiffs contend) or at any time during the life of the transaction (as BOW argues). *See, e.g.*, *In re Capital One Tel. Consumer Prot. Act Litig.* (*In re Capital One*), No. 12 C 10064, 2015 U.S. Dist. LEXIS 17120, at *22 (N.D. Ill. Feb 12, 2015) (discussing the "disparate interpretations" of the FCC orders, and noting that "the split opinion among practitioners and the courts . . . injects uncertainty into the litigation" counseling in favor of settlement); *Wilkins v. HSBC Bank Nev., N.A.*, No. 14-C-190, 2015 U.S. Dist. LEXIS 23869, at *21 (N.D. Ill. Feb. 27, 2015) (approving TCPA class settlement in part because "alternative interpretations" of the FCC Orders

"will continue to add significant risk to large TCPA litigation until the FCC clarifies the definition of 'prior express consent' under the TCPA"). These cases properly recognize that a settlement is in the interests of class members who otherwise may not be entitled to any relief should their claims fail on the merits. *See In re Capital One*, 2015 U.S. Dist LEXIS 17120, at *22; *see also Nwabueze v. AT&T Inc.*, No. C 09-1529 SI, 2013 WL 6199596, at *4 (N.D. Cal. Nov. 27, 2013). Because the strength of Plaintiffs' claims is in doubt, the first *Churchill Village* factor tips in favor of final approval of the settlement.

### b. The Risk, Expense, Complexity, and Likely Duration of Further Litigation

For nearly the same reasons as discussed above in conjunction with the strength of the Plaintiffs' claims, as well as the reasons stated by the Court on the record at the final approval hearing, the second *Churchill Village* factor also favors approval of the proposed settlement. Class members face a fairly significant risk that BOW would prevail on its chief defense (*i.e.*, prior express consent) if this case does not settle. Moreover, regardless of who prevails on the merits of the prior express consent issue, the losing party would likely appeal, thus significantly prolonging this litigation and increasing its expense and complexity. Additionally, no substantive motions have yet been filed in this case. Absent settlement, the costs and complexity of this case will certainly increase as motions to dismiss, summary judgment motions, and class certification motions (along with associated discovery) will need to be litigated. Thus, the second *Churchill Village* factor favors approval of the class settlement. *See Nwabueze*, 2013 WL 6199596, at *4.

### c. The Risk of Maintaining Class Action Status Throughout the Trial

The third *Churchill Village* factor also favors settlement approval. Specifically, there is a significant risk that Plaintiffs would not be able to maintain this case as a class action if it proceeded to trial. As the parties point out, "courts are divided" as to whether issues of individual consent predominate over common questions in TCPA class actions like this one. Docket No. 63 at 14. For instance, in *Jamison v. First Credit Servs., Inc.*, a district court refused to certify a TCPA class because issues of individualized consent would predominate over common issues where "the parties would need to scour [Defendant's] records" to determine whether potential class members consented to calls. 290 F.R.D. 92, 107 (N.D. Ill. 2013). Judge Alsup similarly refused to certify a TCPA class

because plaintiffs could not "meet their burden to prove that the issue of consent can be addressed with class-wide proof." *Fields v. Mobile Messengers Am., Inc.*, No. C 12-5160 WHA, 2013 U.S. Dist. LEXIS 163950, at *13 (N.D. Cal. Nov. 18, 2013). On the other hand, other courts, including a panel of the Ninth Circuit, have permitted TCPA classes to be certified under some circumstances. *See Meyer v. Portfolio Recovery Assocs.*, 707 F.3d 1036, 1042 (9th Cir. 2012) (affirming TCPA class certification in face of defendant's predominance arguments).[3]

Given the uncertainty as to whether this case could be maintained as a class action throughout trial, the third *Churchill Village* factor favors settlement. Indeed, courts have previously granted approval to TCPA class action settlements precisely because certification of such actions is a risky endeavor. *See, e.g.*, *In re Capital One*, 2015 U.S. Dist LEXIS 17120 at *22-23 (approving class settlement in light of "serious obstacles to class certification," including potential predominance issues).

### d.     The Amount Offered in Settlement

The fourth *Churchill Village* factor is generally considered the most important, because the critical component of any settlement is the amount of relief obtained by the class. *See generally In re HP Inkjet Printer Litig.*, 716 F.3d 1173, 1178-79 (9th Cir. 2013); *Laguna v. Coverall N. Am., Inc.*, 753 F.3d 918, 929 (9th Cir. 2014) (Chen, J. dissenting), *vacated on other grounds by* 772 F.3d 608 (9th Cir. 2014) ("[I]nescapably, the core of any settlement is 'the amount offered in settlement.'"). It is also the factor that most cuts against settlement approval here. For despite class counsels' representation in its briefs that the "relief the Settlement provides is outstanding," the relief obtained here appears less than outstanding.

///

///

///

---

[3] As Judge Alsup noted in *Fields*, *Meyer* is distinguishable from many TCPA cases, including (in all likelihood) this one, because the defendant there "did not show a single instance where express consent was given before the call was placed," *Meyer*, 707 F.3d at 1042, whereas in most cases, defendant will be able to make such a showing. *See Fields*, 2013 U.S. Dist. LEXIS at *9-13.

7

The net settlement fund available for distribution to the class is approximately $2,485,914.48. This represents a $2.85 recovery for each of the 871,836 class members.[4] By contrast, if class members were to prevail at trial, they would be eligible to receive at least $500 in statutory damages for each TCPA violation.[5] *See* 47 U.S.C. § 227(c)(5)(B). Of course, as noted above, it is not particularly likely that Plaintiffs would recover statutory damages for every class member; such a damages award (conservatively totaling $435 million for the class) would be unprecedented, and BOW might raise due process concerns. *See, e.g.*, *Parker v. Time Warner Entm't Co., L.P.*, 331 F.3d 13, 22 (2d Cir. 2003) (musing that "the potential for a devastatingly large damages award, out of all reasonable proportion to the actual harm suffered by members of the plaintiff class, may raise due process issues"). Nevertheless, the current class recovery represents a whopping 99.5% discount from the theoretical verdict value were statutory damages to be awarded to the entire class. This cannot be credibly called an "outstanding" result.

Moreover, very few of the 871,836 eligible class members actually filed a claim against the settlement fund, further demonstrating the low value of the recovery to class members. Here, 16,459 individuals filed a timely claims form. Suppl. Jue Decl. at ¶ 5. This represents a claims rate for the monetary relief portion of the settlement of just 1.9%. This claims rate is well below the parties' estimated claims rate at the preliminary approval stage of between five and ten percent, which was based on the fact that BOW has contact information for over half (56%) of all potentially eligible class members. *See* Jue Decl. at ¶ 6 ("Direct contact information was available for 483,473 of the estimated 871,836 persons who are potential class members."). It is also significantly lower than the claims rate obtained in certain other recently approved TCPA settlements litigated by class counsel here. *See In re Capital One*, 2015 U.S. Dist. LEXIS 17120 at *10 (7.87% claims rate); *but see Arthur v. SLM Corp.*, No. C10-0198 JLR (W.D. Wash. Aug. 8, 2012), Docket No. 249 at 2-3 (claims rate of approximately 2%).

---

[4] Had this Court awarded class counsel the full amount of fees requested, the net settlement fund available for distribution to the class here would have been $2,119,722.64, Jue Decl. at ¶ 25, or $2.41 per class member.

[5] If class members could prove willful violations, they would be entitled to $1,500 for each violation. *See* 47 U.S.C. § 227(c)(5).

That said, for those class members who did file claims, the monetary relief available appears reasonable. Each class member who submitted a claim is due to receive approximately $151 – not a trifling sum by any means, and in excess of the per claimant pay outs recently approved by other courts in TCPA class actions. *See Wilkins*, 2015 U.S. Dist LEXIS 23869, at *19 (defendant paid $2.95 per class member, and $93.22 per claimant); *In re Capital One*, 2015 U.S. Dist LEXIS 17120, at *20 (defendant paid $34.60 per claimant); *Arthur*, No. C10-0198 JLR (W.D. Wash. Aug. 8, 2012), Docket No. 249 at 3 (maximum $120 per claimant). As one court correctly observed in a case with a significantly lower per claimant pay out than this one, a "$34.60 per claimant recovery in this case does not seem so minuscule in light of the fact that class members did not suffer any actual damages beyond a few unpleasant phone calls, which they received ostensibly because they did not pay their credit card bills on time." *In re Capital One*, 2015 U.S. Dist. LEXIS 17120, at *20. A $151 payout here is a good result for the class members who filed claims, particularly given that BOW likely could have defensed this action either on the pleadings or at the class certification stage, leaving all class members with nothing.

The injunctive relief offered under the settlement, however, is far less impressive. According to class counsel, "the primary goal" of this litigation was to obtain injunctive relief that would put "an end to these unwanted phone calls." Docket No. 63 at 3. Class counsel states that the settlement "provides Plaintiffs and Settlement Class Members with this exact relief . . . ." *Id*. Not so. Indeed, if injunctive relief was truly the "primary goal" of this litigation, class counsel fell well short of the mark.

The settlement only secures injunctive relief for those class members who opted-in by filing a Request to Stop Calls. *See* Settlement Agreement at Sec. III.C.1. Only 9,956 class members filed a timely Request to Stop Calls. Suppl. Jue Decl. at ¶ 5. This represents a claims rate for the injunctive relief portion of the settlement of just 1.1%. Thus, over 98% of the eligible class members received no injunctive relief. In fact, those class members who did not obtain injunctive relief are *worse off* as a result of this settlement. That is because the settlement provides that "[a]ny Settlement Class Member who does not submit a valid and timely [Request to Stop Calls] to the Claims Administrator will be deemed to have provided prior express consent to the making of calls

9

by BOW or third parties calling on its behalf." Settlement Agreement at Sec. III.C.1.(c). Not only is such an individual releasing claims she might have had against BOW for the allegedly unauthorized calls already made to her, such an individual is also waiving any *future* claim she might have if BOW continues to engage in the exact same conduct that was the focus of this lawsuit (at least until such point that the consumer exercises his or her statutory rights under the TCPA to direct BOW to stop further calls). Put simply, BOW remains free to place "unwanted phone calls" to 98% of the settlement class, despite the fact that class counsel claims that the "primary goal" of this lawsuit was to put an end to such practices. Thus, the value of any injunctive relief in this case is largely illusory, and in all likelihood is actually negative from the point of view of class members.

Despite the minimal injunctive relief on offer in this settlement, the Court is convinced that the total class recovery obtained here is sufficient to approve the settlement, especially in light of the "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008); *see also Franklin v. Kaypro Corp.*, 884 F.2d 1222, 1229 (9th Cir. 1989) (explaining that there is an "overriding public interest" in settling class actions). The Court also observes that two courts have previously approved TCPA settlements with the identical negative injunctive relief provisions present here – albeit without analysis of the likely negative value of such relief. *See Arthur v. Sallie Mae,* No. C10-0198 JLR, 2012 U.S. Dist. LEXIS 3313, at *32 (W.D. Wash. Jan. 10, 2012); *Steinfeld v. Discover Fin. Servs.*, No. 12-cv-11118 JSW, 2014 U.S. Dist. LEXIS 44855 (N.D. Cal. Mar. 31, 2014). Further, as noted above, it is noteworthy that the Settlement Agreement does not purport to waive future statutory opt-out rights under the TCPA. Thus, for the reasons explained above (and on the record at the final approval hearing) the Court finds that the fourth *Churchill Village* factor favors final settlement approval.

    e. <u>The Extent of Discovery Completed and the Stage of the Proceedings</u>

The parties in this case reached a quick settlement. Class counsel billed only 621 hours of attorney time to this litigation, *see* Docket Nos. 58-59, most of which was spent in settlement negotiations and drafting the approval (and other court) papers; not conducting discovery or investigating the claims. *See* Docket No. 58 at ¶¶ 50, 53 (70.7 hours billed to claims investigation

and discovery in this matter).  Nevertheless, because the issues in this case are straightforward and not particularly fact intensive, and because class counsel have extensive experience litigating TCPA class actions, the fifth *Churchill Village* factor is likely neutral or tips slightly in favor of approving the settlement.

### f. The Experience and Views of Counsel

Class counsel at both Lieff Cabraser and Meyer Wilson submitted firm and individual lawyer resumes which indicate that both the firms and their attorneys have significant experience litigating consumer class actions, including TCPA class actions.  *See* Docket No. 58, Ex. A; Docket No. 59, Ex. A.  Class counsel firmly support the settlement.  Given the breadth of experience these counsel represent, the sixth *Churchill Village* factor favors settlement.

### g. The Presence of a Governmental Participant

No governmental agency is a participant in this settlement, although a number of states Attorneys General contacted the parties to request slight tweaks to the settlement agreement.  These changes were made.  Thus, this factor is neutral.

### h. The Reaction of the Class Members of the Proposed Settlement

The eighth and final *Churchill Village* factor is neutral.  No objections have been filed to the settlement, and only eleven class members have filed opt-outs.  Suppl. Jue Decl. at ¶ 6.  However, very few class members chose to participate in the monetary portion of the settlement (1.9%) and even fewer chose to participate in the injunctive relief portion (1.1%), indicating general apathy on the part of the class members towards the settlement.  Thus, this factor neither weighs in favor or against final approval.

### i. *In re Bluetooth* Factors

Because the parties seek to settle this nationwide class action before formal class certification, the Court must also evaluate the settlement for "subtle signs" of collusion between class counsel and the defendant.  *In re Bluetooth*, 654 F.3d at 947.  None of the three "signs" from *Bluetooth* appear present here.

First, class counsel are not slated to "receive a disproportionate distribution of the settlement."  *Id.*  Even if this Court were to approve the full amount of attorneys' fees requested,

class counsel would have received 25% of the common fund amount, which is the benchmark fees award permitted in the Ninth Circuit. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048 (9th Cir. 2002) (noting 25% recovery of a common fund is the "benchmark rate" in this circuit). Moreover, any concern about the disproportionality of a fees award is further diminished by this Court's decision to reduce the amount of requested fees by nearly $400,000.

Second, because any attorneys' fees award will come out of the common fund, there is no "clear sailing" agreement here that would warrant against settlement approval. *See In re Bluetooth*, 654 F.3d at 947 (warning of "'clear sailing' arrangement[s] providing for the payment of attorneys' fees separate and apart from class funds, which carries the potential of enabling a defendant to pay class counsel excessive fees and costs in exchange for counsel accepting an unfair settlement on behalf of the class").

Third, there is no provision in this settlement whereby "fees not awarded [to class counsel] revert to defendants." *In re Bluetooth*, 654 F.3d at 947. Instead, any fees not awarded to the attorneys will be added to the class fund and ultimately distributed to class members, just as the Ninth Circuit has indicated is preferable. *Id.*

j.  Conclusion

For the reasons explained in this Order, as well as those stated on the record at the final approval hearing, the Court finds that the settlement, although not producing an "outstanding" result, is fair, reasonable, and adequate. Fed. R. Civ. P. 23(e). Consequently, the Court grants the parties' motion for final approval of the settlement.

B.  Motion for Attorneys' Fees and Class Representative Incentive Awards

In light of the Court's final approval of the settlement, the Court must also determine whether the requested attorneys' fees and class representative incentive awards are fair and reasonable.[6]

---

[6] Class counsel do not seek a separate award of costs, and instead will reimburse themselves for their costs out of the attorneys' fees awarded. Docket No. 57 at 19.

### 1. Legal Standards for an Award of Attorneys' Fees

The Ninth Circuit has held that in a class action, "the district court must exercise its inherent authority to assure that the amount and mode of payment of attorneys' fees are fair and proper." *Zucker v. Occidental Petroleum Corp.*, 192 F.3d 1323, 1328 (9th Cir. 1999). The district court's duty to "carefully assess the reasonableness of a fee amount spelled out in a class action settlement agreement," *Staton v. Boeing Co.*, 327 F.3d 938, 963 (9th Cir. 2003), exists "independently of any objection" to the fee amount requested. *Zucker*, 192 F.3d at 1328-29.

In common-fund cases like this one, "the district court has discretion to use either a percentage or lodestar method" when determining the appropriate amount of attorneys' fees. *Hanlon*, 150 F.3d at 1029; *see also In re Bluetooth*, 654 F.3d at 942. If the court selects the percentage method, "[t]his circuit has established 25% of the common fund as a benchmark award for attorney fees." *Hanlon*, 150 F.3d at 1029. (citation omitted). If the court selects the lodestar method, the court "begins with the multiplication of the number of hours reasonably expended by a reasonable hourly rate." *Id.* (citation omitted). The lodestar figure may then be "adjusted upward or downward to account for several factors including the quality of the representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment." *Id.* (citation omitted). Regardless of which method the court chooses, the Ninth Circuit has "encouraged courts to guard against an unreasonable result by cross-checking their calculations against a second method." *In re Bluetooth*, 654 F.3d at 944. Ultimately, "courts aim to tether the value of an attorneys' fees award to the value of the class recovery." *In re HP Inkjet Printer Litig.*, 716 F.3d at 1178 (citing *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983)). "The more valuable the class recovery, the greater the fees award. And vice versa." *Id.* at 1178-79 (citation omitted); *see also Hensley*, 461 U.S. at 436 (instructing district courts to "award only that amount of fees that is reasonable in relation to the results obtained").

### 2. Merits of Request for Attorneys' Fees

Class counsel request an attorneys' fees award of $838,386, which represents 25% of the common fund amount. Docket No. 57 at 2. Class counsel argue that this amount is eminently

reasonable, and in line with Ninth Circuit precedent regarding benchmark fees awards. *See Hanlon*, 150 F.3d at 1029; *Vizcaino*, 290 F.3d at 1048.

As noted above, however, the Court has discretion to award fees using either the lodestar method or the percentage approach. *Id.* Use of the lodestar method is particularly appropriate where it appears that the percentage method "would yield windfall profits for class counsel in light of the hours spent on the case" or where the Court is otherwise convinced that the percentage method would not achieve a "reasonable result." *In re Bluetooth*, 654 F.3d at 942. This is just such a case. The Court finds the percentage approach is not appropriate here for several reasons.

First, class counsel's requested fee is 276% higher than its lodestar billing amount of $303,483 – a positive multiplier that cannot be justified in light of the relatively limited class relief obtained in this case. *See Hensley*, 461 U.S. at 436 (explaining that "the most critical factor [in determining an appropriate attorneys' fee] is the degree of success obtained"); *In re HP Inkjet Printer Litig.*, 716 F.3d at 1178-79 (the crucible test of an attorneys' fees award is the value of the class recovery). As the Court made clear both at the final approval hearing and above, the class-wide results obtained by class counsel in this case are not outstanding. The monetary relief is less than 1% of the full potential verdict value, and less than 2% of the class will receive any monetary benefit.

More importantly, the overall value of the settlement is arguably *diminished* rather than enhanced by the negative injunction incorporated into the settlement.[7] As noted above, only 9,956 class members filed a request not to be called, representing barely 1% of all potential class members. Suppl. Jue Decl. at ¶ 5. The remaining 99% of the class, however, will receive no injunctive relief under the settlement, and in fact, will "be deemed to have provided prior express consent to the

---

[7] Counsel for BOW argued at the approval hearing that the value of any future TCPA claims given up by class members is very low, because BOW already has a valid defense to such claims. But BOW's counsel also admitted that BOW does get at least *some* benefit from the bargained-for immunity provision (otherwise, BOW would not have requested it) and further stated that class members are giving up the ability to bring a TCPA claim challenging BOW's future conduct. The Court notes that BOW has agreed to pay $2.41 per class member in this case to resolve what it contends are likely meritless TCPA claims. Thus, the positive value to BOW (and the negative value to the class) of the injunction here may be as high as $2,077,130.8 (assuming a $2.41 per person payment to settle any future lawsuit on behalf of the 861,880 class members who did not opt-in to receive injunctive relief).

1  making of calls by BOW or third parties calling on its behalf." Settlement Agreement at Sec.
2  III.C.1.(c).[8] Put simply, for the substantial majority of class members, the value of the injunctive
3  relief obtained in this case is actually *negative*. While the Court is not convinced that – at least in
4  this particular case – such a structure requires rejection of the settlement outright,[9] the Court is
5  persuaded that using the percentage approach based on the size of the monetary award is not
6  appropriate where the overall value of the settlement is less than the value of the monetary award
7  because of the negative injunction. This is especially true where a cross-check of the lodestar
8  method shows that a benchmark percentage award would result in a 2.76 multiplier, a multiplier not
9  warranted for reasons discussed below.

10  The Court further finds that the use of the lodestar method is appropriate here where, to the
11  extent monetary relief may be deemed substantial, that substantiality is largely attributable to the
12  size of the class and the availability of statutory damages under the TCPA, as opposed to the
13  lawyers' efforts or skill in developing a complicated record. Simply put, where the potential
14  recovery of statutory damages is as large as it is here ($435 million or more) due solely to the size of
15  the class and damages fixed by statute, it requires less effort and entails less risk for class counsel to
16  obtain a $3 million settlement. *See generally* Robert G. Bone and David S. Evans, *Class
17  Certification and the Substantive Merits*, 51 Duke L.J. 1251, 1292-1301 (2002) (explaining a
18  defendant's incentive to settle even winnable class actions because the class action device and
19  availability of statutory damages "magnifies the stakes through aggregation," while also increasing
20  "the defendant's risk-bearing, litigation, and reputation costs"). Indeed, the fact that class counsel
21  obtained a seven figure settlement with fairly limited effort is confirmed by the fact that class
22  counsel here spent just 621 hours litigating this case from start to finish, and a substantial majority

---

[8] Such class members may always revoke the "prior express consent" given under the settlement agreement. But until such time as they revoke, those class members who did not file a Request to Stop Calls cannot bring a successful claim against BOW to enforce the terms of the TCPA.

[9] This is particularly true in light of the prior final approval of other TCPA settlements containing the exact same injunctive relief provisions at issue here. *See Arthur v. Sallie Mae,* No. C10-0198 JLR, 2012 U.S. Dist. LEXIS 3313, at *32 (W.D. Wash. Jan. 10, 2012); *Steinfeld v. Discover Fin. Servs.*, No. 12-cv-11118 JSW, 2014 U.S. Dist. LEXIS 44855 (N.D. Cal. Mar. 31, 2014).

of those hours were spent on tasks unrelated to the merits of Plaintiffs' claims. *See* Docket Nos. 58-59; 67-68. Indeed, the Court finds it particularly notable that class counsel in this case billed just two fewer hours for the preparation of their attorneys' fees motion (37.1 hours) than they billed for all discovery related tasks for the entire case (39.1 hours). *See* Docket No. 67-1 at 14-15, 18, 21; Docket No. 68-2. The Court finds that under the peculiar circumstances of this case, it is more appropriate to award fees using the lodestar method than the percentage of the fund approach.

The Court thus utilizes the lodestar approach in calculating reasonable attorneys' fees. Class counsels' claimed lodestar is $303,483.10. Docket No. 57 at 16. Class counsel filed all of their time records in this case, and the Court thoroughly reviewed them. Docket Nos. 67-68. The Court is satisfied that all of the hours billed are compensable, and notes that class counsel previously deleted duplicative time records or other entries that might not have been recoverable. Docket No. 57 at 17. The Court is also satisfied that class counsels' blended hourly rates ($440 and $514 per hour, respectively) are reasonable in this legal market for attorneys of similar skill and experience. *See, e.g.*, *Minichino v. First Cal. Realty*, No. C-11-5185 EMC, 2012 WL 6554401, at *7 (N.D. Cal. Dec. 14, 2012) (finding the requested rate of $555 per hour for partner with fourteen years of experience falls within the range of other recent fees awards in this district); *Cataphora Inc. v. Parker*, 848 F. Supp. 2d 1064, 1069 (N.D. Cal. 2012) (approving $500 hourly rate). Thus, the Court will award class counsel the full amount of its lodestar.

The Court also believes that some positive multiplier is appropriate in this case given the efficiency with which class counsel litigated this action and the contingent nature of the recovery. *See Hanlon*, 150 F.3d at 1029 (explaining that a district court has discretion to adjust the lodestar figure upward to account for relevant factors such as the "quality of the representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment." ); *see also Van Vranken v. Atl. Richfield* Co., 901 F. Supp. 294, 298 (N.D. Cal. 1995) (providing that the district court may "enhance the lodestar with a 'multiplier,' if necessary to arrive at a reasonable fee in light of all of the circumstances of the case"); *In re Washington Public Power Supply Sys. Securities Litig.*, 19 F.3d 1291, 1299-1300 (9th Cir. 1994) (explaining that a positive lodestar multiplier is appropriate to compensate counsel for the risk of non-payment in a

contingency fee case). For while, as described above, this case was not particularly complex or complicated, class counsels' supporting declarations make clear that the class attorneys here are very experienced litigating TCPA class actions. *See* Docket No. 58, Ex. A; Docket No. 59, Ex. A. Consequently, class counsel argue that they were able to prosecute this action far more efficiently than would otherwise be possible without such prior TCPA experience. The Court agrees. Class counsel should not be "punished" for efficiently litigating this action, or for otherwise providing class members with the benefits of their experience gained litigating similar class cases. Class members are well-served when they are represented by competent and experienced counsel. The Court will therefore apply a 50% multiplier (1.5) to class counsels' lodestar fees to fully compensate class counsel for the experience and efficiency they brought to bear in litigating this case. A higher multiplier is not warranted. While Plaintiffs faced extensive risks both on the merits and in maintaining a class action as noted above, Plaintiffs' counsel was not required to invest significant costs or devote a great deal of time in investigating and developing this case. Unlike, *e.g.*, a large employment discrimination pattern or practice case, or a fact-intensive antitrust suit, this case required less than 40 hours of discovery before proceeding to settlement. Furthermore, as previously discussed, the net results were not outstanding or extraordinary, particularly in view of the negative injunction. In sum, the *Hanlon* factors do not militate in favor of a multiplier in excess of 1.5.

Thus, the Court will award $455,224.50 in attorneys' fees[10] which reflects a 1.5 multiplier. *See generally Kranson v. Federal Express Corp.*, No. 11-cv-5826-YGR, 2013 WL 6503308, at *13 (N.D. Cal. Dec. 11, 2013) (awarding 1.5 multiplier); *Trulsson v. Cnty. of San Joaquin Dist. Attorney's Office*, No. 2:11-cv-02986 KJM DAD, 2014 WL 5472787, at *9 (E.D. Cal. Oct. 28, 2014) (same); *Powell v. U.S. Dept. of Justice*, 569 F. Supp. 1192, 1204 (N.D. Cal. 1983) (same); *White v. City of Richmond*, 559 F. Supp. 127, 134 (N.D. Cal. 1982) (same).

---

[10] The Court notes that its ultimate fees award is equivalent to 13.5% of the common fund amount.

17

### 3. Legal Standard for Class Representative Incentive Awards

In the Ninth Circuit, "named plaintiffs . . . are eligible for reasonable incentive payments." *Staton*, 327 F.3d at 977. "Incentive awards are fairly typical in class action cases." *Rodriguez v. West Pub'l Corp.*, 563 F.3d 948, 958 (9th Cir. 2009) (emphasis omitted). Such incentive awards are designed to compensate "class representatives for their service to the class in bringing the lawsuit," and are "often taken from the class's recovery." *Radcliffe v. Experian Information Solutions, Inc.*, 715 F.3d 1157, 1163 (9th Cir. 2013). Still, such awards "are discretionary" and are typically awarded to "compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez*, 563 F.3d at 958.

### 4. Merits of Class Representative Incentive Award Request

Here, class counsel seek $2,000 incentive awards for the named plaintiffs in this action. According to the attorneys, the named plaintiffs were "actively engaged in this action," and, among other things, "(1) provided information to Class Counsel for the complaints and other pleadings; (2) reviewed pleadings and other documents; (3) communicated on a regular basis with counsel and kept themselves informed of progress in the litigation and settlement negotiations; and (4) reviewed and approved the proposed settlements." Docket No. 57 at 20. In light of the assistance the class representatives provided in this case, the Court will approve the requested $2,000 incentive awards. The Court notes that the reasonableness of the requested awards is further demonstrated by the number of cases where similar or larger incentive awards have been awarded to named class plaintiffs. *See, e.g.*, *Nwabueze*, 2013 WL 6199596, at *12 (awarding $5,000 incentive payment for each of two named plaintiffs); *Hopson v. Hanesbrands, Inc.*, No. CV-08-844 EDL, 2009 U.S. Dist. LEXIS 33900, at *27-28 (N.D. Cal. Apr. 3, 2009) (noting that "courts have found that $5,000 incentive payments are reasonable") (citations omitted).

///
///
///
///

### III. CONCLUSION

For the reasons explained above and on the record, the Court grants final approval to the proposed class action settlement. The Court also grants class counsel $455,224.50 in attorneys' fees, which represents a 1.5 multiplier of their lodestar. Finally, the Court grants the request for $2,000 incentive awards for the named plaintiffs.[11]

This order disposes of Docket Nos. 57 and 63.

IT IS SO ORDERED.

Dated: April 15, 2015

_____
EDWARD M. CHEN
United States District Judge

---

[11] Class counsel state they will reimburse their costs out of the attorneys' fees award. No specific accounting of costs has been provided.